## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| WILLIAM E. AMOR, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. |
| | ) | |
| NAPERVILLE POLICE OFFICERS | ) | |
| MICHAEL CROSS; ROBERT | ) | |
| GUERRERI; THE ESTATE OF MARK | ) | |
| CARLSON; BRIAN CUNNINGHAM; JON | ) | |
| LIPSKY; OTHER UNIDENTIFIED | ) | |
| NAPERVILLE POLICE OFFICERS; AND | ) | |
| THE CITY OF NAPERVILLE, | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

Plaintiff WILLIAM E. AMOR, by and through his attorneys, Kathleen T. Zellner & Associates, P.C., complains of Defendants, NAPERVILLE POLICE OFFICERS MICHAEL CROSS, ROBERT GUERRERI, THE ESTATE OF MARK CARLSON, BRIAN CUNNINGHAM, JON LIPSKY, OTHER UNIDENTIFIED NAPERVILLE POLICE OFFICERS, AND THE CITY OF NAPERVILLE, and alleges as follows:

## Introduction

1.     In September, 1995, and continuing thereafter, the above-named Defendants entered into and executed a conspiracy to cause Plaintiff's unlawful arrest and subsequent prosecution for a murder and aggravated arson that he did not commit.     The centerpiece of the conspiracy was Plaintiff's purported "confession," a statement which the Defendants coerced from Plaintiff through

1

physical force, mental coercion, lies and improperly suggestive interrogation techniques. Additionally, Defendants falsely told Plaintiff that he flunked a polygraph examination. Defendants likewise fabricated evidence from other witnesses to bolster charges they knew to be otherwise without probable cause. As a direct and proximate result of Defendants' egregious misconduct, Plaintiff was convicted and sentenced to 45 years imprisonment. He served more than 20 years of wrongful incarceration. This lawsuit seeks redress for the extreme hardship and incalculable harm Defendants thereby caused Plaintiff to suffer.

## Jurisdiction and Venue

2. This action is brought under 42 U.S.C. § 1983 to redress the deprivation under color of law of Plaintiff's rights as secured by the United States Constitution and under Illinois state law.

3. This Court has original jurisdiction of Plaintiff's federal claims pursuant to 28 U.S.C. § 1331, and supplemental jurisdiction of Plaintiff's state-law claims pursuant to 28 U.S.C. § 1367.

4. Venue is proper under 28 U.S.C. § 1391(b) as the events and omissions giving rise to Plaintiff's claims occurred within this judicial district.

## The Parties

5. Plaintiff William Amor ("Plaintiff") is a resident and citizen of the state of Illinois.

6. At all relevant times, Defendants Michael Cross ("Defendant Cross"), Robert Guerreri ("Defendant Guerreri"), The Estate of Mark Carlson ("Defendant

2

Carlson"), Brian Cunningham ("Defendant Cunningham"), Jon Lipsky ("Defendant Lipsky") and other Unidentified Police Officers were duly appointed members of the Naperville Police Department.

7.     The Defendant Officers are named in their individual capacity.

8.     At all relevant times, the Defendant Officers were acting under color of state law and in the course and scope of their employment with the City of Naperville.

9.     At all relevant times, Defendant Naperville ("the Defendant City") was an Illinois municipal corporation.  Defendant City of Naperville is liable for the wrongful acts and omissions of the Defendant Officers taken in the course and scope of their employment pursuant to the Defendant City of Naperville's statutory obligation to indemnify them.

<b><u>Factual Allegations</u></b>

*The Fire at 218 E. Bailey in Naperville*

10.     On or about September 10, 1995, Plaintiff resided at 218 E. Bailey in Naperville with his wife, Tina Amor (Ms. Amor") and his mother-in-law, Marianne Miceli ("Ms. Miceli").

11.     Ms. Miceli called 911 and reported that there was a fire in the apartment.

12.     The Naperville Fire Department ("NFD") arrived and began rescue efforts.  Tragically, they were unable to save Ms. Miceli, who died as a result of smoke inhalation.

3

13.     Plaintiff and his wife were not home at the time of the 911 call but returned home at 11:00 p.m., at which time they were informed of Ms. Miceli's death.

14.     Defendant Cross treated Plaintiff as a suspect and began questioning him at or around that time.

15.     As the questioning continued into the early morning of September 11, 1995, Plaintiff repeatedly denied setting the fire.

16.     On September 15, 1995, Plaintiff was arrested for outstanding warrants on unrelated traffic offenses in DeKalb County.

17.     After that arrest, Defendant Cross once again questioned Plaintiff about the fire.

18.     Next, Plaintiff was transported to the DeKalb County Jail without appearing before a judge.

19.     Plaintiff was held until October 3, 1995.  Upon his release from the DeKalb County Jail, Defendants Cross and Guerreri accosted Plaintiff outside the jail and took him, in a locked police car, to take multiple polygraph exams at Reid & Associates, Inc.

20.     After undergoing several hours of polygraph testing and having spent seven hours with Defendants following his release from DeKalb County Jail, Defendants continued to question Plaintiff.

21.     Plaintiff was next transported at 11:30 p.m. to the Naperville Police Department ("NPD") for further interrogation.

4

22.     After his arrival at the NPD, during more interrogation, Defendants caused Plaintiff to be served with divorce papers from his wife, Ms. Amor.

23.     At all times prior to his arrival at the NPD at or around 11:30 p.m. on October 3, 1995, Plaintiff had unequivocally denied setting the fire.

24.     After many more hours of interrogation, in the early morning hours of October 4, 1995, Defendants took written statements purporting to reflect that Plaintiff admitted involvement in setting the fire.

25.     Specifically, the statements suggested that Plaintiff intentionally started the fire by knocking a lit cigarette onto a newspaper which he had previously spilled vodka on.

26.     The aforementioned statements were fabricated as a result of physical abuse - including but not limited to Defendant Cunningham slamming Plaintiff against the wall - and verbal intimidation by Defendants upon Plaintiff combined with prolonged deprivation of food and sleep by Defendants as well as emotional impairment from the manner in which Defendants caused Plaintiff to be served with the divorce papers.

27.     All of the above-named Defendant Officers took part in the above investigation and interrogations under the supervision of Defendants Lipsky and Cross.

### The Defendant Officers Target Plaintiff

28.     The Defendant Officers determined at the time they became involved in the investigation that they would accuse Plaintiff of intentionally setting the fire.

5

29. Despite the lack of any credible information suggesting that Plaintiff was involved in setting the fire, the Defendant Officers targeted him.

30. Defendant Officers entered into a conspiracy to falsely implicate Plaintiff by any means necessary.

### The Defendant Officers Fabricate Evidence against Plaintiff

31. As set forth above, Plaintiff was interrogated by the Defendant Officers at various times.

32. Over a period of weeks, Plaintiff denied he had set the fire.

33. All of the Defendant Officers, were aware that each of them were threatening and abusing Plaintiff in attempt to extract inculpatory statements from him.

34. The Defendant Officers knew that Plaintiff's "confession" was fabricated, and that Plaintiff only gave the statements as the result of the physical and mental coercion to which they subjected him.

35. The Defendant Officers subsequently memorialized the false statements they attributed to Plaintiff, which were used to support the charges against Plaintiff and deny him bond pending trial.

36. There was never probable cause to believe that Plaintiff intentionally set the fire or to support the arrest and/or prosecution of Plaintiff.

### Plaintiff's Charges, Trial, and Conviction

37. Based on Plaintiff's "confession," Plaintiff was charged with first-degree murder and aggravated arson.

6

38.     Plaintiff's "confession" was used by the State and relied on by the trial court in denying Plaintiff bond.

39.     At Plaintiff's trial, the key evidence connecting Plaintiff to the offense was the fabricated statements and confession attributed to Plaintiff by the Defendant Officers.

40.     On September 17, 1997, following a trial, Plaintiff was convicted of both aggravated arson and first degree murder.

### "Confession" Shown to be a "Scientifically Impossible" At Evidentiary Hearing

41.     On January 29, 2015, Plaintiff was granted leave to file a Petition For Post Conviction Relief based upon his assertion that he was actually innocent of the crimes for which he had been convicted.

42.     Plaintiff's claims advanced to a third-stage evidentiary hearing in DuPage County.

43.     After that hearing, on April 6, 2017, the Circuit Court of DuPage County vacated Plaintiff's convictions, explaining "There can be no question that the lynchpin of the State's case at trial was the defendant's confession, which the State and Defense experts today agree is scientifically impossible."

44.     On May 30, 2017, Amor was released pending a retrial.

45.     On February 21, 2018, Plaintiff was acquitted after a bench trial.

### Plaintiff's Damages

46.     As a result of the Defendants' misconduct, Plaintiff spent over twenty (20) years incarcerated for a crime he did not commit. Plaintiff endured the stigma

7

of having perpetrated the brutal aggravated arson and murder of his mother-in-law in which he had no involvement. Even more so, Plaintiff suffered incalculable mental anguish and emotional pain stemming from his lengthy incarceration. He missed spending hundreds of holidays, birthdays, and social gatherings with family and friends. Plaintiff was locked up in an environment where any day he could have been beaten, sexually assaulted, or even murdered. Plaintiff languished in his prison cell, not knowing if he would spend the remainder of his life behind prison walls.

47. Plaintiff's damages include, but are not limited to, emotional distress, mental anguish, humiliation, loss of liberty, loss of freedom of movement, loss of enjoyment of life, loss of consortium, and other non-pecuniary losses.

## Causes of Action

### COUNT I

### 42 U.S.C. § 1983 – 14th Amendment Due Process
### Fabrication of Evidence
### (Against All Individually-Named Defendants)

48. Each foregoing paragraph of this Complaint is incorporated as if fully set forth herein.

49. As described more fully above, all of the Defendants, while acting individually, jointly, and in conspiracy, deprived Plaintiff of his constitutional right to due process by deliberately fabricating statements, reports, and other evidence.

50. The Defendants' misconduct described herein was objectively unreasonable and was undertaken with deliberate indifference to Plaintiff's constitutional rights.

51. The Defendants' misconduct described herein shocks the conscience.

52. As a direct and proximate result of the misconduct described herein, Plaintiff was charged with aggravated arson and first-degree murder.

53. As a further direct and proximate result of the misconduct described herein, Plaintiff was denied bond and detained in the county jail prior to trial.

54. As a further direct and proximate result of the misconduct described herein, Plaintiff suffered injuries, including but not limited to loss of liberty, emotional distress, and mental anguish as more fully described above.

## COUNT II

### 42 U.S.C. § 1983 – 5th and 14th Amendment Due Process
### Coerced Confession
### (Against All Individually-Named Defendants)

55. Each foregoing paragraph of this Complaint is incorporated as if fully set forth herein.

56. As described more fully above, all of the Defendants, while acting individually, jointly, and in conspiracy, deprived Plaintiff of his constitutional right to be free from compelled self-incrimination.

57. As described more fully above, the Defendants coerced Plaintiff through physical violence, emotional and mental abuse.

58. As a result of the misconduct described herein, the Defendants compelled Plaintiff and extracted a false confession from him.

59. The Defendants' misconduct described herein was objectively unreasonable and was undertaken with deliberate indifference to Plaintiff's constitutional rights.

60. The Defendants' misconduct described herein shocks the conscience.

61. As a direct and proximate result of the misconduct described herein, Plaintiff was charged with aggravated arson and first degree murder.

62. As a further direct and proximate result of the misconduct described herein, Plaintiff was denied bond and detained in the county jail prior to trial.

63. As a further direct and proximate result of the misconduct described herein, Plaintiff was convicted of aggravated arson and first-degree murder.

64. As a further direct and proximate result of the misconduct described herein, Plaintiff suffered injuries, including but not limited to loss of liberty, emotional distress, and mental anguish as more fully described above.


## COUNT III

### 42 U.S.C. § 1983 – Conspiracy to Deprive Constitutional Rights
### (Against All Individually-Named Defendants)

65. Each foregoing paragraph of this Complaint is incorporated as if fully set forth herein.

66. As described more fully above, as a result of the fire, Defendants reached an agreement amongst themselves to frame Plaintiff for the crime and to

10

thereby deprive Plaintiff of his constitutional rights as described in the Counts above.

67.    As described more fully above, all of the Defendants had knowledge of and/or participated in the fabrication of evidence against Plaintiff.

68.    As described more fully above, all of the Defendants were aware that Plaintiff's false confession was the product of physical and mental coercion.

69.    In this manner, the Defendants conspired by concerted action to accomplish an unlawful purpose by an unlawful means.

70.    In furtherance of the conspiracy, each of the co-conspirators committed overt acts and was an otherwise willful participant in joint activity.

71.    The Defendants' misconduct described herein was objectively unreasonable and was undertaken with deliberate indifference to Plaintiff's constitutional rights.

72.    The Defendants' misconduct described herein shocks the conscience.

73.    As a direct and proximate result of the misconduct described herein, Plaintiff was charged with aggravated arson and first degree murder.

74.    As a further direct and proximate result of the misconduct described herein, Plaintiff was denied bond and detained in the county jail prior to trial.

75.    As a further direct and proximate result of the misconduct described herein, Plaintiff was convicted of aggravated arson and first degree murder.

76.     As a further direct and proximate result of the misconduct described herein, Plaintiff suffered injuries, including but not limited to loss of liberty, emotional distress, and mental anguish as more fully described above.

## COUNT IV

### 42 U.S.C. § 1983 – Failure to Intervene
### (Against All Individually-Named Defendants)

77.     Each foregoing paragraph of this Complaint is incorporated as if fully set forth herein.

78.     As described more fully above, during the constitutional violations alleged herein, one or more of the Defendants stood by without intervening to prevent the misconduct.

79.     The Defendants' misconduct described herein was objectively unreasonable and was undertaken with deliberate indifference to Plaintiff's constitutional rights.

80.      As a direct and proximate result of the misconduct described herein, Plaintiff was charged with aggravated arson and first degree murder.

81.     As a further direct and proximate result of the misconduct described herein, Plaintiff was denied bond and detained in the county jail prior to trial.

82.     As a further direct and proximate result of the misconduct described herein, Plaintiff was convicted of aggravated arson and first degree murder.

83.     As a further direct and proximate result of the misconduct described herein, Plaintiff suffered injuries, including but not limited to loss of liberty, emotional distress, and mental anguish as more fully described above.

## COUNT V

### 42 U.S.C. § 1983 – Supervisory Liability
### (Against Defendants Lipsky and Cross)

84.     Each foregoing paragraph of this Complaint is incorporated as if fully set forth herein.

85.     Defendants Lipsky and Cross supervised the other Defendant Officers in the investigation of the fire.

86.     As described more fully above, Defendants Lipsky and Cross knew that the other Defendant Officers and Defendant Unidentified Officers fabricated evidence and coerced a false confession from Plaintiff.

87.     Defendants Lipsky and Cross approved, assisted, condoned, and/or purposely ignored the Defendant Officers' and Unidentified Officers' unconstitutional conduct.

88.     Defendants Lipsky and Cross's misconduct described herein was objectively unreasonable and was undertaken with deliberate indifference to Plaintiff's constitutional rights.

89.     As a direct and proximate result of the misconduct described herein, Plaintiff was charged with aggravated arson and first degree murder.

90. As a further direct and proximate result of the misconduct described herein, Plaintiff was denied bond and detained in the county jail prior to trial.

91. As a further direct and proximate result of the misconduct described herein, Plaintiff was convicted of aggravated arson and first-degree murder.

92. As a further direct and proximate result of the misconduct described herein, Plaintiff suffered injuries, including but not limited to loss of liberty, emotional distress, and mental anguish as more fully described above.

## COUNT VI

### Illinois State Law – Malicious Prosecution
### (Against All Individually-Named Defendants)

93. Each foregoing paragraph of this Complaint is incorporated as if fully set forth herein.

94. As described more fully above, the Defendants knowingly and maliciously initiated and/or caused judicial proceedings to continue against Plaintiff without probable cause.

95. The prosecution terminated in Plaintiff's favor on February 21, 2018, when Plaintiff was acquitted.

96. As a further direct and proximate result of the misconduct described herein, Plaintiff suffered injuries, including but not limited to loss of liberty, emotional distress, and mental anguish as more fully described above.

## COUNT VII

### Illinois State Law – Intentional Infliction of Emotional Distress
### (Against All Individually-Named Defendants)

97.     Each foregoing paragraph of this Complaint is incorporated as if fully set forth herein.

98.     As described more fully above, the Defendants' misconduct was extreme and outrageous.

99.     As described more fully above, the Defendants intended to cause, or were in reckless disregard of the probability that there misconduct would cause, severe emotional distress to Plaintiff.

100.    As a direct and proximate result of the misconduct described herein, Plaintiff suffered injuries, including but not limited to severe emotional distress and mental anguish as more fully described above.

## COUNT VIII

### Illinois State Law – Conspiracy
### (Against All Individually-Named Defendants)

101.    Each foregoing paragraph of this Complaint is incorporated as if fully set forth herein.

102.    As described more fully above, the Defendants together reached an understanding, engaged in a course of conduct, engaged in a joint action, and otherwise conspired among and between themselves to maliciously prosecute Plaintiff without probable cause and to intentionally inflict emotional distress.

15

103.   As described more fully above, in furtherance of the conspiracy, the Defendants committed overt acts including the fabrication and unlawful coercion of Plaintiff's "confession," and the falsification of witness statements in police reports.

104.   The conspiracy alleged herein was initiated on or about September 10, 1995, and continues to the present.

105.   As a direct and proximate result of the misconduct described herein, Plaintiff suffered injuries, including but not limited to loss of liberty, emotional distress, and mental anguish as more fully described above

## COUNT IX

### Illinois State Law – Indemnification
### (Against the City of Naperville)

106.   Each foregoing paragraph of this Complaint is incorporated as if fully set forth herein.

107.   Defendant City of Naperville was the employer of each of the Defendant Officers at all times relevant to this complaint.

108.   All of the individually-named Defendant Officers were acting within the course and scope of their employment at all times relevant to this complaint.

109.   Pursuant to 745 ILCS 10/9-102, Defendant City of Naperville is liable to pay all judgments and settlements entered against its respective employees for the claims set forth above.

16

## COUNT X

### Illinois State Law – *Respondeat Superior*
### (Against the City of Naperville)

110.    Each foregoing paragraph of this Complaint is incorporated as if fully set forth herein.

111.    Defendant City of Naperville is liable for the state-law torts of its employees under the doctrine of *respondeat superior*.


### **Prayer for Relief**

Wherefore, Plaintiff, William E. Amor, respectfully requests that this Court enter judgment in his favor and against Defendants Michael Cross, Robert Guerreri, The Estate of Mark Carlson, Brian Cunningham, Jon Lipsky, other Unidentified Naperville Police Officers and the City of Naperville, awarding compensatory damages, costs, and attorneys' fees, along with punitive damages against each of the individually-named Defendants in their individual capacities, as well as any other relief this Court deems just and appropriate.

### Jury Demand

Plaintiff, William E. Amor, hereby demands a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all issues so triable.

Respectfully submitted,

/s/ Kathleen T. Zellner
Kathleen T. Zellner
Kathleen T. Zellner & Associates, P.C.
1901 Butterfield Road, Suite 650
Downers Grove, Illinois 60515
Phone: 630-955-1212
Fax: 630-955-1111
Email: kathleen.zellner@gmail.com