IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| WILLIAM E. AMOR, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Case No. 1:18-cv-02523 |
| ) | |
| NAPERVILLE POLICE OFFICERS ) | |
| MICHAEL CROSS; ROBERT ) | |
| GUERRERI; THE ESTATE OF MARK ) | |
| CARLSON; BRIAN CUNNINGHAM; JON ) | |
| LIPSKY; OTHER UNIDENTIFIED ) | |
| NAPERVILLE POLICE OFFICERS; and ) | |
| THE CITY OF NAPERVILLE, ) | |
| ) | |
| Defendants. | |

**PLAINTIFF'S COUNSEL'S
RESPONSE TO PLAINTIFF'S MOTION TO
SUBSTITUTE COUNSEL**

NOW COMES the Law Firm of Kathleen T. Zellner and Associates with this Reply to Plaintiff's Motion to Substitute Counsel and states as follows:

1. Undersigned Counsel's law firm has no objection to the requested substitution.

2. Undersigned Counsel has given notice that there is a lien on this file.

3. Undersigned Counsel feels an obligation to respond to paragraph 6 of Plaintiff's motion stating that Undersigned Counsel "contacted Mr. Amor, signed a retainer agreement with him, and then hastily filed this civil suit—well before the Certificate of Innocence Proceedings had been resolved." (Doc. 51, ¶ 6).

1

4. In response, Undersigned Counsel wants to make clear that the allegation in paragraph 6 of Plaintiff's motion is a false allegation. Undersigned Counsel did not contact Mr. Amor.

5. The true events that led to the termination of the movant law firm (with which Mr. Amor had no contract) and Mr. Amor's hiring of Undersigned Counsel are set forth in the attached affidavit, signed by Mr. Amor and attached hereto as Exhibit A.

Respectfully submitted,


/s/ Kathleen T. Zellner
Kathleen T. Zellner
On behalf of Plaintiff
Kathleen T. Zellner & Associates, P.C.
1901 Butterfield Road, #650
Downers Grove, IL  60515
(Ph): (630) 955-1212
Email:  attorneys@zellnerlawoffices.com


## Proof of Service

I hereby certify that I have served the foregoing document to all counsel of record on September 9, 2019, by means of the Court's electronic case filing system.

Respectfully submitted,

/s/ Kathleen T. Zellner
Kathleen T. Zellner
Kathleen T. Zellner & Associates, P.C.
1901 Butterfield Road, Suite 650
Downers Grove, Illinois  60515
Phone:  (630) 955-1212
Email:  attorneys@zellnerlawoffices.com

## AFFIDAVIT OF
## WILLIAM AMOR

I, William Amor, being first duly sworn, on oath depose and state the following:

1. I am of legal majority and can truthfully and completely testify to the matters contained herein based upon my personal knowledge.

2. The factual statements herein are true and correct to the best of my knowledge, information, and belief.

3. During my criminal proceedings, I was represented *pro bono* by the Innocence Project and the Exoneration Project.

4. At no time during my criminal proceedings did I discuss a potential civil rights lawsuit with my criminal defense attorneys.

5. After I was exonerated, I started to think about who I wanted to represent me in a petition for certificate of innocence and in a civil rights lawsuit.

6. In March of 2018, I attended a conference for wrongfully convicted people in Memphis, Tennessee. Several attorneys from the law firm of Loevy & Loevy ("Loevy") were present at the conference. The Loevy attorneys repeatedly told me that I needed to decide who I wanted to represent me in a civil lawsuit. I felt pressured, and I distinctly remember telling them to "stop being sales people."

7. I later went to Loevy's office to discuss possible representation in a petition for certificate of innocence and a civil rights lawsuit. The attorneys with whom I met told me that they wanted my case. At that time, they gave me contracts to consider. The civil rights contract proposed that Loevy would take a 40% contingent fee of any judgment or settlement.

8. I told Loevy that I would think about the offer. However, I believed that the proposed fee was too high. I was also unhappy about Loevy's lack of communication with me following my exoneration. I left Loevy's office without signing a contract, wanting to consider other options.

9. I later approached Mario Casciaro ("Mario").

10. I knew that Mario was represented by Kathleen Zellner in a wrongful conviction lawsuit.

EXHIBIT A

11. I was familiar with Kathleen Zellner from seeing news coverage about some of her cases on television.

12. I asked Mario if he was happy with Mrs. Zellner as his attorney. Mario told me that he was pleased with her representation. I then asked Mario for Mrs. Zellner's contact information, so that I could schedule a time to meet with her about my potential civil rights lawsuit.

13. Mario never solicited me to become Mrs. Zellner's client.

14. No one else ever solicited me to become Mrs. Zellner's client.

15. Mario never pressured me to become Mrs. Zellner's client.

16. No one else ever solicited me to become Mrs. Zellner's client.

17. I called Mrs. Zellner's office and scheduled a time to meet with her.

18. During my meeting with Mrs. Zellner, I told her that I had not signed a contract to have any other firm represent me in a petition for certificate of innocence or a civil rights lawsuit.

19. I told Mrs. Zellner that I had a meeting with Loevy's office, and that they had proposed a contingency fee of 40% in my civil rights lawsuit.

20. I told Mrs. Zellner that I thought Loevy's fee was too high, and that I did not intend on signing an agreement with them.

21. Mrs. Zellner offered me better terms to represent me in my civil rights lawsuit and in a petition for certificate of innocence.

22. After taking a week to think about my decision, I met with Mrs. Zellner again and entered into a contingent fee agreement with Kathleen T. Zellner & Associates to represent me in a petition for certificate of innocence and my civil rights lawsuit.

23. At no time did Mrs. Zellner say anything negative to me about Loevy & Loevy.

24. At no time did Mrs. Zellner make any promises to me, other than those expressly stated in the written contract I signed.

25. Kathleen T. Zellner & Associates subsequently filed a petition for certificate of innocence on my behalf.

26. At about 9:00 a.m. on the Sunday after the petition was filed, Jon Loevy and Tara Thompson showed up at the residence at which I was living to try

meet with me. I was not home, but Pedro Gonzalez called and told me Mr. Loevy and Ms. Thompson were at the house.

27. At a later event for exonerees hosted at Northwestern, Jon Loevy and Tara Thompson again approached me about my case.

28. Mr. Loevy and Ms. Thompson knew at that time that I was represented by Kathleen T. Zellner & Associates.

29. I know this because Mr. Loevy and Ms. Thompson tried to convince me to terminate my attorney-client relationship with Mrs. Zellner. Mr. Loevy and Ms. Thompson told me, "You can undo anything you have done." Mr. Loevy also offered to lower his contingency fee, if I would end my attorney-client relationship with Ms. Zellner and agree to let Loevy represent me.

30. Mr. Loevy also offered me an alcoholic drink, which I refused. Mr. Loevy's offer made me uncomfortable, because I struggled with alcoholism prior to my incarceration. My belief is that Mr. Loevy was aware of my past struggles with alcohol.

31. I later left the event without speaking again with Mr. Loevy or Ms. Thompson.

32. The decision to contact and hire Mrs. Zellner was my own. I was not improperly influenced by anyone to consider her firm to represent me.

33. I have absolutely no intention of discharging the law firm of Kathleen T. Zellner & Associates. I also have no desire to be represented by Loevy & Loevy.

FURTHER YOUR AFFIANT SAYETH NOT.

Respectfully Submitted:

*[signature]*
William Amor

SUBSCRIBED and SWORN to
before me this __19__ day
of September, 2018

*[signature]*
NOTARY PUBLIC

OFFICIAL SEAL
SCOTT T PANEK
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:02/13/21