## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

WILLIAM E. AMOR,             )
                                        )     18-CV-02523

           Plaintiff,           )

                                        )     Honorable John Z. Lee

          v.                     )

                                        )

MICHAEL CROSS; et al.,         )

                                        )

          Defendants.        )

## DEFENDANTS' REPLY IN SUPPORT OF
## <u>THEIR MOTION FOR SUMMARY JUDGMENT</u>

Date: May 2, 2022                   Respectfully submitted,

                                           /s/ Laura M. Ranum
                                           LAURA M. RANUM, Attorney No. 6300636
                                           *One of the Attorneys for Defendants*

James G. Sotos
Joseph M. Polick
Laura M. Ranum
Lisa M. Meador
Carson W. Canonie
THE SOTOS LAW FIRM, P.C.
141 W. Jackson Blvd., #1240A
Chicago, IL 60604
Tel: (630) 735-3300
lranum@jsotoslaw.com

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................................................1

ARGUMENT ......................................................................................................................3

I.     PLAINTIFF REPEATEDLY VIOLATED L.R. 56.1. ...................................................3

        A.    Plaintiff's Egregious Disregard for L.R. 56.1(b)(2) and 56.1(e) is a Calculated
             Effort to Create an Illusion of Multiple Disputed Material Facts. ..........................3

        B.    Plaintiff's Statement of Additional Facts (SOAF) Violates L.R. 56.1 and Should
             be Disregarded .......................................................................................................4

II.    THE FABRICATION CLAIM CANNOT SURVIVE SUMMARY JUDGMENT ...........5

        A.    Plaintiff's Failed Memory Regarding His September 15 Interview Does Not
             Allow his Lawyers to Contradict Undisputed Evidence with Speculation. .............5

        B.    Plaintiff Has Effectively Abandoned His Fabricated Confession Claim
             (October 4 Statement) .............................................................................................7

        C.    Defendants are Alternatively Entitled to Qualified Immunity ................................9

        D.    The Fabrication Claim Regarding Plaintiff's Interruption of Defendants'
             Questioning of Tina is Speculative and Premised on Immaterial Distinctions .....11

III.   PLAINTIFF IS COLLATERALLY ESTOPPED FROM PURSUING HIS COERCED
     CONFESSION CLAIM .......................................................................................12

        A.    Plaintiff's Objections that the Criminal Court Opinions from his
             Post-Conviction and COI Proceedings are Hearsay and
             not Subject to Judicial Notice are Frivolous .......................................................12

        B.    The Illinois COI Statute Does Not Preclude Collateral Estoppel ..........................13

        C.    All Requirements for Collateral Estoppel are Satisfied ........................................16

IV.   THE PRESENCE OF PROBABLE CAUSE ENTITLES DEFENDANTS TO
     SUMMARY JUDGMENT ON THE MALICIOUS PROSECUTION CLAIM ..............20

        A.    Plaintiff's Objections under FED.R.EVID. 401, 402, 403, 404(b) and 602 at
             Summary Judgment are Misplaced and Should be Overruled ...............................20

        B.    Plaintiff's Hearsay Objections to Police Reports Should be Overruled ...............21

**TABLE OF CONTENTS**
**-Continued-**

C.  Probable Cause was Present for the Criminal Charges as a Matter of Law ..........23

V.  DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S SUBSTANTIVE DUE PROCESS CLAIM.......................................................................27

A.  Plaintiff's Substantive Due Process Claim Is Untimely ........................................27

B.  There is Insufficient Evidence to Support a Claim that Defendants' Actions "Shock the Conscience.".............................................................................................29

VI.  PLAINTIFF'S IIED CLAIM FAILS ..................................................................................31

VII.  ALLEGATIONS OF CIVIL CONSPIRACY USING ONLY "CIRCUMSTANTIAL EVIDENCE" FAIL TO MEET THE CLEAR AND CONVICING STANDARD..........32

CONCLUSION......................................................................................................................34

# TABLE OF AUTHORITIES

**CASES**                                                                                                     **PAGE**

*Adams v. Ameritech Servs., Inc.*, 231 F.3d 414 (7th Cir. 2000)....................................................21

*Alvares v. Bd. of Educ. of City of Chicago,* No. 19-CV-5201,
2021 WL 1853220 (N.D. Ill. May 10, 2021) ...................................................................4

*Ammons v. Aramark Uniform Svcs.*, 368 F.3d 809 (7th Cir. 2004) ........................................ 3-4, 5

*Beaman v. Freesmeyer*, 776 F.3d 500 (7th Cir. 2015)...........................................................10, 11

*Bergquist v. Milazzo*, No. 18-CV-3619, 2021 WL 4439422 (N.D. Ill. Sept. 28, 2021) ...............24

*Bordelon v. Chgo. Sch. Reform Bd. of Trustees*, 233 F.3d 524 (7th Cir. 2000) .............................3

*Borsellino v. Goldman Sachs Grp., Inc.,* 477 F.3d 502 (7th Cir.2007) ........................................32

*Bridgestone/Firestone, Inc. v. Aldridge,* 688 N.E.2d 90, 179 Ill.2d. 141 (1997) .........................14

*Cady v. Sheahan,* 467 F.3d 1057 (7th Cir. 2006) ...................................................... 4-5

*Cairel v. Alderden*, 821 F.3d 823 (7th Cir. 2016)......................................................................22

*Camm v. Faith*, 937 F.3d 1096 (7th Cir. 2019)........................................................................9

*Castagna v. Newmar Corp.*, 340 F.Supp.3d 728 (N.D. Ind. Sept. 11, 2018) ..............................20

*Chandler v. Cross*, No. 3:13-CV-555-LRA,
2015 WL 5334290 (S.D. Miss. Sept. 14, 2015)...............................................................29

*Chavez v. Martinez,* 538 U.S. 760 (2003)..............................................................................29, 30

*Chicago Title Ins. Co. v. Sinikovic*, 125 F. Supp. 3d 769 (N.D. Ill. Aug. 28, 2015) ..............32, 33

*Cirro Wrecking Co. v. Roppolo*, 605 N.E.2d 544, 153 Ill.2d 6 (1992).........................................15

*Coleman v. Peoria*, 925 F.3d 336 (7th Cir. 2019) ..............................................................7, 9, 18

*Cooper v. Dubnik*, 963 F.2d 1220 (9th Cir. 1992)....................................................................30

*Council v. Dolton*, 764 F.3d 747 (7th Cir. 2014).....................................................................15

*Cty. of Sacramento v. Lewis*, 523 U.S. 833 (1998).....................................................................29

**CASES**                                                                     **PAGE**

*Daniel v. Cook Cty.*, 833 F.3d 728 (7th Cir. 2016).................................................. 12-13

*DeWalt v. Carter*, 224 F.3d 607 (7th Cir. 2000) ........................................................30

*District of Columbia v. Wesby*, 138 S.Ct. 577 (2018)...........................................24, 27

*Dukes v. Freeport Health Net. Mem. Hosp.*, No. 3:19-CV-50189,
2022 WL 1085208 (N.D. Ill. April 11, 2022) ......................................................24, 26

*DuPage Forklift Service, Inc. v. Material Handling Servs., Inc.*,
744 N.E.2d 845, 195 Ill.2d 71 (2001) .........................................................................16

*Fields v. Chicago*, No. 10-CV-1168, 2014 WL 12778835 (N.D. Ill. April 29, 2014) .................17

*Fox v. Hayes,* 600 F.3d 819 (7th Cir. 2010) ................................................................29

*General Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074 (7th Cir. 1997).............13

*Gibson v. Chicago*, No. 19-CV-4152, 2020 WL 4349855 (N.D. Ill. July 29, 2020)....................31

*Golbert v. Walker,* No. 18-CV-8176, 2021 WL 1056989 (N.D. Ill. March 18, 2021) .................34

*Gonzalez v. Entress*, 133 F.3d 551 (7th Cir. 1998).......................................................29

*Grayson v. City of Aurora*, 157 F.Supp.3d 725 (N.D. Ill. Jan. 17, 2016).......................................33

*Hall v. Idaho Dep't of Fish & Game*, No. 2:11-CV-622-BLW,
2013 WL 2458537 (D. Idaho June 6, 2013) ...............................................................31

*Harris v. Bornhorst*, No. 5:03-CV-1827, 2004 WL 7340519 (N.D. Ohio Aug. 13, 2004) ..........30

*Hayes v. State Teacher Certification Bd.*, 835 N.E.2d 146,
359 Ill. App. 3d 1153 (5th Dist. 2005)........................................................................15

*Hunter v. Bryant*, 502 U.S. 224 (1991)......................................................................27

*Illinois v. Gates*, 462 U.S. 213 (1983) .......................................................................24

*In re FedEx Grd. Pack. Sys. Employ. Litigation*, No. 3:05-MD-527 RM (MDL-1700),
2010 WL 1253891 (N.D. Ind. Mar. 29, 2010) ............................................................13

*In re Maurice,* 138 B.R. 890 (N.D. Ill. March 31, 1992)...............................................12

**CASES**                                                     **PAGE**

*Jackson v. Indian Prairie Sch. Dist. 204*, 653 F.3d 647 (7th Cir. 2011) .......................29

*Jackson v. Stubenvoll*, 16-CV-05746, 2022 WL 991950 (N.D. Ill. March 31, 2022) .................30

*Jefferson v. Guerrero*, No. 15-CV-2117, 2016 WL 4549101 (N.D. Ill. Sept. 1, 2016)...............20

*Johnson v. Cambridge Indust., Inc.*, 325 F.3d 892 (7th Cir. 2003) .................................7

*Kelley v. Myler*, 149 F.3d 641 (7th Cir. 1998)................................................25

*Kennedy v. Four Boys Lab. Serv., Inc.*, 657 N.E.2d 1130,
276 Ill. App. 3d 248 (1st Dist. 1995) ........................................................15

*Leal v. Krajewski*, 803 F.2d 332 (7th Cir. 1986) ...........................................15

*Little v. JB Pritzker for Governor*, No. 18-CV-6954, 2021 WL 3666429
(N.D. Ill. Aug. 18, 2021)....................................................................5

*Logan v. Wilkins*, 644 F.3d 577 (7th Cir. 2011) ...........................................29

*Mahnke v. Garrigan*, 428 Fed. App'x 630 (7th Cir. 2011)...................................26

*Mahoney v. Kesery*, 976 F.2d 1054 (7th Cir. 1992).........................................27

*McAllister v. Price*, 615 F.3d 877 (7th Cir. 2010) .........................................30

*McClure v. Owens Corning Fiberglas Corp.*, 720 N.E.2d 242, 188 Ill.2d 102 (1999) .................33

*McDonough v. Smith*, 139 S.Ct. 2149 (2019) ..........................................27, 28

*Mitchell v. Iowa Interstate RR Ltd.*, No. 07-1351,
2010 WL 2089301 (C.D. Ill. May 25, 2010) ................................................22

*Mooney v. Holohan*, 294 U.S. 103 (1935) ................................................10

*Moore v. Burge,* 771 F.3d 444 (7th Cir. 2014) ...........................................27, 28, 29

*Moran v. Calumet City*, 17-CV-2027, 2021 WL 2823086 (N.D. Ill. July 7, 2021).......3, 11, 12, 32

*Napue v. Illinois*, 360 U.S. 264 (1959) ...................................................10

*Nowak v. St. Rita High School*, 757 N.E.2d 471, 197 Ill.2d 381(2001) ...........14, 15, 19

**CASES**                                                                                    **PAGE**

*Opoka v. INS*, 94 F.3d 392 (7th Cir. 1996) ...................................................................13

*Patrick v. Chicago*, 974 F.3d 824 (7th Cir. 2020) .......................................................11

*People v. Christian*, 20 N.E.3d 1157, 2016 IL App (1st) 140030 (Mar. 4, 2016)........................18

*People v. Cole*, 104 N.E.3d 325, 2017 IL 120997 (2017) ............................................14

*People v. Moore*, 539 N.E. 2d 1380, 184 Ill.App.3d 102 (5th Dist. 1989),
*rev'd on other grounds* 138 Ill.2d 162 (1990) ...............................................................15

*Petty v. Chicago*, 754 F.3d 416 (7th Cir. 2014) ............................................................9

*Pyle v. Kansas*, 317 U.S. 213 (1942) ...........................................................................10

*Rice v. Burks*, 999 F.2d 1172 (7th Cir. 1993) ...............................................................7

*Rochin v. California*, 342 U.S. 165 (1952) ...................................................................29

*Saecker v. Thorie*, 234 F.3d 1010 (7th Cir. 2000) .......................................................8, 9

*Savory v. Cannon,* 532 F. Supp. 3d 628 (N.D. Ill., March 31, 2021) ...........................27

*Savory v. Cannon*, 947 F.3d 409 (7th Cir. 2020) .........................................................30

*Smith v. Burge*, 222 F.Supp.3d 669 (N.D. Ill. Nov. 28, 2016).....................................31

*State Bldg. Venture v. O'Donnell*, 940 N.E.2d 1122, 239 Ill.2d 151 (2010)................17

*Stinnett v. Iron Works Gym/Exec. Health Spa, Inc.*, 301 F.3d 610 (7th Cir. 2002).....................22

*Stokes v. Bd. of Educ.*, 599 F.3d 617 (7th Cir. 2010)....................................................26

*Swetlik v. Crawford*, 738 F.3d 818 (7th Cir. 2013).......................................................7

*Tahlequah v. Bond,* 142 S.Ct. 9 (2021)........................................................................10

*Talarico v. Dunlap*, 685 N.E.2d 325, 177 Ill.2d 185 (1997) .......................................17

*Torry v. Chicago*, 932 F.3d 579 (7th Cir. 2019) ..........................................................22

*U.S. v. Lechuga*, 975 F.2d 397 (7th Cir. 1992) .............................................................12

**TABLE OF AUTHORITIES**
**-Continued-**

**CASES**        **PAGE**

*U.S. v. Pless*, 982 F.2d 1118 (7th Cir. 1992) .............................................................21

*Wakehouse v. Goodyear Tire & Rubber Co.*, 818 N.E. 2d 1269,
353 Ill. App. 3d 346 (3rd Dist. 2004) ......................................................................15

*Waldridge v. Hoechst Corp.*, 24 F.3d 918 (7th Cir. 1994) ...........................................5

*Walker v. Chicago*, No. 20-CV-7209, 2021 WL 4080770 (N.D. Ill. Sept. 8, 2021) ...................28

*Walker v. White,* No. 16-CV-7024, 2021 WL 1058096 (N.D. Ill. March 19, 2021) ...................14

*Watson v. Raoul*, 2019 IL App (1st) 180477-U, 2019 WL 3332786 (July 24, 2019) .................18

*Weston v. Chicago*, No. 20-CV-6189, 2021 WL 2156459 (N.D. Ill. May 27, 2021) ...................27

*Williams v. Dart,* No. 18-CV-506, 2018 WL 11239693 (N.D. Ill. March 12, 2018) ...................30

*Williams v. Seniff*, 342 F.3d 774 (7th Cir. 2003) .........................................................33

**STATUTES**        **PAGE**

28 U.S.C. § 1915 .......................................................................................................18

735 ILCS 5/2-702 .....................................................................................................17

820 ILCS 405/1900 ...................................................................................................15

FED.R.CIV.P. 56 ........................................................................................................22

FED.R.EVID. 401 ......................................................................................................20

FED.R.EVID. 402 ......................................................................................................20

FED.R.EVID. 403 ...................................................................................................20, 21

FED.R.EVID. 404(b) ..............................................................................................20, 21

FED.R.EVID. 602 ..................................................................................................20, 21

FED.R.EVID. 803(8) ..................................................................................................12

# TABLE OF AUTHORITIES
## -Continued-

**STATUTES**           **PAGE**

Illinois' Unemployment Insurance Act (IUIA)...............................................................15

Local Rule 56.1 ................................................................................................. *passim*


**OTHER**           **PAGE**

*Black's Law Dictionary*, 2d Ed. ....................................................................................31

# INTRODUCTION

In a staggering 180 pages of filings in casual defiance of L.R. 56.1, Plaintiff has inundated this Court with immaterial information to distract from the fundamental factual and legal deficiencies in his submissions. To that end, Plaintiff has employed misdirection – substituting his attorney's theories of what *could* have happened where Plaintiff has testified he has no memory, seeking the benefit of speculation rather than reasonable inference, egregiously distorting the record, and relying on case law well out of context. But when the dust settles and the paper blizzard subsides, the undisputed record demonstrates there is no issue for trial and that Plaintiff has largely conceded several of Defendants' asserted bases for summary judgment.

Most significantly, as to his "fabricated confession" claim, to avoid judicial estoppel, Plaintiff has abandoned his theory that Defendants elicited a confession they knew to be scientifically impossible. He now concedes that Defendants did believe his October 4, 1995 confession was plausible, but nonetheless contends it was fabricated because the facts were fed to him. But this reformulation of his claim has eliminated Plaintiff's ability to satisfy an essential element of his fabrication claim: that Defendants created evidence they *knew* was false.

Additionally, Plaintiff's claim that Defendants fabricated his earlier September 15, 1995 statement is entirely unsupported by the record, which confirms that it was Plaintiff who first told Defendant Cunningham he spilled vodka and may have left a burning cigarette in the vicinity of the origin of the fire. Plaintiff himself has never denied this but now claims to have no recollection of his September 15 interview, which his lawyers impermissibly seek to exploit by advancing their own speculative theories about what they think Plaintiff and Defendants said to each other that day. But counsel's speculation that Plaintiff "must have" been fed a false statement is not a competent substitute for evidence. Finally, Plaintiff's remaining fabrication

claim based on Defendants' report of Plaintiff having interrupted their questioning of Tina about insurance is similarly unsupported.

With regard to the Fifth Amendment Coerced Confession claim against Defendants Cross and Guerrieri arising from Plaintiff's October 4, 1995 statement,[1] Plaintiff implicitly conceded that all elements necessary to apply collateral estoppel to the circuit and appellate court orders denying his certificate of innocence (COI) because his confession was voluntary, are satisfied. Moreover, his contention that this Court should disregard the final decisions of both courts because he now has more evidence that he could and should have presented (and probably did present) to the State court, finds no support in the law. Also, Plaintiff's contention that the COI statute on its face precludes application of collateral estoppel disregards basic principles of statutory construction while reading into the statute language which it does not contain.[2]

Lastly, on the malicious prosecution claim, Plaintiff did not dent Defendants' evidence that, aside from his confession, ample probable cause existed to charge Plaintiff because accidental causes for the fire had been eliminated, Plaintiff was one of only two people who could have started the fire, and Defendants had substantial evidence that it was Plaintiff, and not the victim's daughter Tina, who started the fire. Plaintiff levied misplaced evidentiary objections at the information Defendants properly considered and improperly ignored the totality of the circumstances in contending that isolated pieces of information did not, of themselves, show that

---

[1] Plaintiff has also abandoned his Fifth Amendment claim against all Defendants stemming from his September 15 statement and as a result, his entire coerced confession claim against Defendant Cunningham because Plaintiff admits he did not interrogate Plaintiff on October 3-4. (Dkt. 165 at n. 4; Dkts. 159-162.)

[2] As explained below, Plaintiff has also failed to demonstrate that his substantive due process claim is timely or that Defendants' conduct meets the high standard of shocking the conscience.

probable cause was present. But when properly framed, probable cause cannot plausibly be disputed[3] and Defendants are entitled to summary judgment.

## ARGUMENT

### I. PLAINTIFF REPEATEDLY VIOLATED L.R. 56.1.

#### A. Plaintiff's Egregious Disregard for L.R. 56.1(b)(2) and 56.1(e) is a Calculated Effort to Create an Illusion of Multiple Disputed Material Facts.

In responding to Defendants' statement of facts,[4] Plaintiff routinely violates L.R. 56.1(b)(2) and 56.1(e) by failing to confront Defendants' asserted facts, insufficiently supporting denials, advancing improper legal argument, and injecting additional facts under the guise of clarifications. (Dkt. 156 at ¶¶ 9, 12, 16-19, 23-32, 34-41, 43-44, 46, 48, 51-56, 58-80, 82-86, 90, 96-99, 101-109, 112-113, 115-118, 121-122.) At times, and again in utter disregard for L.R. 56.1, his responses exceed a page in length to a single fact. His flouting of L.R. 56.1(e), which requires denials to include cites to "specific evidentiary material that controverts the fact and must concisely explain how the cited material controverts the asserted fact", asks the Court to "wade through improper denials and legal argument in search of a genuinely disputed fact." *Bordelon v. Chgo. Sch. Reform Bd. of Trustees*, 233 F.3d 524, 529 (7th Cir. 2000); *see also Moran v. Calumet City*, 17-CV-2027, 2021 WL 2823086, at *1 (N.D. Ill. July 7, 2021) ("The place to argue the legal import of the allegation is in [Plaintiff's] response brief, not in [Plaintiff's] L.R. 56.1(b) response."). Moreover, L.R. 56.1(e)(2) expressly prohibits the presentation of "new facts, meaning facts that are not fairly responsive to the asserted fact to which the response is made." *See also Ammons v. Aramark Uniform Svcs.*, 368 F.3d 809, 817

---

[3] Plaintiff has also abandoned his supervisory liability claim against Defendant Cross. (Dkt. 165 at n. 3.)
[4] "Def. SOF" refers to Defendants' Rule 56 Statement of Uncontested Facts, Dkt. 137. Plaintiff's response to Defendants' Statement of Uncontested Facts is noted by its docket number, Dkt. 156. "SOAF" refers to Plaintiff's Statement of Additional Material Facts Under Local Rule 56.1(b)(3), Dkt. 164. Defendants' response to the SOAF is noted as "Def. Resp. to SOAF."

(7th Cir. 2004) (a party should reserve their additional facts for their statement of additional facts). Plaintiff's injection of additional facts in responding to Defendants' L.R. 56.1(a)(2) Statement is particularly egregious here, where he has separately asserted 155 additional facts. (Dkt. 156 at ¶¶ 19, 23-26, 28-32, 37, 38, 40, 41, 43, 44, 46, 48, 51-56, 59, 60-62, 64, 67, 70, 75-80, 83, 85, 90, 95, 96, 98-99, 101-102, 105, 107-109, 112, 115-118, 122.) As such, Plaintiff's responses should be disregarded, and Defendants' facts should be deemed admitted. *See, e.g.*, *Ammons*, 368 F.3d at 817-818 (district court did not abuse its discretion in striking those responses which failed to comply with L.R. 56.1).

### B.      Plaintiff's Statement of Additional Facts (SOAF) Violates L.R. 56.1 and Should be Disregarded.

Review of Plaintiff's 155 additional facts has confirmed Defendants' initial suspicion – that Plaintiff's request for leave to file nearly four times the 40-fact allowance for a non-movant was a ploy to deluge this Court with immaterial, mischaracterized, and duplicative facts, in order to manufacture the illusion of disputed material facts that do not exist. (Dkts. 157, 158, 163.)

To begin, almost 50 of Plaintiff's facts merely restate facts already asserted in Defendants' 56.1(a)(2) Statement. (SOAF ¶¶ 1, 8, 10, 13, 17-18, 27, 29, 31-32, 36-39, 41-43, 46-49, 59, 64, 70-72, 74-75, 77, 79, 85, 105, 108-109, 112-113, 115-117, 126, 129, 145-148, 150-151, 154, 156.) And those that are not redundant generally include immaterial assertions that have no bearing on any issue Defendants raised in moving for summary judgment. (SOAF ¶¶ 1-7, 9, 11-12, 14-17, 19-26, 29-30, 33, 35-37, 39, 44-46, 50-51, 55-56, 58-59, 61, 72-73, 75-92, 95-99, 101-107, 110-114, 116, 118-123, 125, 127, 145, 147, 149, 154.) Several paragraphs are not even facts but rather constitute argument in violation of L.R. 56.1(d)(4). (SOAF ¶¶ 24, 30, 33, 44, 45, 62, 68-70, 94, 134, 137, 149, 154); *Alvares v. Bd. of Educ. of City of Chicago,* No. 19-CV-5201, 2021 WL 1853220, at *1 (N.D. Ill. May 10, 2021) (citing *Cady v. Sheahan,* 467 F.3d

1057, 1060–61 (7th Cir. 2006) ("disregard legal arguments in the statement of facts")). Lastly, Plaintiff repeatedly mischaracterizes the record and asserts facts that are not supported by his cited exhibits. (SOAF ¶¶ 1, 2, 8, 9, 13, 15, 21, 24, 28-30, 32-34, 36, 44, 45, 49-52, 54-57, 59-63, 65-70, 77, 79, 83, 84, 86, 89, 93-95, 99, 106-110, 114, 118-120, 123, 124, 134, 136, 137, 141, 153, 154.) Neither Defendants nor the Court should have to "scour the record looking for factual disputes[.]" *Ammons*, 368 F.3d at 818, quoting *Waldridge v. Hoechst Corp.*, 24 F.3d 918, 922 (7th Cir. 1994); *Little v. JB Pritzker for Governor*, No. 18-CV-6954, 2021 WL 3666429, at *3 (N.D. Ill. Aug. 18, 2021) (disregarding statements where the "record citation did not support the factual assertion").

Finally, Plaintiff cavalierly violated the specific mandate of L.R. 56.1(b)(2) by reattaching many exhibits that were previously attached to Defendants' L.R. 56.1(a)(2) statement, thus needlessly doubling the materials submitted to this Court and wasting its time and resources in what appears to be Plaintiff's top priority of creating the illusion of disputed facts. Plaintiff's defiance of L.R. 56.1(b)(3) should lead the Court to disregard his SOAF.

## II.    THE FABRICATION CLAIM CANNOT SURVIVE SUMMARY JUDGMENT.

### A.    Plaintiff's Failed Memory Regarding His September 15 Interview Does Not Allow his Lawyers to Contradict Undisputed Evidence with Speculation.

Plaintiff's attorneys still contend his September 15 handwritten statement to Defendant Cunningham was fabricated even though Defendants identified indisputable evidence that during his interview that day: (1) Plaintiff volunteered that on the day of the fire he spilled vodka and may have left a burning cigarette in the vicinity of the fire's origin, and (2) Cunningham had no reason to know this information was untrue. (Dkt. 136 at 13; Def. SOF ¶¶ 51-52, 56.) Indeed, Plaintiff concedes that he handwrote and signed the September 15 statement (Dkt. 156 at ¶ 54) and does not deny that he volunteered this information to Cunningham; rather he testified he has

no recollection of the interview. (*Id*. at ¶ 51.) Plaintiff also did not challenge the voluntariness of the September 15 statement during his criminal case and does not challenge it here. (Def. SOF ¶¶ 97, 104, 105; Dkt. 165 at 20, n. 4.) To be sure, the September 15 statement was admitted against Plaintiff at his criminal trial without objection. (Def. SOF ¶¶ 97, 104, 105.)

In response, Plaintiff's current attorneys seek speculation over inference by presenting a fantastical hypothesis that Plaintiff does not remember the September 15 interview because he was "likely" inebriated, and if he *could* remember it, he would know that Defendant *Cross* fed him the statements that he spilled vodka and left a cigarette near the location of the fire's origin. (Dkt. 165 at 35.) This is wholly unsupported by the record. First, it is undisputed that Plaintiff spoke with Cunningham about the vodka spill and cigarette *prior* to speaking with Cross at the NPD on September 15. (Def. Resp. to SOAF ¶ 69.) Plaintiff's counsel takes creative liberties with the record by citing Plaintiff's deposition testimony that Cross fed him the information that he spilled vodka on the date of the fire, but his counsel elicited no foundation at the deposition for which "statement" Plaintiff was referencing (September 15 or October 4). (*See* Dkt. 156 at ¶ 51; Plt. Ex. 14 to SOAF, Plt. Dep. at 395:23-396:16.). Accordingly, and in light of Plaintiff's admission that he has *no recollection* of the September 15 interview (Dkt. 156 at ¶ 51), this testimony can only plausibly and logically be read to support the assertion that Cross fed Plaintiff the information on October 4.

Moreover, Plaintiff's Counsel's speculation that Plaintiff was "likely" intoxicated on September 15 at the NPD is directly contradicted by Plaintiff's own testimony that he was *not* under the influence upon his arrest on September 15. (*See* Def. Resp. to SOAF ¶ 52.) Either way, sober as Plaintiff claims or intoxicated as his lawyers speculate, Plaintiff's alleged inability to remember this interview does not give his attorneys license to make up whatever dialogue from

the September 15th interview that suits their theory of the case. *That* is fabrication and it is precisely what Plaintiff's counsel are attempting. At bottom, Plaintiff's speculation about the conversation is far from competent evidence upon which a jury could find in his favor.

Summary judgment is not the time to speculate; it is "the put up or shut up" moment in litigation and Plaintiff, having failed to develop any evidence that the September 15 statement was fabricated, cannot substitute theory for his lack of memory. *Johnson v. Cambridge Indust., Inc.*, 325 F.3d 892, 901 (7th Cir. 2003) (internal quotations omitted); Def. SOF ¶¶ 48-56. *See also Swetlik v. Crawford*, 738 F.3d 818, 829 (7th Cir. 2013) (entitlement to reasonable inferences "does not extend to drawing inferences that are supported by only speculation or conjecture") (internal quotation omitted); *Rice v. Burks*, 999 F.2d 1172, 1175 (7th Cir. 1993) ("[j]ust because an unfortunately [ ] unclear record leaves open a universe of possibilities…does not mean a trial is necessary to sort through the hypothetical possibilities.") Defendants are entitled to summary judgment on Plaintiff's claim that the September 15 statement was fabricated and Defendant Cunningham is further entitled to summary judgment on the entirety of Count I because that is the only piece of evidence he is alleged to have fabricated.[5]

### B. Plaintiff Has Effectively Abandoned His Fabricated Confession Claim (October 4 Statement).

To prevail on his fabricated confession claim, Plaintiff must offer evidence that clears the high bar that Cross and Guerrieri knew Plaintiff's confession was false. *See, e.g., Coleman v. Peoria*, 925 F.3d 336, 344 (7th Cir. 2019). Defendants' motion explained that Plaintiff's fabricated confession claim fails as a matter of law because (1) Plaintiff's theory that Defendants

---

[5] Plaintiff initially argued in his brief that Cunningham participated in the October 3-4, 1995 interrogation but has since withdrawn that accusation. (Dkt. 165 at 35-36; Dkts. 159-162.) As stated in the opening brief, Cunningham's lack of involvement on October 3-4 necessitates dismissal of any claim that he failed to intervene on that date. (Dkt. 136 at 28-29.)

knew the confession contained a scientifically impossible ignition theory is barred by judicial

estoppel; (2) there is no evidence that Defendants took a knowingly false confession; and/or (3)

Cross and Guerrieri are entitled to qualified immunity. (Dkt. 136 at 9-16.)

In discovery, Plaintiff contended that, despite believing Plaintiff was guilty of

intentionally setting the fire, Cross and Guerrieri fabricated his confession because they knew or

should have known it included a scientifically impossible ignition scenario. (Def. SOF ¶ 124

citing Def. Ex. 51, Pl.'s Ans. to No. 2.) Because Defendants' knowledge that the ignition

scenario was false is critical to the survival of a fabrication claim premised on this theory,

Defendants argued that Plaintiff was judicially estopped from taking that position because he

successfully overturned his conviction by arguing that the scientific impossibility of his

confession was "new evidence" which had to be unknown at the time of his original criminal

trial. (Dkt. 136 at 11-12, citing, *Saecker v. Thorie*, 234 F.3d 1010 (7th Cir. 2000)).

To avoid estoppel, Plaintiff's response scrambled to abandon his civil litigation theory

that Defendants knew the ignition scenario was false in 1995, while reembracing his contrary

post-conviction theory that Defendants did not know it was false in 1995. (Dkt. 165 at 30-34.)

Plaintiff then argued that, despite Defendants' unawareness of the confession's alleged falsity, it

was still fabricated because Defendants "fed" him the ignition scenario on October 4, which later

turned out to be false. (*Id*. at 33-35.) But Plaintiff's machinations effectively eviscerated the

fabricated confession claim because, "fed", "contaminated", or otherwise, he has no evidence-

and now not even a theory – that Defendants knowingly took a false confession from Plaintiff.

Indeed, it is now undisputed that when Cross and Guerrieri took Plaintiff's confession, they (1)

believed Plaintiff intentionally started the fire and had gathered evidence that supported that

belief (*see infra*, Sec. IV); (2) knew Plaintiff had stated in his September 15 statement that he

8

spilled vodka and may have left a cigarette unattended; and (3) believed Plaintiff's confession contained a plausible ignition scenario. (Dkt. 165 at 30-34; Def. SOF ¶¶ 56, 89-91, 124.) As a result, there was no creation of knowingly false evidence and Plaintiff's effort to advance a fabrication claim on these facts is a mere repackaging of his Fifth Amendment Coerced Confession Claim. (*See* Dkt. 136 at 13-15.) *See Coleman*, 925 F.3d at 346; *Camm v. Faith*, 937 F.3d 1096, 1112 (7th Cir. 2019); *Petty v. Chicago*, 754 F.3d 416, 423 (7th Cir. 2014).

Lastly, despite abandoning the theory that Defendants knew or should have known the ignition scenario was false, Plaintiff strangely argues in his response that judicial estoppel does not apply because he never successfully convinced the criminal court to rule the confession was fabricated. (Dkt. 165 at 32.) It is unclear why Plaintiff bothers with this argument because the abandonment of his claim that Defendants knew the confession was false in 1995 likewise negated any need for Defendants to rely on judicial estoppel. However, in the interest of a fulsome response, Plaintiff makes this argument without even addressing *Saecker,* which clearly holds that a criminal defendant who successfully argues that evidence is "new" in post-conviction proceedings cannot later claim the same evidence was known all along in a subsequent civil suit. 234 F.3d at 1014-1015. Thus, had Plaintiff continued to pursue the theory that Defendants knew the ignition scenario was scientifically impossible, he would be judicially estopped from doing so by his previous contention that the scientific evidence was "new", regardless of the criminal court's refusal to rule that the confession was fabricated.

### C. Defendants are Alternatively Entitled to Qualified Immunity.

Defendants have argued that they are entitled to qualified immunity because it was not clearly established that their decision to revisit Plaintiff's vodka/cigarette details from September 15 during an October 4 conversation that evolved into an admission containing an incorrect

ignition scenario, constitutes fabrication. (Dkt. 136 at 15-16.) Assuming the truth of Plaintiff's facts, it was not clearly established in 1995 that a police officer's attempt to elicit admissions by suggesting a scenario for the commission of an offense that he believed to be true or believed to be the product of the suspect "minimizing" his culpability constituted a fabrication of evidence. (*Id*.) Refusing to confront that argument on its terms, Plaintiff unprofessionally and sarcastically describes it as a "hyper-micro argument that no court had previously held that a left-handed police officer fabricates evidence when he or she 'suggest[s] an incorrect ignition scenario based on details first offered by the suspect in order to elicit an admission.'" (Dkt. 165 at 36-37; Dkt. 136 at 15.)

Sarcasm aside, Plaintiff then resorts to the frequently discredited tactic of defining the constitutional right at stake at too broad a level of generality by contending that "[m]ore than three decades before Plaintiff's interrogation and conviction, *Mooney v. Holohan*, 294 U.S. 103 (1935), *Pyle v. Kansas*, 317 U.S. 213 (1942), and *Napue v. Illinois*, 360 U.S. 264 (1959), made clear to police officers in Defendants' position that fabricating evidence violated a criminal defendant's right." (Dkt. 165 at 36-37.) This formulation misconstrues the law which requires Plaintiff to demonstrate that it was clearly established, through factually analogous case law or through the obvious egregiousness of the alleged misconduct, that Defendants' actions under the specific facts violated the constitution. *Beaman v. Freesmeyer*, 776 F.3d 500, 508-509 (7th Cir. 2015); *see also*, *Tahlequah v. Bond,* 142 S.Ct. 9, 11 (2021) (per curiam) ("We have repeatedly told courts not to define clearly established law at too high a level of generality.").

Obviously, it has long been illegal to fabricate evidence, Defendants never suggested otherwise, and Plaintiff's recitation of decades-old cases standing for that general proposition are not helpful. The issue of course, is not whether it was illegal to fabricate evidence, but whether,

10

it was clearly established that a police officer's eliciting of a confession through suggestions of various scenarios, which they believe to be plausible, constitutes fabrication. Defendants pointed out in their opening brief that they uncovered no controlling precedent to support such a conclusion (Dkt. 136 at 15-16), and despite Plaintiff's flippant dismissal of the argument, his response fails to cite a single authority which remotely suggests that such tactics constitute a "fabrication" of evidence, though it was undeniably his burden to do so. *See, e.g., Beaman*, 776 F.3d at 508-509. As such, Defendants are also entitled to qualified immunity on the fabricated confession claim.

> **D.** **The Fabrication Claim Regarding Plaintiff's Interruption of Defendants' Questioning of Tina is Speculative and Premised on Immaterial Distinctions.**

Plaintiff clarified in his response that his only claim regarding Tina is that Defendant Cross falsely reported and testified that when Cross asked Tina whether her mother had life insurance, Plaintiff said, "we don't know anything about that" and appeared to be trying to answer for Tina. (Dkt. 165 at 37-38.) However, despite his counsel's speculation to the contrary, Plaintiff has never denied saying "we don't know anything about that", and even admitted that he interjected during the conversation, claiming he "suggested" that Defendants end their questioning because Tina was upset. (SOAF at ¶ 34; Def. SOF ¶ 17.)

At any rate, the difference between Plaintiff's memory that he interjected by suggesting the questioning should stop and Cross's contention that Plaintiff said "we don't know anything about that" can hardly be considered "material" to his conviction, as required to support a fabrication of evidence claim. *Moran*, 2021 WL 2823086, at *7 quoting *Patrick v. Chicago*, 974 F.3d 824, 825 (7th Cir. 2020) (materiality for purposes of a fabrication claim means there was "a reasonable likelihood the evidence affected the judgment of the jury.") Plaintiff was convicted by expert testimony that the fire was incendiary, uncontested evidence that he was one of only two

people who could have started the fire, his four inculpatory statements, and even his own expert's testimony that the ignition scenario in his confession was plausible (Def. SOF ¶¶ 100-110.) The slightly varying interpretation of his exchange with Defendants about insurance cannot arguably be considered "material" to that conviction. *Moran*, 2021 WL 2823086, at *7.

## III. PLAINTIFF IS COLLATERALLY ESTOPPED FROM PURSUING HIS COERCED CONFESSION CLAIM.

Plaintiff's confession was already found to be voluntary in his COI proceedings, that finding was affirmed on appeal, (Dkt. 156 at ¶¶ 119-123) and Plaintiff does not dispute that the elements of collateral estoppel are satisfied. (Dkt. 165 at 23-25.) Plaintiff's effort to circumvent collateral estoppel is two pronged. Initially, he contends that Illinois' COI Statute's plain language prevents this Court from finding that collateral estoppel applies to his Fifth Amendment claim. (*Id*. at 21-23.) Second, he identifies differences between the evidence offered in the COI proceedings and the evidence he advanced in this lawsuit. (*Id.* at 23-25.)

### A. Plaintiff's Objections that the Criminal Court Opinions from his Post-Conviction and COI Proceedings are Hearsay and not Subject to Judicial Notice are Frivolous.

Plaintiff objects that the state court opinions are hearsay and not subject to judicial notice. But court findings fall within the hearsay exception for public records, FED.R.EVID. 803(8). *U.S. v. Lechuga*, 975 F.2d 397, 398-99 (7th Cir. 1992) (court order setting conditions of release, appearance bond, and minutes from court proceedings admissible under Rule 803(8)); *In re Maurice,* 138 B.R. 890, 894 (N.D. Ill. March 31, 1992) (state court factual findings admissible under Rule 803(8)). Similarly, his contention that this Court cannot take judicial notice of the state court factual findings and legal conclusions in their decisions on his COI petition is fundamentally flawed. (*See* Dkt. 156 at ¶¶ 121-122.) A court's inability to judicially notice a reasonably disputed finding of fact from another proceeding for its truth (*see Daniel v. Cook*

*Cty.*, 833 F.3d 728, 742 (7th Cir. 2016); *General Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1082, n.6 (7th Cir. 1997)), does not prevent it from judicially noticing that a legal issue has been litigated and determined in a prior proceeding for purposes of collateral estoppel. The principle that the decision of another court is a proper subject of judicial notice is well-settled. *Opoka v. INS*, 94 F.3d 392, 394 (7th Cir. 1996). Courts routinely take judicial notice of the actions of and proceedings in other courts, including court records and their contents. *See General Elec.,* 128 F.3d at 1081-82 (collecting cases). Court documents from another case may be used to show they were filed, a party took certain positions, and certain judicial findings, allegations or admissions occurred.[6] *In re FedEx Grd. Pack. Sys. Employ. Litigation*, No. 3:05-MD-527 RM (MDL-1700), 2010 WL 1253891 at *4 (N.D. Ind. Mar. 29, 2010). Plaintiff's evidentiary challenges are frivolous.

### B.    The Illinois COI Statute Does Not Preclude Collateral Estoppel.

Plaintiff's contention that the Illinois COI Statute itself prevents this Court from applying collateral estoppel to the state courts' findings of voluntariness fails to confront the actual statutory language. (Dkt. 165 at 21-23.) While placing total reliance on the language that "*res judicata*" effect should not be accorded to "[t]he *decision to grant or deny*" a COI, Plaintiff downplays the statute's silence regarding application of collateral estoppel (as distinct from res judicata) to specific findings of fact (as distinct from the ultimate decision) reached by courts during COI proceedings. Indeed, Plaintiff simply ignored Defendants' argument that the legislature easily could have included plain language precluding the use of findings of facts and law in other proceedings if it had so intended, and as it has done with other statutes. (Dkt. 136 at

---

[6] For this same reason, Plaintiff's objection to Defendants' reliance on Plaintiff's positions taken and court decisions rendered in his post-conviction proceedings and motion to suppress are without merit. (*See* Dkt. 156 at ¶¶ 97, 112, 115-118.)

20-21.) He also ignored Defendants' argument that the COI statute's silence on the use of findings of fact and law should not preclude the application of collateral estoppel under the maxim of construction "*expressio unius est exclusio alterus,*" (the expression of one thing implies the exclusion of the other).[7] (Dkt. 136 at 21.) In other words, the statute's references only to the "decision to grant or deny" and to "*res judicata*" necessarily implies that its omission of findings of fact and law, and collateral estoppel, was intentional. Plaintiff's unsupported contention that the "decision" to grant or deny the COI is synonymous with findings of law or fact (Dkt. 165 at 23) is non-sensical both as a matter of logic and law as he is prohibited from injecting provisions not found in the statute. *See Bridgestone/Firestone, Inc. v. Aldridge,* 688 N.E.2d 90, 179 Ill.2d. 141, 154-55 (1997).

Plaintiff's effort to conflate the legislature's use of the term res judicata with collateral estoppel flatly ignores *Nowak v. St. Rita High School*, 757 N.E.2d 471, 197 Ill.2d 381, 389-91 (2001) where the Illinois Supreme Court distinguished the two doctrines, explaining that res judicata or "claim preclusion" applies to "claims" that were or could have been previously litigated, whereas collateral estoppel only prevents parties from relitigating a specific material fact or question that was previously litigated and actually decided. Plaintiff's disregard of *Nowak* similarly ignored the "well settled [premise] that when statutes are enacted after judicial opinions are published, it must be presumed that the legislature acted with knowledge of the prevailing case law." *People v. Cole*, 104 N.E.3d 325, 2017 IL 120997 ¶ 30 (2017). In that regard, all of

---

[7] While Defendants explained that use of statutory construction principles is supported by the differing conclusions courts have reached about the preclusive effect of COI proceedings (Dkt. 136 at 20), Plaintiff responded only by addressing cases he believes support his position in an ostrich-like approach that ignored contrary authorities. Further, even Plaintiff's own cited case of *Walker v. White,* No. 16-CV-7024, 2021 WL 1058096 at *13 (N.D. Ill. March 19, 2021) fails to support his position as it did not even address preclusion but only held that receipt of a COI was evidence of innocence.

Plaintiff's cited cases,[8] with the sole exception of *Hayes v. State Teacher Certification Bd.*, 835 N.E.2d 146, 359 Ill. App. 3d 1153, 1161 (5th Dist. 2005) were decided before *Nowak*, and even *Hayes* recognized that "collateral estoppel, also known as 'issue preclusion'", is "distinct" from "true *res judicata*, which is known as 'claim preclusion'". *Id.* at 1161.

Plaintiff's reliance on two Seventh Circuit cases to equate collateral estoppel with res judicata is similarly unavailing. Initially, *Leal v. Krajewski*, 803 F.2d 332 (7th Cir. 1986) did not even construe an Illinois statute but rather applied Indiana law. *Id.* at 334-35. *Council v. Dolton*, 764 F.3d 747 (7th Cir. 2014) does construe Illinois' Unemployment Insurance Act (IUIA), but unlike the COI statute, the IUIA *is* comprehensive in its language regarding preclusive effect, thus bolstering Defendants', not Plaintiff's position. *See* 820 ILCS 405/1900(B) ("*No finding, determination, decision, ruling or order (including any finding of fact, statement or conclusion made therein)* issued pursuant to this Act shall be admissible or used in evidence in any action other than one arising out of this Act, nor shall it be binding or conclusive except as provided in this Act, nor shall it constitute res judicata, regardless of whether the actions were between the same or related parties or involved the same facts.") (emphasis added). Contrary to the COI statute, the IUIA specifically prohibited *any* use rather than merely "*res judicata*" effect, and it extended to "finding[s], determination[s], decision[s], ruling[s] or order[s] (including any finding[s] of fact, statement[s] or conclusion[s] made therein"), rather than just the decision itself. As a result, the IUIA specified the prohibited uses glaringly absent here, which provided the legislative intent needed to prevent the traditional application of collateral estoppel to rulings

---

[8] *Cirro Wrecking Co. v. Roppolo*, 605 N.E.2d 544, 153 Ill.2d 6, 20 (1992); *Wakehouse v. Goodyear Tire & Rubber Co.*, 818 N.E. 2d 1269, 353 Ill. App. 3d 346, 351 (3rd Dist. 2004); *Kennedy v. Four Boys Lab. Serv., Inc.*, 657 N.E.2d 1130, 276 Ill. App. 3d 248, 254 (1st Dist. 1995); *People v. Moore*, 539 N.E. 2d 1380, 184 Ill.App.3d 102, 104 (5th Dist. 1989), *rev'd on other grounds* 138 Ill.2d 162 (1990).

of law and findings of fact, *DuPage Forklift Service, Inc. v. Material Handling Servs., Inc.*, 744 N.E.2d 845, 195 Ill.2d 71, 77-79 (2001).

Finally, according fully litigated findings of fact and law in COI proceedings their usual preclusive effect is not only consistent with the plain language of the statute and principles of statutory construction; it is far and away the most logical reflection of the legislature's intent. In deciding that the *decision* to grant or deny a COI should not have res judicata effect, the legislature was presumably seeking to prevent courts from finding that a petitioner's receipt of limited compensation in the court of claims following grant of a COI would effectively bar his ability to pursue further civil claims for additional compensation. Similarly, not according res judicata effect to the denial of a COI allows for the pursuit of civil claims arising from an arrest and conviction that were not specifically raised and decided in more limited COI proceedings.

But those common-sense principles are a far cry from what Plaintiff seeks here: a second bite at relitigating the precise *issue* that was specifically litigated and decided by a court of competent jurisdiction and affirmed on appeal. That initiative flatly contravenes the entire purpose of collateral estoppel which, when its elements are satisfied, is intended to "promote fairness and judicial economy by preventing the re-litigation of issues that have already been resolved in earlier actions." *DuPage Forklift Service, Inc*, 744 N.E.2d at 849. Nothing in the legislature's election to prevent the *decision* in a COI proceeding from having res judicata effect suggests that it was seeking to circumvent principles of economy and fairness by permitting the re-litigation of specific issues that were decided during COI proceedings.

## C.     All Requirements for Collateral Estoppel are Satisfied.

Plaintiff does not contest that 1) he was a party to the adjudication of his COI petition; 2) the issue decided in the COI proceeding – the voluntariness of his confession to the police – is

identical to the issue presented in his coerced confession claim; 3) there was a final adjudication on the merits confirmed on appeal; 4) the finding was necessary to the judgment in the COI proceeding because whether he voluntarily caused or brought about his conviction is a requisite element for a COI, 735 ILCS 5/2-702(g); or that 5) he actually litigated the issue in the COI proceeding. Hence, it is undisputed that all requirements of collateral estoppel have been met. *Talarico v. Dunlap*, 685 N.E.2d 325, 177 Ill.2d 185, 191 (1997).

Instead, Plaintiff claims the evidence *he presented* in the COI proceeding was different in quantity and quality, and therefore collateral estoppel should not apply. (Dkt. 165 at 23-24.) This argument is a nonstarter because: (1) it has no basis in law; (2) the court *did* have all relevant evidence when determining the voluntariness of the confession; and (3) even if it had not, Plaintiff, as the petitioner, had the opportunity to offer whatever evidence he deemed relevant.

First, collateral estoppel does not require a comparison of the quantity or quality of the evidence offered during the prior and current proceeding. *Talarico*, 177 Ill.2d at 191. What is required is that the person sought to be bound actually litigated the same issue in the first proceeding. *Id.* Plaintiff does not deny that he actually litigated the voluntariness of his confession, nor could he in light of his burden as the petitioner for a COI, the uncontested facts, his strong incentive to litigate the issue, and his ability to appeal the decision. Rather, Plaintiff's argument proposes he should get a second bite at the apple so he can present a more "fulsome" record. (Dkt. 165 at 24.) Plaintiff's cited cases do not support his argument.

Specifically, Plaintiff's reliance on *Fields v. Chicago*, No. 10-CV-1168, 2014 WL 12778835 at *4 (N.D. Ill. April 29, 2014), is misplaced because in that case the decision to deny the COI was pending on appeal and therefore lacked finality for preclusive purposes. *See State Bldg. Venture v. O'Donnell*, 940 N.E.2d 1122, 239 Ill.2d 151, 158-59 (2010) (finality requires

potential for appellate review to have been exhausted). *People v. Christian*, 20 N.E.3d 1157,

2016 IL App (1st) 140030 (Mar. 4, 2016) also does not support Plaintiff's position. There, the

court simply decided that an Illinois Torture Inquiry and Relief Commission's (TIRC) decision

did not have preclusive effect in a circuit court proceeding because TIRC was not a judicial or

adjudicative body to which collateral estoppel applied (*Id.*, at ¶ 84), and none of collateral

estoppel's required elements were present. *Id.*, at ¶¶ 94-99. Plaintiff similarly misses the mark

with *Watson v. Raoul*, 2019 IL App (1st) 180477-U, 2019 WL 3332786 (July 24, 2019), where

the court declined to apply res judicata to a brief minute entry dismissing a *pro se* case under 28

U.S.C. § 1915 (e)(2)(b) without either party having weighed in before the ruling and where

extraordinary circumstances were present. *Id.*, at ¶¶ 11-12, 27-29.

Further, despite Plaintiff's contentions to the contrary, the circuit court of DuPage County

had access to the entire record – the parties agreed the court could take judicial notice of it in

addition to reviewing the exhibits provided by the parties. (Def. Ex. 35 to SOF ¶ 121 at 6:2-8.)

Plaintiff's speculation that we do not know what specifically the court reviewed (Dkt. 165 at 24)

is beside the point and is the sort of hypothetical argument that, if accepted, would render

preclusion doctrines meaningless. *See, e.g., Coleman*, 925 F.3d at 345 (explaining speculation or

conjecture will not defeat summary judgment). Similarly, Plaintiff contends the court did not

take live testimony without claiming that he ever requested, and/or was denied an evidentiary

hearing, or whether he proffered any evidence of any kind that he was not allowed to present.

And Plaintiff's suggestion that the record before the court was insufficient (Dkt. 165 at

24) ignores the fact that it was he who provided the record (SOAF ¶¶ 150, 152-53), and he

cannot explain why he should benefit from his own failure to provide the court with what he now

deems necessary evidence to rule on the voluntariness of his confession. Regardless, Plaintiff's

claim that the record is more "fulsome" here is also belied by the record of the underlying criminal proceedings which included a pre-trial suppression hearing, a trial, a direct appeal, a third-stage post-conviction hearing, and a re-trial. (Dkt. 165 at 24.) More specifically, Plaintiff and Defendants Cross and Guerrieri testified at the pre-trial suppression hearing about their interactions on October 3-4, 1995, and the circumstances before, during, and after Plaintiff's confession. (Plt. Exs. 36, 38, 44, 90; Def. Ex. 55 to Def. Resp. to SOAF ¶ 154 at pp. 2-15.) Testimony about the detectives' participation in the service of divorce papers on Plaintiff by a process server was also elicited during the criminal proceedings (*Id.* at pp. 12, 35; Plt. Ex. 46), and an expert clinical psychologist testified on Plaintiff's behalf regarding his mental condition. (*Id.* at p. 20.)

To that end, Plaintiff's invocation of the equitable exception to collateral estoppel discussed in *Nowak* turns equity on its head. Plaintiff filed and lost his pre-trial motion to suppress his confession based on his claims that the confession was involuntary. (*See* Def. Ex. 55 to Def. Resp. to SOAF ¶ 154 at pp. 2-15.) He continued, unsuccessfully, to reassert these claims in his 2015 successive post-conviction petition (SOAF at ¶¶ 144-145), and in a pre-trial motion for his 2018 re-trial. (Def. Ex. 56 to Def. Resp. to SOAF ¶ 155 at pp. 1-14.) Notwithstanding his repeated attempts, Plaintiff inexplicably now claims that in his COI proceeding, he did not sufficiently present evidence of his allegedly involuntary confession in order to meet his burden of proving the requisite element that he did not cause or bring about his own conviction. Any prejudice or unfairness occasioned by his failure to do so was of his own doing.

Because all the elements of collateral estoppel have been met on the issue of the voluntariness of Plaintiff's confession, and no equitable exception applies, Defendants are entitled to summary judgment in their favor on Plaintiff's Fifth Amendment claim.

## IV. THE PRESENCE OF PROBABLE CAUSE ENTITLES DEFENDANTS TO SUMMARY JUDGMENT ON THE MALICIOUS PROSECUTION CLAIM.

Defendants' motion detailed the plethora of evidence generated during the investigation that established probable cause that an arson had been committed and that Plaintiff was the perpetrator. (*See* Dkt. 136 at 23-28.) Indeed, Plaintiff was one of only two people – the other being the victim's own daughter Tina – who plausibly could have started the fire. Plaintiff wholly ignores the force of this reality, and instead employs misdirection by first trying to limit, through evidentiary objections, the information that Defendants could properly consider, and by isolating, minimizing and mischaracterizing the evidence Defendants gathered against Plaintiff. Probable cause is undeniable.

### A. Plaintiff's Objections under FED.R.EVID. 401, 402, 403, 404(b) and 602 at Summary Judgment are Misplaced and Should be Overruled.

Plaintiff objects under FED.R.EVID. 401, 402, and 403 to Defendants' reliance on information they learned during the investigation, in particular Plaintiff's and Tina's ages, Tina's developmental disabilities, information suggesting Plaintiff was a con artist with a criminal history of fraud who had conned others out of their money and was plotting to start the fire for insurance proceeds, and other information they learned from Tina. (*See* Dkt. 156 at ¶¶ 6, 27, 28-30, 58-63, 67, 72, 99.) Such objections are misplaced and rarely appropriate at the summary judgment stage. *See, e.g., Jefferson v. Guerrero*, No. 15-CV-2117, 2016 WL 4549101, at *6 (N.D. Ill. Sept. 1, 2016) ("Indeed, if a motion for summary judgment turns on evidence challenged under [Rule 403] (or [a] relevance objection, for that matter), the exclusion of that evidence is by definition improper."); *Castagna v. Newmar Corp.*, 340 F.Supp.3d 728, 733 (N.D. Ind. Sept. 11, 2018) (noting that reliance on Rule 403 at summary judgment is "puzzling" because "[i]f a fact is necessary to the outcome of the motion, then its probative value could not

be substantially exceeded by any danger of prejudice[.]") Indeed, the Seventh Circuit has noted that "normally the balancing process contemplated by [Rule 403] is best undertaken at the trial itself." *Adams v. Ameritech Servs., Inc.*, 231 F.3d 414, 429 (7th Cir. 2000) (expressing doubt regarding the district court's exclusion of Plaintiff's statistical evidence pursuant to FED.R.EVID. 403 in granting summary judgment in favor of defendants). Here, the evidence Plaintiff deems irrelevant or prejudicial was indisputably possessed by Defendants when Plaintiff was charged, making it relevant to probable cause on Plaintiff's malicious prosecution claim.

Similarly, Plaintiff cites FED.R.EVID. 404(b) (Dkt. 156 at ¶¶ 28-30, 58-63) as a basis to exclude much of the same information including information investigators learned about Plaintiff's previous scams, but again, the evidence is offered to explain Defendants' decision to focus on Plaintiff and as evidence of probable cause, not as bad character evidence of Plaintiff's guilt at trial. As a result, it is undeniably admissible. *See U.S. v. Pless*, 982 F.2d 1118, 1125 (7th Cir. 1992) (noting that evidence that presents 404(b) issues for trial can still be relevant to probable cause). Plaintiff cannot reasonably expect to bastardize the probable cause analysis by excising information Defendants undeniably learned during the investigation.

For the same reason, Plaintiff's objection to the same information under FED.R.EVID. 602 based on lack of personal knowledge fails. Whether witnesses' beliefs and/or statements about Plaintiff's behavior, conduct and/or motivation would be admissible at Plaintiff's criminal trial based on personal knowledge is entirely separate from whether Defendants could consider them in determining probable cause.

### B. Plaintiff's Hearsay Objections to Police Reports Should be Overruled.

Plaintiff repeatedly objects, on grounds of hearsay, to Defendants' citations to police and fire investigation reports reflecting Defendants and third-party investigators' contemporaneous

documentation of the investigation. (Dkt. 156 at ¶¶ 18, 26-32, 35, 36, 38, 46, 59, 60-63, 65, 72-74, 96.) But the information contained in those reports is not hearsay because it is not offered for the truth of the matters asserted therein, but rather to show its effect on Defendants, and more specifically as part of the probable cause equation. *See, e.g., Cairel v. Alderden*, 821 F.3d 823, 830 (7th Cir. 2016) (information contained in police reports is admissible on summary judgment when offered to show probable cause rather than for the truth of the information asserted); *Torry v. Chicago*, 932 F.3d 579, 585 (7th Cir. 2019) (explaining that "[s]tatements introduced to show their effect on the listener[,]" including those in police reports, are not hearsay.) For the same reason, Plaintiff's hearsay objection to Tina's handwritten statement to Defendants on September 15th is meritless. (Dkt. 156 at ¶ 49.) Further, while FED.R.CIV.P. 56(c)(2) permits a party to object to evidence that "cannot be presented in a form that would be admissible in evidence[,]" the information contained within the police reports will be testified to at trial through the testimony of the Defendant Officers and other investigators regarding the progression of the investigation into the fire. *Stinnett v. Iron Works Gym/Exec. Health Spa, Inc.*, 301 F.3d 610, 613 (7th Cir. 2002) ("evidence need not be admissible in form (for example, affidavits are not normally admissible at trial), but it must be admissible in content."). Finally, Plaintiff's position is defeated by his own reliance on the police reports. *See, e.g., Mitchell v. Iowa Interstate RR Ltd.*, No. 07-1351, 2010 WL 2089301 (C.D. Ill. May 25, 2010) (party's objections to the use of evidence based on foundation or authentication waived where objecting party relied on the same evidence); (*See* Dkt. 156 at ¶¶ 13, 16, 23, 24, 26, 40, 44-46, 51-52, 54-56; SOAF ¶¶ 15, 21, 35, 37, 39, 40, 47-49, 52-54, 56, 60, 62, 64-67, 69, 131.)

## C. Probable Cause was Present for the Criminal Charges as a Matter of Law.

To begin, the presence of probable cause that an arson had occurred is inescapable. (Dkt. 136 at 24-25.) By the time Plaintiff confessed, Defendants knew from fire investigators that "all potential accidental causes were studied and all were discounted" and that the fire was "suspicious in nature", clearly providing probable cause that the fire was intentionally set. (Def. SOF ¶¶ 65, 66.) In response, Plaintiff misleadingly conflates two developments by erroneously suggesting that the Fire Investigation Team did not eliminate all accidental causes until Ferreri officially changed the cause from "undetermined" to "incendiary" after he learned of Plaintiff's allegedly fabricated October 4, 1995 confession. (Dkt. 165 at 44.) This is a grave and telling distortion of the timeline. To be clear, Ferreri reported that all accidental causes were discounted and though the cause was undetermined it was "suspicious in nature" **prior** to Plaintiff's confession. (Def. SOF ¶¶ 65, 66.) As such, the elimination of accidental causes necessarily and reasonably led Defendants, who were not fire experts, to attempt to identify the perpetrator under the assumption that the fire was intentionally set.

As stated above, the only real possible perpetrators were Plaintiff and his young wife, the victim's daughter Tina, who even Plaintiff does not contend was a viable alternate suspect. (*See* Dkt. 136 at 25.) But by no means was settling on Plaintiff a mere process of elimination: as set forth in detail in Defendants' motion, investigators learned that Plaintiff had the means, motive and opportunity to commit the crime. (*See* Dkt. 136 at 23-28.) Tellingly, Plaintiff never confronts the totality of the evidence Defendants had obtained, as he is required to do, but instead, he cherry-picks isolated pieces of information while arguing that each one, taken in isolation, is insufficient. This is not the proper analysis. Rather, "the probable cause inquiry deals in probabilities, not technicalities, and courts must consider the *totality of circumstances* within the

knowledge of the team of officers at the time of arrest." *Dukes v. Freeport Health Net. Mem. Hosp.*, No. 3:19-CV-50189, 2022 WL 1085208, at *6 (N.D. Ill. April 11, 2022) (citing, *Illinois v. Gates*, 462 U.S. 213, 231 (1983) (emphasis added); *Bergquist v. Milazzo*, No. 18-CV-3619, 2021 WL 4439422, at *6 (N.D. Ill. Sept. 28, 2021)); *see also District of Columbia v. Wesby*, 138 S.Ct. 577, 588 (2018) (holding that for probable cause, "the totality-of-circumstances test precludes [the] sort of divide-and-conquer analysis" of considering each factor in isolation) (internal citations omitted). And, in this case, each piece of evidence must be viewed through the lens that the fire was suspicious in nature, all accidental causes had been eliminated, and only two people could plausibly have set the fire. Defendants' motion details myriad facts and circumstances which support probable cause that Plaintiff set the fire, many of which Plaintiff ignores. (*See* Dkt. 136 at 23-28.) At any rate, Plaintiff's contentions about specific components of probable cause are also without merit.

First, Plaintiff argues that Defendants fabricated his knowledge of insurance proceeds and that he lied about that knowledge to police, and that he attempted to prevent Tina from discussing that knowledge with Defendants. (Dkt. 165 at 41.) But Marilyn Glisson indisputably told Defendants that within a few months of the fire she repeatedly overheard Plaintiff and Tina's hushed discussions about the importance of ensuring Marianne's life insurance policy stayed in place. (Def. SOF ¶ 26.) In a stunning misrepresentation of the record, Plaintiff contends Glisson did not know if those insurance discussions related to life insurance and therefore, this information could not be construed as inculpatory. (Dkt. 165 at 41.) However, Plaintiff has admitted that Glisson specifically told detectives that Plaintiff and Tina expressly discussed *life* insurance; he only argues that Glisson later contradicted herself at the grand jury. (Dkt. 156 at ¶ 26.) And even that contention is fabricated because Glisson in fact testified consistently that

within a couple of months before the fire Plaintiff and Tina discussed Marianne's life insurance, which is exactly what she advised Defendants. (*See* Resp. to SOAF ¶ 136.)

In perhaps his most absurd argument, Plaintiff describes some information Defendants received as inadmissible "propensity evidence", but he never explains why. (Dkt. 165 at 43.) To the contrary, the investigation was not a trial, and Defendants were obligated to consider Glisson's description of Plaintiff's discussions about the victim's insurance, his history as a con man who preys on the vulnerable in conjunction with his marriage to a developmentally disabled woman 21 years his junior, his letter to Tina from jail discussing a "plan for capital gain" so they could move out, and his decision to release his pet mice days before the fire.

Plaintiff's contention that Defendants failed to "corroborate" Glisson's description of his prior cons (Dkt. 165 at 43) blatantly ignores the fact that they did follow up with the family she said he scammed (the Lutzens), who fully corroborated that Plaintiff took their money and social security checks when he lived with them, ostensibly to pay their expenses, and that they then lacked money for food and were evicted from their home because Plaintiff did not pay the rent. (Def. SOF ¶ 60.) Moreover, the police spoke to the Miceli's neighbors (the Heslop's), who further corroborated Glisson and the Lutzen's experiences in stating that Plaintiff presented himself as a member of the Miceli family who managed their money. (Def. SOF ¶¶ 35-36.) Plaintiff's attempt to burden Defendants with the task of further corroborating already corroborated information in assessing probable cause has no basis in law. Police have probable cause when the facts and circumstances within their knowledge and of which they have reasonably trustworthy information are sufficient to warrant a prudent person in believing a suspect has committed an offense. *Kelley v. Myler*, 149 F.3d 641, 646 (7th Cir. 1998).

Plaintiff also faults Defendants for attributing significance to his letter to Tina advising of his "plan or two of attack for some capital gain for late summer so we can move" which he "will explain in person." (Def. SOF ¶ 25.) Plaintiff offers benign explanations that, as opposed to hatching a plan "so we can move out" as the letter explicitly states, he meant that he was going to get his life together or perhaps that they should save money in case they had to care for family members including Marianne. Initially, this explanation defies a plain reading of the letter. In any event, Defendants had no knowledge of this explanation, plausible or not, at the time of their investigation. Further, when coupled with Glisson's statements about Plaintiff's "hushed" talks with Tina about insurance, Plaintiff's letter provided Defendants with every reason to think that his "plan for capital gain" might relate to a scheme to collect insurance money. As such, Defendants plainly had a reasonable basis to consider these factors as evidence of Plaintiff's motive and plan for collecting insurance money.

Plaintiff strangely contends that Defendants disregarded Tina's trial testimony disavowing any discussions with Plaintiff about a plan to set fire to the condo. (Dkt. 165 at 42, citing *Mahnke v. Garrigan*, 428 Fed. App'x 630, 635 (7th Cir. 2011) (explaining that a "police officer cannot consciously disregard information that would bring clarity to a confusing situation.") However, *Mahnke* and Plaintiff's argument are obviously inapposite because Defendants were not provided with any such information during their investigation. "A court evaluates probable cause not with the benefit of hindsight, and not on the facts as perceived by an omniscient observer, but on the facts as they appeared to a reasonable person in the defendant's position, even if that reasonable belief turned out to be incorrect." *Dukes,* 2022 WL 1085208, at *6 (quoting *Stokes v. Bd. of Educ.*, 599 F.3d 617, 622 (7th Cir. 2010)). If the test is

satisfied, "the arrest is lawful even if the belief would have been mistaken." *Mahoney v. Kesery*,

976 F.2d 1054, 1057-1058 (7th Cir. 1992) citing *Hunter v. Bryant*, 502 U.S. 224, 227 (1991).

In another improper attempt to segregate isolated components of the probable cause

calculus, Plaintiff argues that his suspicious removal of the smoke detector days before the fire,

"standing alone", is insufficient to establish probable cause.[9] (Dkt. 165 at 44.) Initially,

Defendants obviously never claimed the removal of the smoke detector alone provided probable

cause. Further, Defendants were not required to accept Plaintiff's innocent explanations when the

suspicious nature of the act fully supported a more sinister motive in the face of the ensuing fire.

(*See* Dkt. 156 at ¶ 43); *Wesby*, 138 S.Ct. at 588 (probable cause does not require police to

substitute a suspect's innocent explanation for suspicious facts).[10]

## V.     DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S SUBSTANTIVE DUE PROCESS CLAIM.

### A.     Plaintiff's Substantive Due Process Claim Is Untimely.

Recognizing that his substantive due process claim is time-barred under *Moore v. Burge,*

771 F.3d 444 (7th Cir. 2014), Plaintiff contends *Moore* did not survive *McDonough v. Smith*, 139

S.Ct. 2149 (2019), but his own cited authority fails to support this assertion. *See Savory v.*

*Cannon,* 532 F. Supp. 3d 628, 635-636 (N.D. Ill., March 31, 2021) (declining to decide the

"difficult question" whether *Moore* survived *McDonough* at the pleading stage but expressly

allowing Defendants to renew the challenge "at Summary Judgment"); *Weston v. Chicago*, No.

20-CV-6189, 2021 WL 2156459, at *5 (N.D. Ill. May 27, 2021) (agreeing the Seventh Circuit

---

[9] Plaintiff's suggestion that he was possibly mistaken when he told Defendants he removed the smoke detector, and only said he did because he was intoxicated, directly contradicts his admission in his 2020 deposition that he did remove the smoke detector. (*See* Def. Ex. 40, Plt. Dep. at 336:10-24.)
[10] Because Defendant Cross described Plaintiff's confession to the grand jury, and Defendants' probable cause analysis excludes the allegedly coerced confession, Defendants withdraw their argument concerning the effect of the grand jury proceedings on the probable cause analysis.

has not found *Moore* to be overruled by *McDonough*.) More recently, in *Walker v. Chicago*, the court rejected the same contention Plaintiff makes here, namely that the plaintiff could not have alleged the coercive abuse claims "without necessarily implying the validity of his conviction[.]" No. 20-CV-7209, 2021 WL 4080770, at *2 (N.D. Ill. Sept. 8, 2021) (quoting *Moore v. Burge*: "[c]ase law indicates that 'claims based on out-of-court events, such as gathering of evidence, accrue as soon as the constitutional violation.'" 771 F.3d at 446).

Plaintiff's contention that *Moore* "does not answer the question in a particular case where the confession was used; or account for the ramifications of a separate civil lawsuit when such a statement is taken and introduced in criminal proceedings" is not correct. (Dkt. 165 at 27-28.) Like here, the *Moore* plaintiffs alleged they were physically coerced to falsely confess and the Plaintiffs' statements were introduced against them at their criminal trial.[11] *Moore*, 771 F. 3d at 446. Nonetheless, the court found that the claim accrued at the time of the alleged coercion. *Id*.

Further, while it is correct that in *Moore* evidence independent of the confessions supported the convictions (*Moore*, 771 F.3d at 446), the same is true here. Indeed, aside from Plaintiff's confession, ample evidence was admitted in the form of: (1) expert witness testimony that the fire was incendiary; (2) evidence that Plaintiff was one of only two people who could have set the fire; (3) evidence that Plaintiff was motivated to set the fire for insurance money; and (4) Plaintiff's September 15th statement and diagram describing and depicting where vodka was spilled and where he may have left a burning cigarette.[12] (Def. SOF ¶¶ 100-110.)

Following, *Moore*, Plaintiff's substantive due process claim arising from coercive police misconduct that occurred on October 3-4, 1995, accrued that day. *Moore*, 771 F.3d at 446; *See*

---

[11] The use of the *Moore* plaintiffs' confessions at trial is supported by the *Moore* opinion itself (*See* 771 F.3d at 445-446) and cemented by review of the parties' briefing. (Brief for Defendant Appellees, *Moore v. Burge, et al.,* No. 13-3301 (June, 26, 2014), ECF No. 36 at pp. 6-10.
[12] Plaintiff is not basing his coerced confession claim on these statements.

*also Logan v. Wilkins*, 644 F.3d 577, 581-82 (7th Cir. 2011). Because Plaintiff was aware his rights had been violated when the allegedly improper interrogation tactics were used, his cause of action accrued at that time. *See Gonzalez v. Entress*, 133 F.3d 551, 555 (7th Cir. 1998); Plaintiff did not file suit until 2018; hence, his claim is time-barred.

### B. There is Insufficient Evidence to Support a Claim that Defendants' Actions "Shock the Conscience."

Even if the Court were to reach the question of whether the allegations here can meet the exceptionally high "shocks the conscience" standard, the answer is clearly not. "Only 'the most egregious official conduct' will satisfy this stringent inquiry." *Jackson v. Indian Prairie Sch. Dist. 204*, 653 F.3d 647, 654 (7th Cir. 2011) (quoting *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998)). "[T]he question is whether the conduct is 'too close to the rack and the screw.'" *Fox v. Hayes,* 600 F.3d 819, 841 (7th Cir. 2010) (quoting *Rochin v. California*, 342 U.S. 165, 172 (1952)). Plaintiff has not identified conduct during his interrogation that was so offensive to human dignity that it shocks the conscience. Indeed, such claims are most appropriately made in cases where the conduct is tantamount to torture. *Chavez v. Martinez,* 538 U.S. 760, 774 (2003) quoting *Rochin,* 342 U.S. at 172 (forcing an emetic down a suspect's throat to forcibly extract evidence from his stomach shocks the conscience). No such conduct occurred here.

The claim of a single instance of physical contact between Cross and Plaintiff coupled with a verbal threat warrants the most scrutiny. (SOAF ¶¶ 102-103.) But the isolated allegation that Plaintiff was once lifted and "pushed" against a wall, while inappropriate if it occurred, is not the level of physical abuse that rises to conscience-shocking because such a finding requires "the use of *extreme* force." *Chandler v. Cross*, No. 3:13-CV-555-LRA, 2015 WL 5334290, at *4 (S.D. Miss. Sept. 14, 2015) (emphasis added). To be sure, equating Cross's alleged push during the interrogation with conscience-shocking behavior, or extreme force, cannot be reconciled with

rulings in the Seventh Circuit that similar levels of force are not actionable under the Fourteenth or Eighth Amendments. *See Jackson v. Stubenvoll*, 16-CV-05746, 2022 WL 991950, at *4 (N.D. Ill. March 31, 2022) (collecting cases and holding that pre-trial detainee's allegation of two shoves against an elevator wall that resulted in bruised and swollen shoulder not actionable under Fourteenth Amendment); *Williams v. Dart,* No. 18-CV-506, 2018 WL 11239693, at *2 (N.D. Ill. March 12, 2018) ("not every unjustified touch by an officer rises to the level of a constitutional violation"); *DeWalt v. Carter*, 224 F.3d 607, 620 (7th Cir. 2000), abrogated by *Savory v. Cannon*, 947 F.3d 409 (7th Cir. 2020) (no actionable force under the Eighth Amendment where an officer's "shove was a single and isolated act", even where it was unprovoked and resulted in bruising). Plaintiff here also did not have any lasting injury from the incident but rather experienced only a headache and dizziness immediately after*,* further supporting that the force used was not so excessive as to amount to conscience-shocking. *See, e.g., McAllister v. Price*, 615 F.3d 877, 882 (7th Cir. 2010) ("Injury is not an element of an excessive-force claim; rather, it is evidence of the degree of force imposed and the reasonableness of that force.")

Indeed, Plaintiff does not cite to a single case supporting his position that the conduct here meets the high threshold of conscience-shocking. *See* Dkt. 165 at 29 citing *Cooper v. Dubnik*, 963 F.2d 1220, 1250 (9th Cir. 1992) (abrogated by *Chavez,* 538 U.S. at 773) (task force's conduct shocked the conscience where it included, among other things, an "unlawful plot to deprive an accused suspect of the privilege of testifying in his own defense" by intentionally interfering with his right to remain silent); *Harris v. Bornhorst*, No. 5:03-CV-1827, 2004 WL 7340519, at *16 (N.D. Ohio Aug. 13, 2004) (interrogation tactics rose to a level that shocked the conscience when police repeatedly threatened and questioned a twelve year old boy with no prior criminal experience, refused his parent to join, did not confirm the boy understood his *Miranda*

rights, and there was nothing learned during the interrogation to suggest he had first-hand knowledge of the crime); *Hall v. Idaho Dep't of Fish & Game*, No. 2:11-CV-622-BLW, 2013 WL 2458537, at *12 (D. Idaho June 6, 2013) (Court finding that the "worst thing [defendants] did was give [the plaintiff] the option to be questioned at the police station and tell him that his bloody clothes could be tested to determine whether the blood was bear blood, as [the plaintiff] professed, or really elk blood. Nothing about these facts 'shocks the conscience.'")

As a final point, the Fourteenth Amendment claim against Cunningham also does not survive because he did not interrogate Plaintiff on October 3 and 4, 1995. Defendants are entitled to summary judgment on the substantive due process claim.

## VI.    PLAINTIFF'S IIED CLAIM FAILS.

Plaintiff does not dispute that if there is no question of fact with regard to his constitutional or malicious prosecution claims, there also is no evidence to support extreme and outrageous conduct. (Dkt. 165 at 47-48.) The parties do disagree on whether the claim is timely. Where the validity of a conviction is attacked, under the *Heck* rule a plaintiff "could not bring an IIED claim until his conviction was set aside." *Smith v. Burge*, 222 F.Supp.3d 669, 692-693 (N.D. Ill. Nov. 28, 2016). Plaintiff's conviction was set aside on April 6, 2017, yet he contends that his claims accrued when he was acquitted after retrial on February 21, 2018, in reliance on *Gibson v. Chicago*, No. 19-CV-4152, 2020 WL 4349855, at *15 (N.D. Ill. July 29, 2020). (*See* Dkt. 165 at 47.) Significantly, *Gibson* does not support such an extension because it did not involve a retrial or address whether the term "when the conviction is set aside" counterintuitively meant the date of acquittal. And, at its most basic level, "[t]o set aside a judgment decree, award, or any proceedings is to cancel, annul, or revoke them at the instance of a party unjustly or irregularly affected by them." *Black's Law Dictionary*, 2d Ed. (internal citations omitted).

Logically, then, Plaintiff's IIED claim should have been filed within 1 year of his conviction being vacated. *See* Exhibit A attached hereto, *Moran v. Calumet*, No. 17-CV-2027, Dkt. 45 at *6 (N.D. Ill. Aug. 16, 2017) (holding that statute of limitations on IIED claim was tolled by *Heck* only until conviction was set aside upon granting of post-conviction petition and not until acquittal on retrial). Accordingly, once Plaintiff's conviction was set aside by virtue of it being vacated on April 6, 2017, his claim for IIED began to accrue and had to be filed by April 6, 2018, one year later. Because he failed to do so, Plaintiff's IIED claim is untimely and must be dismissed.

## VII.  ALLEGATIONS OF CIVIL CONSPIRACY USING ONLY "CIRCUMSTANTIAL EVIDENCE" FAIL TO MEET THE CLEAR AND CONVICING STANDARD.

Defendants demonstrated they were entitled to summary judgment on the civil conspiracy claim because Plaintiff has insufficient evidence to satisfy an element of his claim: proof of a common scheme among Defendants. (Dkt. 136 at 29-30.) *See Chicago Title Ins. Co. v. Sinikovic*, 125 F. Supp. 3d 769, 781 (N.D. Ill. Aug. 28, 2015) ((citing *Borsellino v. Goldman Sachs Grp., Inc.,* 477 F.3d 502, 509 (7th Cir.2007) ( "The agreement is a necessary and important element of this cause of action . . . A defendant who innocently performs an act which happens to fortuitously further the tortious purpose of another is not liable under the theory of civil conspiracy.") (internal citations omitted).

By his own admission, *at most*, Plaintiff has only "circumstantial evidence" of the existence of such an agreement (Dkt. 165 at 49) but what he describes as circumstantial evidence is in fact, speculation. While Plaintiff cites a snippet from *Sinikovic* for the proposition that circumstantial evidence is sufficient to show civil conspiracy, a fuller examination of that case demonstrates that Plaintiff must show more:

"Although the existence of a conspiracy may be established through circumstantial evidence, the evidence may not be speculative. [] Moreover, the circumstantial evidence 'must be clear and convincing.'. . . A defendant's '[m]ere knowledge of the fraudulent or illegal actions of another is also not enough to show a conspiracy.'"

*Chicago Title Ins. Co. v. Sinikovic*, 125 F. Supp. 3d at 781–82 (quoting *McClure v. Owens Corning Fiberglas Corp.*, 720 N.E.2d 242, 258, 267, 188 Ill.2d 102 (1999)). In finding that plaintiff's reliance on circumstantial evidence failed to meet the clear and convincing standard, the *Sinikovic* Court explained, "[i]n determining if a conspiracy exists, '[i]f the facts are as consistent with innocent conduct as they are with guilty conduct, then the evidence is neither clear nor convincing.'" *Sinikovic*, 125 F. Supp. 3d at 782, n. 7.

Under *Sinikovic*, the "circumstantial evidence" Plaintiff identifies here is speculation. (Dkt. 165 at 49.) Defendants' investigation uncovered ample evidence that Plaintiff intentionally set the fire that killed Marianne Micelli. (Def. SOF ¶¶ 6, 13, 14-56, 58-67, 71-73.) That Defendants worked together to investigate the fire does not support an inference that they conspired for a nefarious purpose. *See Sinikovic*, 125 F. Supp. 3d at 782. Plaintiff's contention that the "logical inference at summary judgment is that such an occurrence could only have happened if Defendants were acting in conspiracy with one another" (Dkt. 165 at 49) further highlights the speculative nature of his submissions and is not a substitute for evidence of an agreement to do anything improper. Moreover, the same speculation cannot support Plaintiff's § 1983 conspiracy claim, which also requires more than speculation of an agreement. *See, e.g. Grayson v. City of Aurora*, 157 F.Supp.3d 725, 744-745, 747 (N.D. Ill. Jan. 17, 2016) (analyzing and dismissing conspiracy claim under Illinois law and § 1983 conspiracy based on same analysis that there was no evidence of an agreement.); *Williams v. Seniff*, 342 F.3d 774, 785 (7th Cir. 2003); (while circumstantial evidence may provide adequate proof of a conspiracy, such

evidence cannot be speculative.)[13] Defendants are entitled to summary judgment on Plaintiff's conspiracy claims.

## CONCLUSION

For the foregoing reasons, and as further set forth in Defendants' opening brief (Dk. 136), Defendants respectfully request this Court enter summary judgment in their favor on all of Plaintiff's claims.

Date: May 2, 2022

Respectfully submitted,

/s/ Laura M. Ranum
LAURA M. RANUM, Attorney No. 6300636
*One of the Attorneys for Defendants*

James G. Sotos
Joseph M. Polick
Laura M. Ranum
Lisa M. Meador
Carson W. Canonie
THE SOTOS LAW FIRM, P.C.
141 W. Jackson Blvd., #1240A
Chicago, IL 60604
Tel: (630) 735-3300
lranum@jsotoslaw.com

---

[13] Defendants' opening brief argued there was no evidence of an agreement to support a conspiracy claim (Dkt. 136 at 28-29) but did not extend the argument to Plaintiff's § 1983 conspiracy claim. Defendants recognize that this Court has deemed arguments raised for the first time in a reply brief to be waived because the non-movant did not have an opportunity to respond. *See, e.g., Golbert v. Walker,* No. 18-CV-8176, 2021 WL 1056989, at *7 (N.D. Ill. March 18, 2021). However, in this instance, Plaintiff has already responded to the argument of whether there is evidence of an agreement to support a conspiracy claim under Illinois law, identifying only speculation which cannot support a conspiracy claim under § 1983 or the clear and convincing standard applied under Illinois law, and there is no prejudice to Plaintiff in this Court addressing the defense as to both conspiracy claims.

## CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury pursuant to 28 U.S.C.A. § 1746 that the foregoing is true and correct, that on Tuesday, May 3, 2022, I electronically filed the foregoing **Defendants' Reply in Support of Their Motion for Summary Judgment** with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the CM/ECF participants listed on the below Service List.

***Attorneys for Plaintiff:***
Jon Loevy
Mariah Garcia
Gayle Horn
Loevy & Loevy
311 N. Aberdeen Street, 3rd Floor
Chicago, IL 60607
(312) 243-5900
jon@loevy.com
mariah@loevy.com
gayle@loevy.com

/s/ Laura M. Ranum
LAURA M. RANUM, Attorney No. 6300636
*One of the Attorneys for Defendants*