IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JEANNE OLSON, as Trustee of the William Amor Trust for WILLIAM E. AMOR, deceased,<br><br>   Plaintiff,<br><br>v.<br><br>REBECCA GOMEZ, as Special Representative for MICHAEL CROSS, deceased; ROBERT GUERRERI; BRIAN CUNNINGHAM; and THE CITY OF NAPERVILLE,<br><br>   Defendants. | 18-CV-02523<br><br>Judge John J. Tharpe, Jr. |

**RESPONSE TO PLAINTIFF'S MOTION
FOR LEAVE TO SUPPLEMENT RULE 26(a) DISCLOSURES**

Defendants Rebecca Gomez, as Special Representative for Michael Cross, deceased, Robert Guerrieri, Brian Cunningham, and the City of Naperville, by and through their attorneys, The Sotos Law Firm, P.C., respond to Plaintiff's Motion for Leave to Supplement Rule 26(a) Disclosures ("Motion to Supp. Witness Disclosures") as follows:

**INTRODUCTION**

This case has been pending for more than six years. Fact discovery has been closed since 2020, and Plaintiff's experts were disclosed three years ago in January 2021. Just as this case reached the home stretch to trial, Plaintiff for the first time seeks the untimely disclosure of (1) two additional fact witnesses who were known to Amor and his counsel during discovery but never disclosed; and (2) a brand-new expert on Amor's prison experience. As detailed below, none of these late disclosures are justified or harmless. In fact, Defendants will be irreparably prejudiced should Plaintiff be permitted to proceed with these untimely disclosures which would

force Defendants to engage in re-opened discovery while simultaneously preparing for trial. Indeed, Plaintiff's new disclosures on the eve of trial smacks of gamesmanship—Plaintiff should not be permitted to derail this Court's trial deadlines and sandbag Defendants' trial preparation efforts. Plaintiff's motion should be denied.

## BACKGROUND

At the onset of discovery, the parties exchanged disclosures of witnesses likely to have discoverable information.[1] Pertinent here, Plaintiff served his Mandatory Initial Discovery Pilot Project (MIDP) Disclosures almost six years ago, on July 26, 2018 (Ex. 1), First Amended MIDP disclosures on September 25, 2018 (Ex. 2), and Second Amended MIDP Disclosures on November 13, 2019 (Ex. 3). Four years ago, on March 5, 2020, Plaintiff Amor was deposed and testified that he resided with Angel Gonzalez who Amor described as "an exoneree" who "took me in" in 2017, courtesy of the Southern Illinois Innocence Project, and with whom he lived for at least 2 years before his deposition. (Ex. 4, Amor's Dep. at 28:5-31:7.) Fact discovery closed October 16, 2020. (Dkt. 88.)

Plaintiff served his Rule 26(a)(2) Expert Disclosures on January 22, 2021 (Ex. 5) and then served Rule 26(a)(2) Rebuttal Disclosures on September 24, 2021 (Ex. 6). Expert discovery closed on December 8, 2021 (Dkt. 128), and the parties then engaged in summary judgment briefing from December 2021-May 2022.

On February 16, 2023, Plaintiff's counsel filed a Statement of Death of Plaintiff Amor stating that he passed on January 31, 2023. (Dkt. 192.) On February 27, 2023, Plaintiff filed his Unopposed Verified Motion to Substitute Jeanne Olson, Trustee of the William Amor Trust as Successor Plaintiff ("Motion to Sub. Olson as Plaintiff"). (Dkt. 199.) Accompanying that motion,

---

[1] This case initially proceeded under the MIDPP disclosure process.

2

Plaintiff attached Amor's death certificate which states that Amor was living in a nursing home/long-term health care facility at the time of his death which was caused by "chronic obstructive pulmonary disease". (Dkt. 199-1.) Plaintiff also attached a copy of the Amor Trust, a complex 37-page document executed seven months earlier on July 28, 2022, designating himself as beneficiary during his lifetime and Jeanne Olson as successor trustee upon Amor's death. (Dkt. 199-2.) According to the Trust, Olson is Amor's "good friend" who "has helped [Amor] through some very difficult times and [he] is grateful for her friendship" and designated that she would receive $10,000.00 from his Trust assets. (*Id.*)

The Motion to Sub. Olson as Plaintiff explained that the Trust provided Olson "the power to litigate, compromise, or settle" this lawsuit for which she retained Loevy & Loevy. (Dkt. 199.) Additional estate planning documents were also attached, specifically Amor's Will (Dkt. 199-3) and General Assignment (Dkt. 199-4), both of which were executed on July 28, 2022, and witnessed by J. Angel Gonzales, Amor's friend and housemate. All of these estate planning documents were executed six months **before** Amor's death and seven months prior to counsel seeking to substitute Olson as Plaintiff. On May 17, 2023, Plaintiff's counsel filed a Proof of Service of Suggestion of Death and Trust Documents Upon Interested Non-Parties. (Dkt. 202.)

On January 30, 2024, this Court issued its opinion granting in part and denying in part Defendants' motion for summary judgment and scheduled a status hearing for February 16 to set the matter for trial. (Dkt. 208.) At the February 16th status hearing, the case was set for a two-week trial to begin on July 22 and the parties scheduled the *Daubert* briefing and pre-trial schedules leading up to trial. (Dkt. 210.) The parties also discussed the anticipated length of the trial, with Defendants' counsel specifically advising the Court that eight retained expert witnesses would be testifying (four for each side) and that they anticipated substantial *Daubert*

motion practice and sought rulings in sufficient time to prepare for trial with those rulings. (Ex. 7, February 16, 2024 Court Hearing Transcript, pp. 2:16-18, 3:6-5:1.)

This Court subsequently held a status hearing on April 17. (Dkt. 215.) It was during this hearing that, for the very first time, Plaintiff's counsel indicated that he anticipated disclosing a "prison expert" to testify about damages, which he would present via motion. (Ex. 8, April 17, 2024 Court Hearing Transcript, pp. 2:19-3:4.) Defendants' counsel objected to any untimely expert disclosure and the Court indicated that the issue could be briefed. (*Id*. at 3:7-10.) Plaintiff made no mention during the April 17 hearing that he would also be seeking leave to disclose new fact witnesses.

On April 26, 2024, Plaintiff issued Supplemental Rule 26(a) Disclosures identifying two new fact witnesses and one new expert witness. (Ex. 9, Plaintiff's April 26, 2024 Supplemental Rule 26(a)(1) Disclosures; Ex. 10, Plaintiff's April 26, 2024 Supplemental Rule 26(a)(2) Disclosure.)[2] Plaintiff has named "new" witnesses:

1) Jeanne Olson, a fact witness who is described as "a friend of William Amor during the final years of his life. She met Mr. Amor shortly before his retrial and befriended him until his death. She is the designated Trustee of the Trust that Mr. Amor established before his death and, in that capacity, the plaintiff in this case. Ms. Olson has information regarding the effect upon Mr. Amor of his wrongful charges, his years of wrongful incarceration, and the re-adjustment into free society following Mr. Amor's release from prison." (Ex. 9.)

2) Angel Gonzales, a fact witness who is described as a person "like Mr. Amor, [who] was convicted and imprisoned for a crime he did not commit. Mr. Gonzales met Mr. Amor shortly after Mr. Amor's release from prison, and was a close friend of Mr. Amor's until the end of his life. Mr. Gonzales has information regarding the effect upon Mr. Amor of his wrongful charges, his years of wrongful incarceration, and the re-adjustment into free society following Mr. Amor's release from prison." (*Id*.)

3) Alan Beaman, who, because "Amor is not here to testify about the hardships he endured as a result of being convicted and imprisoned for a crime he did not

---

[2] Plaintiff's Motion to Supplement Witness Disclosures oddly did not attach her Supplemental Rule 26(a)(1) or Supplemental Rule 26(a)(2) Disclosures which was the basis of her motion. For the Court's convenience, Defendants have attached them here to their Response.

4

>commit…will provide expert testimony as to the experience of incarceration from the perspective of an innocent person in the Illinois Department of Corrections." Beaman prepared a report dated April 25, 2024, detailing **16 expert opinions** he proposes to offer regarding his personal hardships and experiences while incarcerated. (Ex. 10.)

The April 26 disclosure was the first time Defendants learned that Plaintiff was also seeking to disclose new fact witnesses.

Plaintiff knows full well that his last-minute disclosures are improper and added witnesses beyond the one he flagged for the court in April likely because he is hoping that the Court will "split the baby" and allow him to add at least one new witness. But Plaintiff's untimely and unjustified request to add significant new witnesses on the eve of trial will, if allowed, substantially prejudice Defendants and restart damages discovery while the parties simultaneously prepare for trial. Critically, Plaintiff has offered no even arguably legitimate justification for not seeking to add these witnesses years ago and his motion should be denied.

## LEGAL STANDARD

Rule 26 requires that a party must disclose "the name and, if known, the address and telephone number of each individual likely to have discoverable information…that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment." Fed. R. Civ. P. 26(a)(1)(A). The MIDP standing order requires similar initial disclosures. MIDP Standing order at B(1). Equally, a party has a duty to disclose a witness as an expert. Fed. R. Civ. P. 26(a)(2). This requirement is strictly construed because "[w]ithout proper disclosures, a party may miss its opportunity to disqualify an expert, retain rebuttal experts, or hold depositions for an expert not required to provide a report." *Tribble v. Evangelides*, 670 F.3d 753, 759-760 (7th Cir. 2012).

Furthermore, Rule 26 requires a party to supplement or amend its disclosures and discovery responses in a "timely manner if the party learns that in some material respect the

disclosure or response is incomplete or incorrect and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e)(1). "'Timely manner' has to be read commonsensically if it is to mean anything at all." *G&G Closed Circuit Events, LLC v. Castillo*, 2016 WL 3551634, at *7 (N.D. Ill., 2016). Local Rule 16.1 provides further context, explaining that "discovery must be completed before the discovery closing date." N.D. Ill. L.R. 16.1. *See*, *e.g.*, *RBS Citizens, N.A v. Husain*, 291 F.R.D. 209, 214 (N.D. Ill. 2013) (excluding witness because disclosing him "two days before the close of discovery cut-off date, which had already been extended twice, was clearly untimely.").

When a party "fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). Rule 37(c)(1) also applies to MIDP disclosures. MIDP Standing Order at A(9). When evaluating relief under Rule 37, the Seventh Circuit directs that a court consider: "'(1) the prejudice or surprise to the party against whom the evidence is offered; (2) the ability of the party to cure the prejudice; (3) the likelihood of disruption to the trial; and (4) the bad faith or willfulness involved in not disclosing the evidence at an earlier date.'" *Bouto v. Guevara, et al.*, 19 C 2441, 2022 WL 22626455, *2-4 (N.D. Ill. Cox, M.J., May 9, 2022), *quoting Tribble v. Evangelides*, 670 F.3d at 760. It is the burden of the late-disclosing party to demonstrate that the Rule 26(a) or (e) violation was "harmless or substantially justified." *David v. Caterpillar*, 324 F.3d 851, 857 (7th Cir. 2003), *citing Salgado*, 150 F.3d at 742. The penalties are clear and "exclusion is automatic and mandatory unless the sanctioned party can show that its violation of

6

Rule 26(e) was either justified or harmless." *Salgado v. Gen. Motors Corp.*, 150 F.3d 735, 742 (7th Cir. 1998), *citing Finley v. Marathon Oil*, 75 F.3d 1225, 1230 (7th Cir. 1996).

## ARGUMENT

Plaintiff's extraordinary request to supplement both her fact and expert witness disclosures **3½ years** after the close of fact discovery, **2½ years** after the close of expert discovery, and **87 days** before trial is entirely unsupported by her meager explanation for such an inexcusable delay and falls well short of meeting her burden. Indeed, Plaintiff's exceptionally belated disclosures are unjustified, substantially harmful to Defendants, and, though not a required element to warrant exclusion, made in bad faith.

**A. Plaintiff's disclosures are admittedly untimely.**

Plaintiff admits that her new witness disclosures are untimely but seeks to minimize this glaring procedural deficiency by claiming that the supplement being sought is "many months after the deadlines previously established by Court order." (Motion to Supp. Witness Disclosures, p. 3.) But "many months" hardly captures the true delay. Indeed, fact discovery has been closed for 3 ½ years and expert discovery has been closed for 2 ½ years. The disclosures come "many years," not "months," after the deadlines established by Court order.

Discovery must be completed before the discovery close date and disregard of this requirement results in appropriate sanctions (Fed. R. Civ. P. 37) which routinely include barring the testimony of witnesses who are not timely disclosed during discovery. In *RBS Citizens, N.A v. Husain*, defendants were barred from supplementing witness disclosures made two days before the close of discovery because "[d]efendants could not reasonably expect that disclosing [a witness] two days before the discovery closing date gave RBS a fair opportunity to depose him before the end of discovery." *RBS Citizens, N.A.*, 291 F.R.D. at 214. Similarly, in *Buoto v.*

7

*Guevara*, magistrate judge Susan Cox recommended that defendants be barred from supplementing their witness disclosures one day before the close of fact discovery to add a witness who they were previously aware of, even though in that case, expert discovery had not even started, and no trial date had even been set. *Buoto*, 2022 WL 22626455 *2-4.

Here, by contrast, trial is just two months away and according to Plaintiff's Supplemental Disclosures, the so-called "new" fact witnesses, Jeanne Olson and Angel Gonzales, were close friends of Amor for many years, dating all the way back to his release from prison seven years ago in 2017. (Ex. 9; Dkt. 1, ¶44.) Plaintiff could have disclosed both witnesses at any time during several years of discovery, **but consciously chose not to do so**. Now, years after discovery has closed, Plaintiff seeks to belatedly bolster her damages claims by adding new witnesses at the eleventh hour while Defendants are extremely busy preparing for trial.

The same is said for Plaintiff's purported "expert" witness, Alan Beaman, who Plaintiff decided last week is necessary to address Amor's prison experiences since Amor is not alive to testify about it himself. (Motion to Supp. Witness Disclosure, p. 3.) However, even if such testimony could conceivably survive a *Daubert* challenge—Plaintiff does not even try to explain how Beaman's prison experience mirrored or even resembled Amor's experiences—Amor died one-and one-half years ago. If Amor's death was truly the impetus for this last-minute disclosure, Plaintiff could have sought to supplement his expert disclosures to add Beaman long before now, but inexplicably failed to do so and, instead, waited until the brink of trial to spring this new expert witness on Defendants.

Rule 37 mandates exclusion of these witnesses for violation of Rule 26(e) because Plaintiff cannot meet her burden to show the egregious delay in disclosing these witnesses was justified or harmless. *See Salgado v. Gen. Motors Corp.*, 150 F.3d at 742.

8

B.   **Plaintiff's lengthy delay is unjustifiable.**

Plaintiff tries to justify the belated disclosures on the sole basis of Amor's death ***sixteen months ago***, on January 31, 2023, which she writes occurred "unexpectedly and after a brief illness." (Motion to Supp. Witness Disclosures, pp. 1-2.) She further claims that Amor's March 5th, 2020 deposition "does not adequately present evidence of Mr. Amor's profound injury in the aftermath of Defendants' wrongdoing." (*Id.*) This feeble justification is plainly insufficient to meet Plaintiff's burden for several reasons.

First, Plaintiff admits that Amor was questioned during his deposition about his experiences in prison as well as his life after his release but presents nothing to evidence that his testimony is insufficient for trial. *Id*. In fact, Plaintiff testified at length about his experiences in prison and after his release. In his deposition, Plaintiff testified that prior to prison he was an alcoholic but was able to attend Alcoholics Anonymous while in prison, attended programs to avoid making the mistakes he made before prison, met volunteers, and took a business class. (Ex. 4, Amor Dep., pp. 370-373.) Amor testified that while in prison he had no major illnesses, his life was not threatened, he was not assaulted, and he was never in solitary confinement. (*Id*., pp. 354.) He explained that an inmate could have difficulty paying for toiletries without a job, but that he worked in various jobs including as a janitor, distributing clothing, in the cafeteria, and as a porter. (*Id*., pp. 370-376.) Amor testified that this sister occasionally gave him money, and that he was visited by her and his legal counsel. (*Id*., pp. 370-373.) He testified that he was never in protective custody, had library privileges and made use of them. (*Id*., pp. 374-376.) Amor described having some good days and bad days after his release, sleeplessness and nightmares, as well as difficulty developing a relationship with a girlfriend, but received no counseling since his release and was employed doing automotive work, had a steady place to live, paid his bills, and

enjoyed a relationship with his nieces and nephews. (*Id.*, pp. 378-384, 387.) Plaintiff's counsel questioned Amor during his deposition but declined to ask additional questions about his prison experiences or post-release life despite his claims in the case and despite Defense Counsel's exploration of the issue during the deposition. (*Id.*, pp. 395-396.)

Plaintiff's counsel may claim that they had a strategic purpose for not asking more questions of Amor during his deposition four years ago since they did not anticipate at that time that he would be unavailable for trial. To that end, she pronounces, without a single piece of evidence—no affidavit, no medical records, no declarations—Amor's illness was "unexpected[d] and after a brief illness". (Motion to Supp. Witness Disclosures, pp. 1-3.) It is unclear why Plaintiff believes that single unsupported phrase would discharge Plaintiff's burden to show that her delay was justified (*see David v. Caterpillar*, 324 F.3d at 857), particularly in light of the fact that the only relevant information disclosed in the death certificate she attached to her motion states that he died at the beginning of 2023 from "chronic obstructive pulmonary disease"—a progressive, long term lung disease[3]—while residing in a "nursing home/long term care facility." (Dkt. 199-1.) If Plaintiff's counsel thought Amor's deposition testimony inadequate for trial, his failing health in the many months (if not years) before his death gave them every reason to re-depose Amor in order to preserve his testimony for trial, which would have been unopposed. Instead, Plaintiff did nothing. Worse yet, they did nothing for ***fifteen months after Amor passed***.

Plaintiff's counsel's failure to preserve Amor's testimony is even more unjustifiable given their apparent involvement in very proactive estate planning that did occur well in advance of Amor's death. Indeed, six months before he passed, Amor executed complex trust and will

---

[3] *See* American Lung Association, *Chronic Obstructive Pulmonary Disease (COPD)*, https://www.lung.org/lung-health-diseases/lung-disease-lookup/copd; *see also* National Heart, Lung, and Blood Institute, *What is COPD?*, updated Oct. 25, 2023, https://www.nhlbi.nih.gov/health/copd.

documents for disbursement of his assets upon his death. (Dkt. 199-2-4.) It appears that these documents were executed because of Amor's failing health to ensure that any proceeds received from this lawsuit after Amor's death were properly disbursed by Olson. Plaintiff admits as much, indicating that the Trust provided Olson "the power to litigate, compromise, or settle" this lawsuit *for which she retained Loevy & Loevy*. (Dkt. 199.) Though calculated efforts were clearly made to ensure such disbursements included payment to his attorneys for their fee, nothing was done to preserve Amor's testimony for trial.

As indicated above, for a longtime even after Amor's death, Plaintiff continued to sit on her hands, waiting 1 ½ more years and just a few months before trial to disclose additional fact and expert witnesses who she believed were necessary more than a year earlier. And the coup de grace occurred at the status hearing before this Court on February 16, 2024 where Plaintiff's counsel boldly advised Defendants and this Court that Plaintiff was ready for trial, requested a trial date as soon as possible, contended the trial would only take one week (even when Defendants' counsel pushed back given the number of witnesses and eight experts), and agreed to *Daubert* briefing and pre-trial order schedule—all without a word about the need to supplement her fact and expert witness disclosures. (Transcript?) Instead, Plaintiff waited six more weeks to seek to supplement her disclosures. Clearly, Plaintiff can provide no justification for the cavalier disregard for her discovery obligations and the orders of this Court and her motion should be denied.

**C.  Defendants would be irreversibly prejudiced.**

Plaintiff cannot establish that Defendants would not be harmed by these untimely disclosures. *See e.g. David v. Caterpillar*, 324 F.3d at 857 (emphasizing that it is the late-disclosing party's burden to demonstrate that eh Rule 26(a) or (e) violation was "harmless or

11

substantially justified.") Defendants are preparing for a trial which starts in 10 weeks including drafting *Daubert* motions challenging Plaintiffs four already-disclosed experts, preparing numerous motions in limine, and compiling numerous pre-trial order obligations, *i.e.* witness list, exhibit list, testimony designations, etc. Plaintiffs now seek to add substantial burden to Defendants in the following weeks, including:

- Investigate and depose fact witness Jeanne Olson
- Investigate, subpoena for documents, and depose fact witness Angel Gonzales
- Prepare and serve written expert discovery for "expert" Alan Beaman
- Investigate and depose "expert" witness Alan Beaman
- Identify rebuttal expert witness and prepare rebuttal expert report
- Prepare and present Defendants' rebuttal expert for deposition.
- File and brief a *Daubert* motion to exclude Beaman.

Plaintiff's motion also overlooks the fact that Amor's passing has disadvantaged Defendants every bit as much if not more so than Plaintiff. Plaintiff's motion reads as though she now needs the proffered witnesses to provide what would have been compelling testimony from Amor if he had survived. But Defendants very much wanted to cross-examine Amor about much of his deposition testimony that was flatly contradicted by witnesses and documents, and strategically held back and employed a tempered cross-examination with the expectation that their impeachment evidence would be far more effective at trial. With Amor's passing, Defendants are left with far less effective strategies for introducing that evidence. If Plaintiff had simply sought to re-depose Amor to preserve his testimony, Defendants would have countered with a fulsome and vigorous cross-examination that they now will be unable to present.

All of this prejudice puts Defendants at a tremendous disadvantage in addition to creating a tremendously onerous burden for Defendants just 10 weeks before trial. Even if Plaintiff's untimely disclosures were somehow justified—they were not—the prejudice to Defendants substantially outweighs allowing the supplemental disclosures at this late juncture. Because of the prejudice caused to Defendants from the improperly disclosed witnesses, the only appropriate remedy is to prevent Plaintiff from calling those witnesses at trial. *Tribble*, 670 F.3d at 760; Fed. R. Civ. P. 37(c)(1).

**D.**     **Plaintiff's failure to disclose these witnesses previously constitutes bad faith.**

In determining whether a party's non-compliance with Rule 26 is harmless, the Seventh Circuit has directed district courts to consider: "(1) the prejudice or surprise to the party against whom the evidence is offered; (2) the ability of the party to cure the prejudice; (3) the likelihood of disruption to the trial; and (4) the bad faith or willfulness involved in not disclosing the evidence at an earlier date." *Tribble v. Evangelides*, 670 F.3d 753, 760. Defendants have established *supra* that factors 1-3 are present here – severe prejudice, inability to cure that prejudice, and imminent disruption of trial. With regard to the fourth consideration of bad faith, malice is not required, but bad faith may encompass behavior that is willful, deliberate, or intentional. *Bouto*, 2022 WL 22626455 at *2.

Here, Plaintiff's counsel was well aware of Amor's very close relationships with Olson and Gonzales for the last seven years and never explains why she did not simply disclose them as damages witnesses at any time during fact discovery. And even if it were true that she did not perceive a pressing need to do so until Amor passed, Plaintiff does not even attempt to explain the additional delay in naming those witnesses, as well as her purported expert, Beaman, for well over a year after Amor passed. Plaintiff had myriad opportunities to supplement her fact and

13

expert witness disclosures at any time over the last 2 ½ - 3 ½ years. At every turn delineated above, Plaintiff knew her obligations yet did nothing. Clearly, these were repeated, deliberate strategy decisions, apparently calculated to create turmoil for Defendants while they prepared for trial. At bottom, there is simply no way to justify the extreme length of these delays, which appear calculated to sidetrack and derail Defendants' trial preparation by forcing Defendants to investigate and depose two fact witnesses, conduct expert discovery and a deposition of an "expert" witness, plus obtain rebuttal expert testimony and mount a *Daubert* challenge to Plaintiff's new expert. At a minimum, this constitutes intent, if not actual malice.

      WHEREFORE, in light of the foregoing, Defendants respectfully request this Court deny Plaintiff's motion, and for such other relief as the Court deems appropriate.

Date: May 7, 2024                      Respectfully submitted,

                                                   /s/ Lisa M. Meador
                                                   LISA M. MEADOR, Attorney No. 6270259
                                                   *One of the Attorneys for Defendants*

James G. Sotos
Joseph M. Polick
Laura M. Ranum
Lisa M. Meador
THE SOTOS LAW FIRM, P.C.
141 W. Jackson Blvd., #1240A
Chicago, IL 60604
(630) 735-3300
lmeador@jsotoslaw.com

## **CERTIFICATE OF SERVICE**

 I hereby certify under penalty of perjury pursuant to 28 U.S.C.A. § 1746 that on May 7, 2024, I electronically filed the foregoing **Response to Plaintiff's Motion for Leave to Supplement Rule 26(a) Disclosures** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following CM/ECF participants listed on the below Service List:

***Attorneys for Plaintiff:***
Jon Loevy
Gayle Horn
Locke Bowman
Loevy & Loevy
311 N. Aberdeen Street, 3rd Floor
Chicago, IL 60607
(312) 243-5900
jon@loevy.com
gayle@loevy.com
locke@loevy.com

           /s/ Lisa M. Meador
           LISA M. MEADOR, Attorney No. 6270259
           *One of the Attorneys for Defendants*