**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JEANNE OLSON, not individually, | ) | |
| But as Trustee of the William Amor Trust | ) | |
| | ) | |
|    Plaintiff, | ) | |
| | ) | |
|        v. | ) | Case No. 18-cv-02523 |
| | ) | |
| REBECCA GOMEZ, as Special | ) | |
| Representative for Michael Cross, | ) | The Hon. John J. Tharp, Jr. |
| Deceased, et al., | ) | |
| | ) | |
|    Defendants. | ) | |

**MOTION TO LIMIT THE TESTIMONY OF**
**DEFENDANTS' EXPERT WITNESS DAVID ICOVE**

Plaintiff Jeanne Olson ("Plaintiff") moves pursuant to Rule 702 of the Federal Rules of Evidence and *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993) to bar the proposed expert testimony of David Icove. In support thereof, Plaintiff states as follows

**Introduction**

The Defendants have identified David Icove as their fire expert in this litigation. In his report, Dr. Icove opines that the cause of the fire at issue in this litigation is a cigarette dropping on allegedly dry newspapers. The problem with this opinion is that there is absolutely no evidence in the record to support it; Dr. Icove admits as much. Because his opinion on the cause of the fire is pure speculation, Dr. Icove's testimony should be barred.

**Factual Background**

In his coerced, false confession, Bill Amor stated that he started the fire at 218 E. Bailey Street by dropping a cigarette onto newspapers on which he had previously spilled vodka. Ex. 1

(1:14 a.m. Statement). That spill, if credited, was not small. According to Assistant State's Attorney Nigohosian, Mr. Amor stated that he spilled half of a bottle of vodka. Ex. 2 (Nigohosian Dep.) at 97:5-7. Similarly, Mr. Amor's coerced, false statement describes newspaper that was "doused in vodka." Ex. 3 (5:10 a.m. Statement) at 2. And in his police report, Defendant Cunningham reported that Mr. Amor indicated that "a large quantity of vodka spilled out of bottle onto the Sunday *Tribune* newspaper. Amor advised us that the vodka soaked into the newspaper . . . ." Ex. 4 (Cunningham 4-Page Supp.) at Defs 677.

Mr. Amor's coerced confession is "scientifically impossible." Ex. 5 (Order Vacating Conviction 4/6/17) at Amor 32266. It was impossible for Mr. Amor to have started the fire by knocking a cigarette onto vodka-soaked newspaper. Ex. 6 (Golder Test., 2/2/18) at 23:8-18, 62:9-12; Ex. 7 (Carpenter Report, 1/22/21) at 10, 12; Ex. 8 (DeHaan Test., 12/14/16) at 47:19-24. There is no legitimate dispute on that front. Indeed, at a post-conviction hearing, both the State's and Mr. Amor's experts agreed, and it was the reason why Mr. Amor's conviction was overturned.

### Dr. Icove's Opinions

Dr. Icove offered three opinions in this case, including on the cause of the fire. First, Dr. Icove opined that the City of Naperville's fire investigation met the minimum standards under National Fire Protection Association ("NFPA") 1033 and 921. Ex. 9 (Icove Report) at 8-9, 23-34. Second, Dr. Icove opined that Plaintiff's fire expert, Dr. Carpenter, did not meet those standards in conducting his analysis in this case. *Id*. at 9, 35-51. Third, Dr. Icove opined that the cause and origin of the fire was a cigarette landing on an allegedly dry portion of newspaper that

was on the floor near the armchair by the balcony of the apartment. *Id*. at 9, 52-63. The instant motion challenges only Opinion 3.[1]

## Standard

The Federal Rules of Evidence permit expert opinion only if the testimony is "based on sufficient facts or data" *and* "the product of reliable principles and methods," which the expert has "reliably applied." FED. R. EVID. 702 ("Rule 702"); *Higgins v. Koh Dev. Corp.*, 794 F.3d 697, 704 (7th Cir. 2015). The trial judge occupies a "gatekeeping role" and must scrutinize proffered expert testimony to ensure it satisfies each requirement of Rule 702. *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592-93, 597 (1993). The proponent of the expert evidence bears the burden of establishing, by a preponderance of the evidence, that the requirements set forth in Rule 702 and *Daubert* have been satisfied. *Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 705 (7th Cir. 2009). "Rule 703 requires the expert to rely on 'facts or data,' as opposed to subjective impressions." *Brown v. Burlington N. Santa Fe Ry. Co.*, 765 F.3d 765, 772 (7th Cir. 2014).

## Argument

Dr. Icove's opinion that the fire started by "a lit cigarette landing on and igniting newspapers" near the armchair by the balcony is inadmissible. Ex. 9 (Icove Report) at 63-64. That is because there is absolutely no evidence in the record to support this theory.

To start, Dr. Icove admits that there is no scientific study that supports the hypothesis that a lit cigarette could have started a fire on vodka-soaked newspapers. Ex. 10 (Icove Dep.) at

---

[1] To be clear, there are parts of Opinion 1 that are objectionable; namely, the attempt to backdoor irrelevant and overly prejudicial "bad acts" evidence under the guise of analyzing whether Mr. Amor had a "motive" to commit an arson. Ex. 9 (Icove Report) at 33. But because Plaintiff will be seeking to bar that evidence more globally, Plaintiff will raise it as part of a motion *in limine*.

101:4-9. In other words, just as a court found, and the State's and Mr. Amor's experts have all testified, the ignition scenario that is actually in Mr. Amor's coerced confession is scientifically impossible. The fire did not happen in that way.

As a result, Dr. Icove hypothesized a different way that the fire occurred: He speculated that Mr. Amor either did not spill vodka on the newspaper ("What if your client did not spill vodka on the newspapers?") or only spilled vodka on some portion of the newspaper ("The vodka didn't touch the newspaper . . . where the cigarette landed . . . ."). Ex. 10 (Icove Dep.) at 101:21-22, 102:7-10. Dr. Icove admitted that there is no evidence in the record whatsoever for this speculation:

> Q.    Is there any evidence in the record that shows my client dropped a lit cigarette on a portion of the newspaper that wasn't soaked with vodka? Yes or no?
> A.    Not at this time. More data might reveal it though.

*Id*. at 102:13-18. Dr. Icove claimed that the additional data might come from re-interviewing all of Mr. Amor's experts and having "two or three hours with your client" but then explained that that was "outside of the scope of how – why I was retained." *Id*. at 102:21-103:10. Dr. Icove also admitted that he already had "adequate documentation" from the experts; and Mr. Amor sat for a seven-hour, 397-page deposition. *Id*. at 103:11-12; Ex. 11 (Amor Dep. 3/5/20).

An expert's opinion cannot be based on speculation. *See Daubert*, 509 U.S. at 590; *Metavante Corp. v. Emigrant Sav. Bank*, 619 F.3d 748, 761 (7th Cir. 2010); *see also Brown*, 765 F.3d at 772. That is because Rules 702 and 703, and *Daubert* require expert opinions to be "based on sufficient facts or data" and be the "product of reliable principles and methods." Fed. R. Evid. 702(b) & (c). That requirement is not met here. Instead, Dr. Icove has based his opinion on the cause of the fire on speculation that the vodka did not actually spill, or did not actually spill on the portion of the newspaper lit by the cigarette. Because there is no evidence in the

4

record to support either hypothesis, this portion of Dr. Icove's opinion should be barred. *See Comer v. American Elec. Power*, 63 F. Supp. 2d 927, 934-35 (N.D. Ind. 1999) ("[A]n expert opinion that lacks a proper factual foundation is little more than 'unscientific speculation offered by a genuine scientist' and is thus both unreliable and inadmissible") (quoting *Rosen v. Ciba-Gergy Corp.*, 78 F.3d 316, 318 (7th Cir. 1996)).[2]

Nor can Dr. Icove save this opinion by pointing to his statement—at his deposition—that sometimes suspects are not forthcoming about what happened. Ex 10 (Icove Dep.) at 80:12-81:16. To start, that still does not supply the missing evidence on which an expert opinion must be based. Nowhere in the record whatsoever is there evidence or testimony that Mr. Amor allegedly dropped a cigarette on a dry part of the newspaper.

Additionally, to the extent Dr. Icove is seeking to testify about minimization, that is both a topic that is already being covered by the Defendants' police practices expert and one about which Dr. Icove—a fire investigator—has no expertise. As to the former, the Defendants have disclosed John Brown, a police practices expert, to testify about "minimization" generally, and about Mr. Amor's minimization of his alleged culpability in his confession specifically. Ex. 12 (Brown Report) at 3-4, 17-19; *see id.* at 19 ("In my view, the only person in this investigation that used mitigation as a tactic to escape accountability for their conduct was Amor"). "'[T]his district generally prohibits a party from offering multiple experts to express the same opinions on a subject.'" *Kaepplinger v. Michelotti*, No. 17 C 5847, 2022 WL 267886, at *4 (N.D. Ill. Jan. 28,

---

[2] Worse yet, Dr. Icove could not identify any study indicating that cigarettes can ignite newspapers. Instead, Dr. Icove used studies of cigarettes igniting "diverse papers" to support his speculation about what caused this fire, but Dr. Icove admitted that he did not know how the type of paper might impact whether a cigarette could ignite it; that newspapers may be composed of different materials (particularly advertising sections and comics); and that any uncertainty about the applicability of the cigarette studies to the factual scenario at hand was not important because "[t]his is the best it gets." Ex. 10 (Icove Dep.) at 106:19-110:3; *see also id.* at 114:12-115:8.

2022) (quoting *Sunstar, Inc. v. Alberto-Culver Co.*, No. 01 C 736, 2004 WL 1899927, at *25 (N.D. Ill. Aug. 23, 2004)). "Multiple expert witnesses expressing the same opinions on a subject is a waste of time and needlessly cumulative. It also raises the unfair possibility that jurors will resolve competing expert testimony by 'counting heads' rather than evaluating the quality and credibility of the testimony." *Sunstar, Inc.*, 2004 WL 1899927, at *25. For that reason alone, Dr. Icove should be precluded from talking about minimization.

Nor is Dr. Icove qualified to testify about minimization. Dr. Icove is an arson investigator. As Dr. Icove testified, his area of expertise "is regarding the standards of care for conducting fire investigations." Ex. 10 (Icove Dep.) at 64:7-8. While he testified that those standards can include law enforcement standards, he cannot recall ever being retained to provide expert testimony on law enforcement cases that do not involve a fire or arson. *Id*. at 64:13-21. Nor does he have any expertise in the social sciences, including on particular interrogation tactics—such as minimization—or the science behind them. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 156 (1999) (expert testimony based on practical experience requires "extensive and specialized experience"); *Gayton v. McCoy*, 593 F.3d 610, 617 (7th Cir. 2010) ("The focus is not on whether the 'expert' is qualified in general, but whether his or her qualifications provide a foundation for (him or her) to answer a specific question."); *See also id*. at 617-18 (finding that a medical practitioner specializing in prison medicine was not qualified to give testimony regarding the role that CHF medications may have played in inmates death); *Ancho v. Pentek*, 157 F. 3d 512, 518, 519 (7th Cir. 1998) ("[J]ust as a qualified and board certified heart surgeon does not possess sufficient knowledge of orthopedic medicine to render an opinion on spine surgery, likewise we agree with the trial court's ruling that a mechanical engineer such as Lobodzinski lacks qualifications to give expert testimony about plant reconfiguration."); *Harris*

*v. City of Chicago*, No. 14 C 4391, 2017 WL 3193585 (N.D. Ill. July 27, 2017) (limiting police practices expert's testimony where expert's field "is police practices, not the complex social science of false confessions and coercive interrogations"); *Obrycka v. City of Chicago*, 792 F. Supp. 2d 1013 (N.D. Ill. 2011) (finding that a professional sociologist lacked the requisite foundation to provide expert testimony on the culture of the city's police department); *Bird v. Jefferson Cty. Sheriff's Dep't*, No. 4:07CV202, 2009 WL 804058, *2-3 (E.D. Mo. March 24, 2009) (barring police policies expert who had never investigated a single police involved shooting from testifying regarding police involved shooting and crime scene investigation).

## Conclusion

For all of the reasons above, Dr. Icove should be barred from opining that the cause of the fire was a cigarette dropped on a dry portion of the newspaper. Dr. Icove should be further barred from opining on minimization and whether it was at play in this case.

WHEREFORE, Plaintiff hereby respectfully requests that this Court grant her motion to limit Dr. Icove's expert testimony as described more fully above.

Respectfully submitted,

**JEANNE OLSON, Not Individually But**
**As Trustee of the William Amor Trust**

By:      /s/   Gayle Horn
              Attorney for the Trustee

Jon Loevy
Gayle Horn
Locke E. Bowman
LOEVY & LOEVY
311 N. Aberdeen St., 3rd Floor
Chicago, IL 60607
312 243 5900

7

## CERTIFICATE OF SERVICE

The undersigned, an attorney, certifies that on May 17, 2024, he caused the foregoing document to be served on all counsel of record by filing the same using the Court's CM/ECF system, which automatically effected service on all counsel of record.

<u>   /s/   Gayle Horn          </u>