*INTERROGATIONS AND
CONFESSIONS*



# Model Policy

| Effective Date<br>January 2004 | | Number | |
|---|---|---|---|
| Subject<br>Interrogations and Confessions | | | |
| Reference | | Special Instructions | |
| Distribution | Reevaluation Date | | No. Pages<br>3 |

## I. PURPOSE

It is the purpose of this policy to provide officers with legally sound procedures for conducting custodial interrogations.

## II. POLICY

Custodial interrogations of suspects and the statements and confessions that are elicited are vitally important in the preparation of criminal cases. However, to be admissible as evidence, statements and confessions must be given freely and voluntarily and with due consideration for the suspect's right to silence and right to counsel. Therefore, it is the policy of this law enforcement agency that all officers understand and follow this agency policy in order to observe due process rights of suspects and to guard against any charges of police coercion or intimidation during interrogation.

## III. DEFINITIONS

*Custody:* A custodial situation exists when an officer tells a suspect that he is under arrest. A functionally equivalent situation exists when a "reasonable person" in the suspect's position would feel that his freedom of action has been restricted to the same degree as a formal arrest.

*Interrogation:* Interrogation includes direct questioning of a suspect about a crime or suspected crime, as well as any words, statements or actions by officers that the officers should know are reasonably likely to elicit an incriminating response from the suspect.

## IV. PROCEDURES

A. Custodial Statements and Confessions
  1. *Miranda* warnings are required and shall be administered prior to "custodial interrogation," as defined above.
  2. The following represent examples of situations that are not "custodial" and do not require issuance of *Miranda* warnings.
     a. Investigatory stop and frisk.
     b. Questioning during a routine traffic stop or for a minor violation; to include driving while intoxicated (DWI) stops until a custodial interrogation begins.
     c. During routine questioning at the scene of an incident or crime when the questions are not intended to elicit incriminating responses.
     d. During voluntary appearances at the police facility.
     e. When information or statements are made spontaneously, voluntarily and without prompting by police. (Note: Follow-up questions that exceed simple requests for clarification of initial statements may require *Miranda* warnings.)
B. Administering *Miranda*
  1. *Miranda* warnings shall be read by officers from the card containing this information to all persons subjected to custodial interrogation. Freelancing, recitation from memory or paraphrasing the warnings is prohibited as it precludes officers from testifying in court as to the precise wording used.

EXHIBIT 12

BROWN 26

2. Officers shall ensure that suspects understand their right to remain silent and their right to an attorney. Suspects may be interrogated only when they have knowingly and intelligently waived their rights. Threats, false promises or coercion to induce suspect statements is prohibited
    a. Waivers of one or both of the *Miranda* rights must be performed affirmatively.
    b. Oral waivers are often sufficient but written waivers, particularly in felony charges, are preferred and should be obtained whenever possible on the appropriate agency form.
3. Officers arresting deaf suspects shall notify their immediate supervisor and make arrangements to procure the assistance of an interpreter in accordance with this agency's policy and state and federal law.

C. Invoking the Right to Silence
1. When a suspect invokes his right to remain silent, all interrogation shall terminate immediately.
2. Suspects who are not represented by an attorney may not be interrogated for at least 90 minutes after invoking their right to silence and then, only after officers have re-administered *Miranda* warnings and obtained a waiver.
3. Officers may interrogate a suspect who has previously invoked his right to silence, if, after the passage of time, the suspect initiates communication with officers. However, prior to questioning *Miranda* warnings shall be re-administered and a waiver obtained.

D. Invoking the Right to Counsel
1. If a suspect waives his right to counsel, a waiver shall be obtained prior to questioning. When a suspect makes reference to counsel but his intentions are unclear, officers may question the suspect further to clarify his intentions.
2. When a suspect invokes his right to counsel, all interrogation shall cease immediately. The suspect may not again be interrogated about the crime for which he is charged, other crimes, or by other officers (from this or other agencies) unless
    a. the suspect's attorney is present at the questioning; or
    b. the suspect initiates new contact with the police. In this later case, *Miranda* rights must again be administered and a waiver obtained before any questioning may take place. Officers shall also document and, if possible, obtain written verification that the suspect initiated the communication.
3. Officers shall cooperate in any reasonable way with efforts by counsel to contact or meet with suspects in custody.

E. Documenting Statements and Confessions
1. The circumstances surrounding the conduct of interrogations and recording of confessions shall be fully documented. This includes but is not necessarily limited to
    a. location, date, time of day and duration of interrogation;
    b. the identities of officers or others present;
    c. *Miranda* warnings given, suspect responses and waivers provided, if any; and
    d. the nature and duration of breaks in questioning provided the suspect for food, drink, use of lavatories or for other purposes.
2. Investigative officers are encouraged to use this agency's video and audio taping capabilities for purposes of recording statements and confessions in an overt or covert manner consistent with state law.
3. The lead investigative officer may decide in which cases audio or video tape recordings may be appropriate and whether covert or overt procedures may be used. Tape recordings designated as evidence shall be handled in the following manner.
    a. Original tape recordings shall be duplicated and each copy stored separately.
    b. The tab on the tape housing of both the original and duplicate copies shall be removed to preclude the possibility of erasure or tampering.
    c. Tape recordings shall be stored in a secure location under controlled access as designated by the officer-in-charge of criminal investigations.
    d. All tape recordings shall be inventoried on a routine basis.

BROWN 27

Every effort has been made by the IACP National Law Enforcement Policy Center staff and advisory board to ensure that this document incorporates the most current information and contemporary professional judgment on this issue. However, law enforcement administrators should be cautioned that no "model" policy can meet all the needs of any given law enforcement agency. Each law enforcement agency operates in a unique environment of federal court rulings, state laws, local ordinances, regulations, judicial and administrative decisions and collective bargaining agreements that must be considered. In addition, the formulation of specific agency policies must take into account local political and community perspectives and customs, prerogatives and demands; often divergent law enforcement strategies and philosophies; and the impact of varied agency resource capabilities among other factors.

This project was supported by a grant awarded by the Bureau of Justice Assistance. The Bureau of Justice Assistance is a component of the Office of Justice Programs, which also includes the Bureau of Justice Statistics, the National Institute of Justice, the Office of Juvenile Justice and Delinquency Prevention, the Office for Victims of Crime, and the Office of Sex Offender Sentencing, Monitoring, Apprehending, Registering, and Tracking. Points of view or opinions in this document are those of the author and do not necessarily represent the official position or policies of the U.S. Department of Justice or the IACP.

IACP National Law Enforcement Policy Center Staff: Philip Lynn, Manager; Sara Dziejma, Project Specialist; and Vincent Talucci, Executive Director, International Association of Chiefs of Police.

© Copyright 2004. Departments are encouraged to use this policy to establish one customized to their agency and jurisdiction. However, copyright is held by the International Association of Chiefs of Police, Alexandria, Virginia U.S.A. All rights reserved under both international and Pan-American copyright conventions. Further dissemination of this material is prohibited without prior written consent of the copyright holder.

BROWN 28