# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| JEANNE OLSON, not individually, <br> But as Trustee of the William Amor Trust <br><br> Plaintiff, <br><br> v. <br><br> REBECCA GOMEZ, as Special <br> Representative for Michael Cross, <br> Deceased, et al., <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) | Case No. 18-cv-02523 <br><br> The Hon. John J. Tharp, Jr. |

## MOTION TO BAR THE TESTIMONY OF
## DEFENDANTS' EXPERT WITNESS JOHN BROWN

Plaintiff Jeanne Olson ("Plaintiff") moves pursuant to Rule 702 of the Federal Rules of Evidence and *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993) to bar the proposed expert testimony of John Brown. In support thereof, Plaintiff states as follows

### Introduction

Presented properly, police practice experts can offer legitimate opinions drawing upon law enforcement expertise in ways that can assist jurors, typically on discrete issues. Sometimes, however, police practices experts are just hired guns who want to get on the stand and advocate for the side that paid them, essentially a surrogate closing argument.

Retired Lieutenant Colonel of the Pennsylvania State Police Department is clearly an example of the latter, inappropriate kind. The majority of his proposed opinions are really nothing but his spin on the facts, lacking any genuine connection to helpful expertise. Because his opinions essentially amount to nothing more than his (paid) view on how he would decide the case if he were a juror, they should be barred.

**Background**

Plaintiff disclosed Dr. Richard Leo, Ph.D., as an expert on false confessions. Drawing on a body of literature developed over the past 30 years following the first wave of DNA exonerees (some of whom had, counter-intuitively, confessed to crimes that DNA subsequently proved they did not commit), psychiatrists like Dr. Leo have routinely been approved by courts to explain the phenomenon of false confessions and the factors that contribute their occurrence. Falsely confessing to a crime one did not commit involves psychological aspects beyond the experience of the average lay person, and it turns out that empirical research uncovered a number of contributing hallmarks and risk factors.

Lt. Col. Brown's report explains that he was asked to review the opinions of Dr. Leo and provide an assessment from a police practices standpoint. Exhibit A (Brown report at 2). In response, Mr. Brown offers four opinions, contained on pages 3-4 of his report. *Id.* His report then proceeds to include eight pages summarizing the facts that will be the subject of this trial, spinning them argumentatively in a manner favorable to the defense.

As argued below, Mr. Brown should not be permitted to testify because his opinions have no real substance and are not sufficiently grounded in his expertise. He just wants to tell the story through Defendants' lens, which should not be allowed.

**Standard**

The Federal Rules of Evidence permit expert opinion only if the testimony is "based on sufficient facts or data" *and* "the product of reliable principles and methods," which the expert has "reliably applied." FED. R. EVID. 702 ("Rule 702"); *Higgins v. Koh Dev. Corp.*, 794 F.3d 697, 704 (7th Cir. 2015). The trial judge occupies a "gatekeeping role" and must scrutinize

proffered expert testimony to ensure it satisfies each requirement of Rule 702. *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592-93, 597 (1993). The proponent of the expert evidence bears the burden of establishing, by a preponderance of the evidence, that the requirements set forth in Rule 702 and *Daubert* have been satisfied. *Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 705 (7th Cir. 2009). "Rule 703 requires the expert to rely on 'facts or data,' as opposed to subjective impressions." *Brown v. Burlington N. Santa Fe Ry. Co.*, 765 F.3d 765, 772 (7th Cir. 2014).

## Argument

Mr. Brown's opinions fail to survive *Daubert* scrutiny.

### A. First Opinion: Polygraphs

Mr. Brown's first opinion is contained in a paragraph on page 3 of his report, summarized by him as follows: "The use of the polygraph examination process in this case was not a ruse or a trick used by NPD investigators; but rather a tool to assist in the investigation." Exhibit A at 3 ¶ 1. Specifically, he explains that Mr. Amor supposedly failed the polygraph. From there, Mr. Brown states that the "polygraph examination was an appropriate and useful test at the time of the incident, and is still an appropriate tool used today by law enforcement," including for national security. *Id.* Mr. Brown expands slightly on his polygraph opinion on pages 13 and 14, but the majority of that discussion is just his regurgitation of the facts of the case.

Mr. Brown never actually explains what he means by these conclusory statements about polygraphs. His clear suggestion, however, is that polygraphs are a good mechanism for police investigators to learn whether a suspect's words are truth or lies, and that Mr. Amor's protestations of innocence were therefore false. *Id.* For example, he summarized: "Additionally, investigators

3

accept the results of the polygraph examination when the results of the subject's examination are found to be truthful." *Id.* at 14.[1]

If Mr. Brown is opining anything other than that Mr. Amor's polygraph proves he is lying about his innocence, it is not clear what that opinion might be. Leaving aside the more fundamental *Daubert* question such an opinion raises, Mr. Brown is not and does not purport to be a trained polygraph examiner with training in how to read polygraph examinations. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 156 (1999) (expert testimony based on practical experience requires "extensive and specialized experience"); *Gayton v. McCoy*, 593 F.3d 610, 617 (7th Cir. 2010) ("The focus is not on whether the 'expert' is qualified in general, but whether his or her qualifications provide a foundation for (him or her) to answer a specific question."); *Harris v. City of Chicago*, No. 14 C 4391, 2017 WL 3193585 at *4 (N.D. Ill. July 27, 2017) (limiting police practices expert's testimony where expert's field "is police practices, not the complex social science of false confessions and coercive interrogations"). He thus has no expertise to offer these opinions that polygraphs are appropriate ways to get to the truth, and this opinion should thus be barred on that ground alone.

### B. Second Opinion: Length of Interrogation

Mr. Brown next opines that Mr. Amor was not subject to lengthy interrogation sessions.

---

[1] *See also id.* at 13 ("The polygraph records with its instrumentation any changes in the examinees['] cardiovascular, respiratory, and skin reflex as questions are asked. The polygraph examiner assesses the charts and decides on whether the examinee was truthful, untruthful, or inconclusive. During homicide investigations the polygraph examination *can be used to eliminate certain suspects*...") (emphasis added). In addition, the opinion should be barred because it is an inappropriate opinion on the investigators' intent in using a polygraph; that is, that they used it to investigate the crime as opposed to a ruse to trick Mr. Amor into falsely confessing. *See United States v. Schultz*, No. 14-CR-467-3, 2016 WL 7409911, at *3 (N.D. Ill. Dec. 22, 2016) (and cases cited therein) (expert's opinion about another person's intent neither helpful nor admissible).

4

Exhibit A at 3, ¶ 2. Mr. Brown then bolsters this opinion with a detailed recitation of the interrogation chronology. *See id*. at 4-12, 15-17.

Mr. Brown's opinion here offers nothing helpful. The timing of the various interrogation sessions are either a matter of record, or they are disputed. Where the length of time is undisputed, no expert testimony is needed or helpful, and where there are disputes, then an expert's role is not to weigh in on which version he thinks is more accurate. *See Todero v. Blackwell*, No. 117CV01698JPHMJD, 2020 WL 5542440, at *3 (S.D. Ind. Sept. 16, 2020) (expert "may not attempt to resolve factual disputes for the jury"); *United States v. Brown*, 871 F.3d 532, 539 (7th Cir. 2017) (Federal rules "prohibit expert opinions that would 'merely tell the jury what result to reach.'"). There is nothing for Mr. Brown to legitimately add.

### C. Third Opinion: Minimization

Police interrogators can sometimes obtain confessions by ratcheting up pressure on suspects and then offering them an opportunity to implicate themselves in something less serious than the main event. (The problem is that this technique tends to produce confessions from both guilty and innocent people, particularly where, as alleged here, the pressure applied is too great and the suspect is unduly vulnerable).

With that context, one of the factual disputes in the case is whether (a) the police used this minimization technique on Mr. Amor, who then fell for it, or (b) whether, as alleged by the Defendants, Mr. Amor tried to minimize his involvement in the fire by *sua sponte* offering up more benign versions for his guilty actions.

Which version of reality is more accurate presents a factual dispute, to be decided by the jury. Mr. Brown, however, wishes to weigh in with the following opinion: "In this case, Amor

5

introduced statements to minimize his behavior, not the interrogators, and it was reasonable for investigators to perceive Amor as minimizing..." Exhibit A at 3 ¶ 3. He adds: "The detectives in this case did not use a minimization technique to secure a confession from Amor. Rather, the detectives told Amor of Tina's allegations and confronted him with the results of his failed polygraph examination." *Id.* at 4.

These opinions are not opinions in the proper sense of police practices expert testimony. Mr. Brown is doing nothing but deciding facts, which is improper. And to the extent he is purporting to rely on any undisputed accounts of what was said (such as statements that Mr. Amor admits or statements on audiotape after a bunch of interrogation had already transpired) then there is no need for an expert to characterize those statements. That, too, is the jury's job. *See Todero*, 2020 WL 5542440, at *3; *see also Brown*, 871 F.3d at 539.

Because there is no meat on the bones here, the bulk of Mr. Brown's minimization opinion is to tell anecdotes about several investigations in Pennsylvania that he was involved in before he retired. Exhibit A at 17-18. These "war stories" about an 11-year old boy who was raped by his mother's live-in boyfriend and a shooting investigation Mr. Brown conducted in June of 1991 add nothing helpful.

The true goal of this testimony is contained at the end of the chronology on page 19, where Mr. Brown starts the middle paragraph: "In summary..." He proceeds to provide Defendants' theory of the case: Mr. Amor supposedly wrote a letter about his guilty plan, consistent with inmate Mannion's testimony about how he could make the killing look like an accident. *Id*. This is nothing but Defendants' theory of the case, and not a proper subject of expert testimony, police practices or

otherwise. It too should be barred.[2]

### D. Fourth Opinion: Videotaping Interrogations

Of all Mr. Brown's opinions, this one is the closest to what appropriate police practices expert testimony is supposed to look like. However, the point is peripheral, lacking in probative value, and likely undisputed, so much so that Mr. Brown should be barred anyway. If the Court disagrees, Plaintiff submits that Mr. Brown's testimony at trial should be limited to this point, and the first three opinions should be barred.

WHEREFORE Plaintiff respectfully requests that this Court bar Mr. Brown from testifying as an expert.

Respectfully submitted,

**JEANNE OLSON, Not Individually But As Trustee of the William Amor Trust**

By:    /s/ Jon Loevy
       Attorney for the Trustee

Jon Loevy
Gayle Horn
Locke E. Bowman
LOEVY & LOEVY
311 N. Aberdeen St., 3rd Floor
Chicago, IL 60607
312 243 5900

---

[2] It is also worth noting that two other defense experts, Wellner and Icove, also offer opinions on "minimization," so Defendants are hardly prejudiced if Mr. Brown does not.

**CERTIFICATE OF SERVICE**

The undersigned, an attorney, certifies that on May 17, 2024, he caused the foregoing document to be served on all counsel of record by filing the same using the Court's CM/ECF system, which automatically effected service on all counsel of record.

                                                             /s/     Jon Loevy