# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

|  |  |  |
|---|---|---|
| JEANNE OLSON, not individually, But as Trustee of the William Amor Trust | ) ) ) |  |
| Plaintiff, | ) ) |  |
| v. | ) ) | Case No. 18-cv-02523 |
| REBECCA GOMEZ, as Special Representative for Michael Cross, Deceased, et al., | ) ) ) ) | The Hon. John J. Tharp, Jr. |
| Defendants. | ) ) |  |

## MOTION TO BAR THE TESTIMONY OF EXPERT WITNESSES
## DAVID FERRERI AND MITCHELL KUSHNER

Plaintiff hereby moves to bar and/or limit the testimony of the Defendants' expert witnesses David Ferreri and Mitchell Kushner as follows:

## INTRODUCTION

William Amor's 1997 murder conviction was vacated in 2017 by the Illinois courts because of newly-discovered evidence that demonstrated that the confession that Defendants coerced out of him was scientifically impossible. The State originally obtained Mr. Amor's murder conviction in 1997 by presenting trial testimony from a Naperville firefighter, David Ferreri, and an Illinois State Fire Marshal investigator, Mitchell Kushner, who 25 years ago were able to testify without opposition that the cause and origin of this fire matched up with that coerced confession. At the retrial in 2018, prosecutors did not call Ferreri or Kushner to repeat their opinions, likely because the State's own expert advised prosecutors that neither Ferreri nor Kushner were applying modern fire science in reaching their conclusions. That expert, John

Golder of the Bureau of Alcohol, Tobacco and Firearms is notably not someone Defendants have designated as an unretained expert for trial.

Defendants in this case are following a different strategy from the State of Illinois at Mr. Amor's retrial. Their disclosures reflect that despite Ferreri being retired from the firefighting field for over a decade, despite Kushner basing his opinions on a fire scene that had, unbeknownst to him, been significantly altered before he saw it, and despite the fact that neither of these purported experts have followed the tenants of modern fire science in reaching their opinions, Defendants believe these outdated professionals are qualified to tell a jury in this case about modern fire science. Ferreri and Kushner's opinions about fire science in an advancing field that has passed them by are irrelevant and do not pass *Daubert* muster. While both will testify as fact witnesses about their respective roles in this investigation, which is proper, they should not testify with the imprimatur of science behind them when they do so. Their purported expert opinions should be barred.

## FACTUAL BACKGROUND

David Ferreri has been retired from firefighting and the Naperville Police Department since 2013. Ex. 1 (Ferreri Dep. Tx. at 13.) It has been at least 10 years since he has worked in any capacity in the firefighting or fire safety field. He never worked in any other fire departments but Naperville, and he has never done any fire investigation or purported fire expert work in any other context. (*Id.* at 15, 60.) Mr. Ferreri only conducted 70 fire investigations during his career, the vast majority of those involving non-fatal fires (*Id.* at 22, 39), and since his retirement from Naperville, he has done nothing to keep himself up to date on the science of arson investigation. (*Id.* at 63.) In his career, Mr. Ferreri testified in criminal court about the cause and origin of a fire exactly one time – in William Amor's original trial. (*Id.* at 47.) He has a bachelor's degree in fire

science (that he received in 1996), but no other graduate level coursework in fire science. (*Id.* at 64.)

Mr. Ferreri's opinion at trial that he could determine that the origin of this fire was in the area of the swivel chair was based on the existence of a "v pattern" on the wall behind the swivel chair and his conclusion that the chair "had suffered the most severe damage of anything in that area." Ex. 2 (Ferreri Trial Tx. at 71, 72.) He also testified that the patterns of burning around the swivel chair were "possibly" from "something poured on that carpet or put on that carpet that burned in a very symmetrical pattern." (*Id.* at 76.)

Mr. Kushner, who is currently a fire investigator for the Illinois State Fire Marshal's Office, has other defects in his opinions. He was called to this fire scene several days after the fire because Ferreri wanted him to run his trained arson canine through the fire debris to detect potential accelerants. Ex. 1 (Ferreri Dep. Tr. at 67-68.) Kushner brought his dog but did not bring it through the scene because it was his belief "the fire was all up high" so there were no signs of a liquid anywhere. Ex. 3 (Kushner Dep. Tr. at 200.) Instead, he evaluated a scene that by his own admission he believed was not impacted by the fire cleanup process (called "overhaul") that can distort fire patterns and evidence. (*Id.* at 205-06.) He claimed that Ferreri told him the overhaul efforts were "minimal," but Ferreri's own testimony and video and photographic evidence from the scene establish without a doubt that overzealous overhaul was a significant issue in this fire scene, which resulted in the removal of "quite a bit" of drywall. Ex. 3 (Kushner Dep. Tr. at 205-06); Ex. 1 (Ferreri Dep. Tr. at 78-79.)

His analysis also failed to consider that flashover was involved in this fire. Ex. 3 (Kushner Dep. Tr. at 245-46.) Flashover occurs when the radiant temperature in a fire is so extreme that objects not previously involved in the fire combust from the radiant temperature and

3

start burning without coming into contract with flame. Flashover can create and obscure fire patterns. In flashover, objects do not burn according to the path of the fire, but because radiant temperatures simply ignited them. The path of the fire is thus obscured. Kushner mistakenly believed the fire in this case did not experience flashover even though firefighters who observed the actual fire noted the areas where flashover occurred. Ex. 1 (Ferreri Dep. Tr. at 101) concluded that the fire began in the southwest corner of the apartment (where the swivel chair was) because of his identification of a "v pattern" in the area of the chair, and his belief that the swivel chair had "entirely burned away." In fact, the swivel chair had not "entirely burned away." Instead, before Kushner came to the fire scene, this chair was removed from the scene at some point, potentially damaged by the overhaul process, and was depicted in certain post-fire photographs taken before Kushner got to the scene sitting in a bucket. Ex. 3 (Kusher Dep. Tr. at 140-41, 165, 208-09). Kushner was not able to determine whether the swivel chair had potentially become involved in the fire through a smoldering fire (such as an abandoned cigarette) because "the chair was gone when [he] got there." Ex. 3 (Kusher Dep. Tr. at 165.) He incorrectly treated the absence of the chair as definitive evidence that the fire originated there and that the fire did not begin accidentally.

### FERRERI'S AND KUSHNER'S OPINIONS

Defendants disclosed David Ferreri as an expert who would testify "consistent with his deposition in this case and with his prior testimony in Plaintiff's underlying criminal proceeding and coroner's inquest." Ex. 4 (Defs. Rule 26(a)(2) Discl.). The Defendants then listed various opinions that may be included in that testimony, including that (1) the origin of the fire in this case was "in the area of the swivel chair in the southwest corner of the living room" and (2) that the fire was determined to be incendiary based on Mr. Amor's confession, and that (3) this fire

4

could have been set by Mr. Amor in the way he described in his confession, because there was enough newspaper to have been a fuel source for the fire.

Defendants disclosed Mitchell Kusher as an expert who would also testify "consistent with his deposition in this case and with his prior testimony in Plaintiff's underlying criminal proceedings," and then also list out specifics of his opinion including that (1) the fire origin was in the southwest corner of the living room where the swivel chair was located; and (2) the fire was caused by applying an open flame to the swivel chair.

## LEGAL STANDARD

"[A]ll witnesses who are to give expert testimony under the Federal Rules of Evidence must be disclosed under Rule 26(a)(2)(A)," a disclosure which "should be in writing, signed by counsel, and served to opposing counsel." *Musser v. Gentiva Health Servs.*, 356 F.3d 751, 756 (7th Cir. 2004). Additionally, a witness who is "'retained or specially employed to provide expert testimony' must submit an expert report complying with Rule 26(a)(2)(B)." *Id.* at 756-57. Under Federal Rule of Civil Procedure 26(a)(2)(C) the disclosure for a non-retained expert "must state: (i) the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705; and (ii) a summary of the facts and opinions to which the witness is expected to testify."

**I.     Neither Kushner nor Ferreri Followed Current Arson Science in Reaching Their Conclusions, Which Are Speculative and Contrary to Generally Accepted Arson Science**

Mr. Ferreri, and to some extent Mr. Kushner, are important fact witnesses at the upcoming trial – they were involved in this investigation, they spoke with Defendants, they testified at Mr. Amor's original trial, and they relied on Defendants' false account of Mr. Amor's confession in order to create evidence that led to his conviction. Ferreri may testify about his

5

observations at the fire scene, his involvement in the fire investigation, and his reliance on what Defendant Cross told him about Mr. Amor's purported confession. Kushner may also testify about his observations at the fire scene and his equal reliance on the purported confession as the basis for his conclusion that this fire was intentionally set.

What neither Ferreri or Kushner should be allowed to do at the upcoming trial, however, is gloss their factual testimony with the imprimatur of expertise under Rule 702, because as modern fire science demonstrates, neither investigator is giving opinions that are "the product of reliable principles and methods." Federal courts applying *Daubert* in the arson context look to the National Fire Protection Association's Guide for Fire and Explosion Investigations (hereinafter "NFPA 921") to evaluate *Daubert* since NFPA 921 "represents the national standard with regard to appropriate methodology for investigation by fire science experts." *Workman v. AB Electrolux Corp.*, No. 03-4195-JAR, 2005 WL 1896246, at *10 (D. Kan. Aug. 8, 2005); *Netherlands Ins. Co. v. HP, Inc.*, 646 F. Supp.3d 139, 145-46 (D. Mass 2022) (collecting cases). NFPA 921 was enacted in 1992 and became widely accepted over the ensuing years. *United States v. Aman*, 748 F. Supp.2d 531, 535 (E.D. Va. 2010); *Souliotes v. Hedgpeth*, Case No. 1:06-cv-00667 AWI MJS HC, 2012 WL 1458087, *19 (E.D. Cal. Apr. 26, 2012).

Mr. Ferreri testified that he viewed NFPA 921 as "a guideline," meaning it was something akin to "what you might want to think about" as opposed to a mandate. (Ferreri Dep. at 34.) This view of NFPA 921 attempts to justify opinions run wholly contrary to its principles. First, reliance on v-patterns and pour patterns, and the belief that the area of greatest burning is the area of the origin of a fire are old tenants of fire analysis that NFPA 921 recognizes to be totally debunked. Ex. 6 (NFPA 921-56 at 6.3.3.3 ("[c]lean burn areas by themselves do not necessarily indicate areas of origin"); *id*. at 6.3.19.2 (areas of great damage "are not always the point of fire

origin"); *id*. at 6.3.20.1.3 ("a V shape is not necessarily associated with the origin of a fire as they can also be created due to protected areas from contents, combustion due to ventilation flow paths, and dropdown.")) Both Ferreri (and Kushner) rely solely on these burn patterns, without corroboration, to find that this fire was an arson, exactly what NFPA 921 was enacted to debunk. *Souliotes*, 2012 WL 1458087 at *19 (NFPA 921 explained that widespread beliefs regarding the infallibility of burn indicators were simply incorrect.") Because he could not properly determine the area of origin, he could not under NFPA 921 determine that this fire was incendiary at all – he should have ruled it an undetermined fire.

Both Ferreri and Kushner relied on Mr. Amor's purported confession as their basis for determining this fire was incendiary (meaning intentionally set) – without the confession they both agreed they could not have concluded the fire was incendiary. Ex. 1 (Ferreri Dep. Tx. 150-52); Ex. 3 (Kushner Dep. Tx. 191.) But under NFPA 921, an admission cannot be the basis for a determination the fire was incendiary unless the confession matched the actual fire dynamics, since under NFPA 921 the investigator must "evaluate the quality of the data obtained from the witness" – an unsupported or discredited statement is not something an investigator must rely on in deciding the cause of a fire. Ex. 6 (NFPA 921 14.5.1.3.) NFPA 921 is clear that if the investigator's opinion about the cause of a fire is "only 'possible' or 'suspected,' the fire cause is undetermined." Ex. 6 (NFPA 921 19.7.4.) Mr. Ferreri's opinion that this fire is "incendiary" is based on the "possible" ignition scenario of William Amor pouring vodka on newspapers and managing to light supposed dry parts of the newspapers on fire with a cigarette. There is absolutely no evidence in the record that that occurred here; to the contrary, the only evidence—which Plaintiff vigorously contests, regardless—is that Mr. Amor (according to his false, coerced confession) dropped a cigarette on newspapers "doused in vodka." Ex. 5 (5:10 a.m. Statement).

7

Mr. Ferreri's opinion—that the fire started by igniting a purportedly dry newspaper—is pure speculation. *See Daubert*, 509 U.S. at 590; *Metavante Corp. v. Emigrant Sav. Bank*, 619 F.3d 748, 761 (7th Cir. 2010) (expert opinion cannot be based on speculation). And purported expert opinions based in speculation are not reliable. *Ammons v. Aramark Unif. Servs., Inc.*, 368 F.3d 809, 816 (7th Cir. 2004) (district courts are to "reject any subjective belief or speculation" in proffered expert conclusions); *see also Metavante Corp.*, 619 F.3d at 761.

Nor is Mr. Kushner on firmer ground. Kushner, who is a current investigator with the Illinois State Fire Marshal's Office, apparently disagrees with Ferreri that this fire began with the setting of newspapers on fire by a cigarette. Instead, Kushner has opined that the fire began by an open flame being applied to the swivel chair—which is not how Mr. Amor "confessed" to starting the fire and for which there is no evidence whatsoever in the record.

Apart from his inappropriate reliance on Mr. Amor's confession as his basis to determine this was incendiary, Mr. Kushner has nothing to support his opinions other than his misconceived analysis of fire patterns that cannot be squared with NFPA 921. Like Ferreri, he treats the swivel chair as the origin of the fire because it was supposedly connected to a "v pattern" and was largely destroyed by the fire; both are an improper bases under NFPA 921. Moreover, however, Mr. Kushner observed this fire scene a few days after the fire. Ex. 3 (Kusher Dep. Tr. 194.) He made speculative assumptions about the fire scene on which his opinions depend. He stated there was no flashover that would account for the fire patterns when there was clearly flashover in this fire (which can explain why even an accidental fire has "'excessive,' 'unnatural,' or 'abnormal'" fire patterns (NFPA 921 23.2.7.2)). He speculated that there was minimal overhaul when in fact there was a significant amount of overhaul which impacted the fire patterns as he saw them several days later. He speculated that the swivel chair in this case "burned away" when it was

removed and possibly damaged in the overhaul process. The fire scene that Mr. Ferreri saw was reconstructed and altered, so all his opinions are also based on impermissible speculation. *Ammons.*, 368 F.3d at 816; *see also Metavante Corp.*, 619 F.3d at 761.

The jury in this case will hear from qualified arson experts who are testifying based on the actual evidence from this fire scene. Neither Ferreri nor Kushner are such experts. They will testify as fact witnesses and can explain to the jury their part in this process, but they should not be qualified as experts when they do so, since their opinions are fatally flawed.

## CONCLUSION

For the foregoing reasons, David Ferreri and Mitchell Kushner should be barred from testifying as experts at trial. Ferreri is not qualified to render fire science opinions under modern fire science procedures, and Kushner misapplies those standards and otherwise relies on speculation to reach his conclusions in this case. Their testimony as experts is inadmissible under Rules 702, 402, and 403.

WHEREFORE, Plaintiff hereby moves to bar and/or limit the testimony of Defendants' expert witnesses David Ferreri and Mitchell Kushner as described more fully above.

Respectfully submitted,

**JEANNE OLSON, Not Individually But As Trustee of the William Amor Trust**

By: ___/s/ Jon Loevy___
      Attorney for the Trustee

Jon Loevy
Gayle Horn
Locke E. Bowman
LOEVY & LOEVY
311 N. Aberdeen St., 3rd Floor
Chicago, IL 60607
312 243 5900

## CERTIFICATE OF SERVICE

The undersigned, an attorney, certifies that on May 17, 2024, she caused the foregoing document to be served on all counsel of record by filing the same using the Court's CM/ECF system, which automatically effected service on all counsel of record.

/s/   Jon Loevy