*Amor v. Cross, et al.*
Case No. 18-CV-2523
Our File No. 18-4078

# EXHIBIT E

**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| JEANNE OLSON, as Trustee of the<br>William Amor Trust for WILLIAM E. AMOR,<br>deceased, | )<br>)<br>) | 18-CV-02523 |
| Plaintiff, | ) | |
| | ) | Judge John J. Tharp, Jr. |
| v. | ) | |
| | ) | |
| REBECCA GOMEZ, as Special Representative<br>for MICHAEL CROSS, deceased; ROBERT<br>GUERRERI; BRIAN CUNNINGHAM;<br>and THE CITY OF NAPERVILLE, | )<br>)<br>)<br>) | |
| Defendants. | ) | |

## <u>DECLARATION OF DR. MICHAEL WELNER</u>

I declare under penalty of perjury under the laws of the United States that I am over the age of 18 and otherwise competent to testify, and the following is true and based on my personal knowledge.

1.     I was retained as an expert witness by counsel for the Defendants in the above-captioned matter. Attached as **Exhibit A** is a copy of my *curriculum vitae*.

2.     The information provided herein is generally referred to in my CV. Because Plaintiff has challenged my qualifications to render testimony in this case, I am providing this declaration to further explain my education, training, and experience.

3.     Upon completing medical school in 1988, I completed an internship in internal medicine, emergency medicine, and psychiatry. I then completed a residency in psychiatry at Beth Israel Medical Center in New York. In 1991 and 1992, I completed a fellowship in forensic psychiatry at the University of Pennsylvania.

4.     I have been a board-certified psychiatrist since 1993. I am also a board-certified forensic psychiatrist since 1996.

5.     Recertification in forensic psychiatry in 2006 and 2017 involved passing a written examination and demonstrating updated fluency in the intersection of psychiatry and the law.

6.     Psychiatry is the science of human behavior, personality, emotions, dynamics with others, personal conflict, and all aspects of cognition, such as decision-making, memory, impulse control, and judgment. The science of psychiatry assesses an individual's expression of behavior, personality, emotions, and cognition. This professional focus anchors the psychiatric professional in appreciation for how an individual navigates one's world and one's relationships,

and the dynamics of particular interactions that become the focus of assessment. The unique relatedness of one to their surroundings and to others forms a core understanding of personal strengths and weaknesses and why the issues of focus came to be.

7.      Forensic psychiatry is focused on the intersection of the science of human behavior and the legal system. It encompasses expertise and experience distinct to criminal suspects, defendants in the criminal-justice system, and corrections populations. Clinical matters are unique to each suspect or defendant, including experience and interactions with police, dynamics with one's current and former support system, relatedness to prosocial others in the community, antisocial peers, dynamics in subcultures (e.g., gangs), dynamics between co-defendants, custodial experiences, appraisal of the evidence and legal options, and competing influences on the defendant in custodial decision-making. Forensic psychiatrists commonly retrospectively evaluate the suspect's or defendant's mental state at points in time at issue, such as when an admission or confession was provided.

8.      Forensic psychiatry is built upon the foundation of psychiatry. Namely, clinical psychiatry expertise is the basis upon which the subspecialty focus of forensic psychiatry is applied. Many questions are referred to forensic psychiatrists by courts. Some involve diagnosis. Some do not.

9.      Board certification is the achievement of a demonstrated higher qualification in a specific area. Board certification has been developed for medical specialties such as psychiatry in order to anchor practitioners in standards of practice and the application of sound science. Board certification connotes demonstrated awareness of the state-of-the-art of a specific field in completion of testing and experience in combination. Board certification in forensic psychiatry is the achievement of a demonstrated higher qualification in the intersection of law and psychiatry.

10.      Psychiatry training incorporates didactic instruction and direct patient supervision that cultivates expertise in the dynamics of interpersonal relationships, be they relationships with intimates, authority figures, peers, strangers, or family. The same training hones the analysis of adaptive, immature, and/or pathological responses to emotional conflicts and anxieties, whether it be guilt, shame, loss, fear, exploitation, or others.

11.      Training in psychiatry refines expertise in conducting assessment, actual face-to-face interviewing, recognizing symptoms, gathering pertinent history, incorporating history with the interview, and performing a clinical evaluation with different potential interpretations.

12.      The scientific body of knowledge of all behavioral sciences is no different for psychology or any of the social sciences than it is for forensic psychiatry. The disciplines rely upon 1) the same body of literature and scientific knowledge, be it academic literature in psychology, psychiatry, or other social sciences and 2) the same recommendations for therapeutics of emotional conflicts or other psychopathology. Different specialists have different personal focus and fluency, but the knowledge base informing clinical, academic, research, and psychology, the social sciences, and forensic psychiatry is identical.

13.      Utilization of a body of knowledge does not certify that all of the research from that discipline cannot be potentially flawed. Each professional assesses the methodological rigor of a study and is responsible for his own critical appraisal. For example, within social science

literature, there are many articles that I have studied and rely upon, as a forensic psychiatrist. There are others that are methodologically flawed that I do not rely upon, for that reason.

14. Forensic psychiatry contrasts to clinical psychiatry in that assessment is not restricted to the in-office visit and does not mandate conclusions from the point an in-person consultation ends. Investigative rigor is a core expectation and skill of forensic psychiatry. The forensic psychiatrist, presented with questions of the science applied to the law, gathers and otherwise reviews evidence from all sources and all orientations to mine data that informs the domains of its expertise and specific questions of the court that engage the behavioral sciences.

15. Because forensic psychiatry is the application of psychiatry to the law, the evaluation often focuses on different points remote in time to the court proceedings. Retrospective assessment of a litigant's state of mind is a routine responsibility of forensic psychiatry. Because examination of the litigant may not occur until even years after the events in question, forensic psychiatry promotes the reliance upon all available evidence to inform understanding of behavior, emotions, dynamics, and choices at the time in question. These include but extend well beyond investigative records but include interviews of witnesses, police body cam footage, litigant smart phone data, personal documentation, third party observational data, and other sources that may be distinct to the question at hand.

16. Forensic disciplines, because of their application to specific legal questions, commonly overlap in topic expertise with other disciplines in situations that do not occur in clinical application. For example, forensic pathology and forensic anthropology overlap and share the same knowledge base; forensic toxicology and pharmacology do as well. Forensic psychiatry is no different, and depending on the question before the court, intersects and overlaps heavily with criminology, psychology, and select social sciences.

17. The overlap between forensic psychiatry and social sciences includes, but is not limited to, cross-cultural assessment, torture issues, litigation involving cults and sects, presentencing psychosocial assessment of mitigation, the effects of gaming, human trafficking, drug-facilitated sex assault, and disputed confessions, among others.

18. Expertise across the forensic sciences is either recognized by Board Certification that tests core competency or by practice focus that covers a particular area. For example, there is no Board Certification in the social sciences. And few social scientists concern themselves with human trafficking. Those who do engage the issue to cultivate fluency, however, whether they publish or not, may be among the most sophisticated experts in the topic available. Expertise valued by other forensic psychiatrists is valued for its origination in reliable research methodology rather than its discipline. There is no such thing in psychiatry as disregarding sound methodology and the conclusions thereof because it originates outside forensic psychiatry.

19. Forensic psychiatry is not law enforcement and does not include expertise in police practice. However, forensic psychiatry and its core responsibilities of investigation necessitate routine interaction with police and investigative agencies and fluency with different stages of criminal case work, what transpires, when, and how. Reviewing documentation and videotapes of police interviews, for example, is an everyday experience of the practicing forensic psychiatrist spanning all criminal and related civil casework.

20.     Reliance upon the expanse of collateral data is critical in forensic psychiatry and behavioral science assessment because litigation is an adversarial process in which a litigant is invested in managing the impression of the forensic examiner. In order to arrive at a valid, reliable opinion, the forensic examiner seeks to evaluate the entire range of evidence and to consider all possible explanations rather than to be guided by one orienting party.

21.     Because forensic psychiatry is the application of psychiatry to the law, an understanding of legal standards as they relate to psychiatric questions is an expected core competency. Such legal standards and practice are tested as well in the process of forensic psychiatry Board Certification. In addition, psychiatry and forensic-psychiatry training include how to review research and academic literature across the medical, behavioral, and social sciences, how to assess methods and results critically, and how to apply such understanding responsibly to individual casework. The review, analysis, and application of available literature is part of everyday practice for all physicians, including psychiatrists. The rigor of medical and clinical disciplines is reinforced because our decisions are being made for the welfare of individual patients with unique circumstances, and there are repercussions to being wrong.

22.     The psychiatric interview of a litigant is an outgrowth of extensive evidence gathering in forensic psychiatry. Gathering evidence from the gamut of sources allows the examiner to be fully informed and to evaluate the input of a litigant. The interview covers what cannot be established or confirmed from other source materials and data contemporaneous to the events at issue, and enhances the forensic examination.

23.     If there is sufficient information from available sources of information, be it police records, the interrogation, witness interviews, jail records, depositions, testimony, or others, the examiner need not interview the litigant on what has already been asked or available from the factual record. In some instances, the quality of information recalled by the examinee may be poor, relative to the data and more contemporaneous information evaluated by the forensic psychiatrist. In other instances, the passage of time contributes to erosion of memory and/or contamination by the pressures of litigation that may shift one's account from an earlier detailing.

24.     The function of the forensic interview is not to recreate history, it is to augment the available history and to complete that history as necessary. The interview is a component of a forensic examination; it enables exploration of certain questions that would not otherwise be informed. If the interview is not then undertaken, the forensic psychiatrist does not opine about matters for which there is otherwise no historical record.

25.     Formal diagnosis of a litigant without interview is not undertaken unless interview is not possible. For numerous questions, the quality of information available from the case file and its data is significant, independent of the forensic interview. If interview is not undertaken, and depending on the information available, the forensic examiner limits his opinion to whatever is based strictly on an analysis of the historical record and case data available, and to areas that would not have required interview to inform.

26.     In 1992, I began professional practice in New York City and assumed a patient load for clinical care of approximately seventy patients while beginning to consult as a forensic

4

examiner in a number of cases in the criminal-justice system. At the same time, I was a full-time attending physician at Bellevue Hospital in New York City on the corrections-psychiatry unit.

27.     In the latter position, I was responsible for treating hundreds of pre-trial defendants from a range of criminal cases from Manhattan, Brooklyn, and the Bronx. These defendants presented in our treatment setting with stressors and conflicts unique to pretrial defendants, including their experiences with police and detectives, their decisions to confess and give self-incriminating statements to police officers during questioning, their experiences in custody, their appraisal of the evidence against them, their relationships to their attorney and perceived support system, and the legal advice they were receiving from others around them.

28.     At Bellevue Hospital, and in my professional experiences of over 25 years, I examined, interviewed, and treated adolescent and adult defendants from a range of backgrounds and cultures, including members of a variety of gangs. These included people who had no offense history and were naïve to investigation, interrogation and arrest, and others who were veterans of the criminal justice system and were wise to its pitfalls and openings as it related to their situation. It was at Bellevue that, as a clinician treating him in 1995, I had my first experience working with someone who had falsely confessed to murder.

29.     From 1992 to 1995, when I was an attending physician at Bellevue, I also conducted evaluations of criminal defendants' fitness to proceed to trial in well over 100 criminal cases. In so doing, I routinely reviewed confessions by those claiming innocence and those acknowledging guilt, those for whom many sources of evidence existed in addition to the confession, and those whose confession was the most significant piece of evidence against them.

30.     Occasionally those confessions were recorded, but the overwhelming majority of such confessions were not. Some of the confessions were detailed, some were not. Some of the confessions were well documented, most were not.

31.     Since 1992, I have examined hundreds of criminal defendants facing a range of charges. For approximately two decades, I have been part of the panel of "Highly Qualified Independent Psychiatrists" maintained by the New York State Supreme Court, to whom judges refer criminal and civil commitment matters for independent assessment.

32.     Over the course of my career and as I continue to conduct examinations relating to competency to waive Miranda, disputed confessions, assessment of intellectual disability for pre-sentencing, criminal responsibility in insanity claimants, or those asserting diminished capacity or diminished maturity who admit involvement, and a range of risk assessments of the incarcerated, I have reviewed many hundreds of confessions across a wide range of circumstances in actual forensic casework. These include mostly the confessions of those who do not dispute their involvement in a crime, but many who do claim innocence or, that their involvement in the crime was different from what they confessed or admitted to.

33.     Regardless of the setting, my extensive experience has engendered a recognition that criminal defendants and even most inmates do not stop advancing their own interests simply because they have confessed. From the experience of forensic psychiatry, a confession or an admission (which is not a confession) is a statement at a point in time in litigation. What follows from there until the end of the trial is different for every litigant, but every litigant has one's own

interests at heart, just as would be every patient. How these are expressed is the individual experience and why fully informed forensic assessment relies upon an array of evidence to synthesize opinions. Generalization has no place in forensic behavioral assessment.

34.     From 1995 to 2011, I was on the teaching faculty of NYU School of Medicine as a Clinical Associate Professor of Psychiatry. In 2016, I joined the teaching faculty of Mt. Sinai School of Medicine as a Clinical Associate Professor of Psychiatry. My responsibilities at Mt. Sinai range from teaching and supervision of senior-level psychiatry residents in case practice of forensic psychiatry, including assessment of disputed-confession matters, to supervision of graduate and post-graduate psychology students.

35.     From 1996 to 2001, I was Publisher and Editor-in-Chief of The Forensic Echo, which was a monthly subscription journal of law, psychiatry, and public policy. My responsibilities included the review of higher-court decisions and of academic-research articles of areas of emerging medical, behavioral, and social sciences. It was through this position that I began writing about psychiatric issues in interrogation and examinee vulnerability over 25 years ago.

36.     In 1998, I founded, and have since chaired, The Forensic Panel, a multispecialty practice of the behavioral sciences, pathology, toxicology, medicine, and radiology. The Forensic Panel was the first practice in the United States to operationalize prospective peer review in forensic consultation, in order to enhance the objectivity, requisite diligence, and adherence to standards of forensic psychiatry and the other specialties when they apply to legal questions.

37.     In my role as Chairman of The Forensic Panel, I routinely supervise a variety of psychologists, criminologists, and law-enforcement professionals, as well as psychiatrists and other medical and forensic specialties, in qualitative aspects of their assessment.

38.     I am familiar with numerous areas in which forensic psychiatry interfaces with other disciplines, and have published on same as it relates to neuropsychology, psychology, forensic nursing, pathology, anthropology, criminology, law enforcement, and others. My publications have appeared in behavioral, forensic, and social-science journals. I have also published protocols for peer review and multi-disciplinary peer review in both behavioral-sciences and forensic-sciences journals. In addition, I have published numerous other articles and lectured on a range of topics, as noted in my CV.

39.     In successive versions of the peer-reviewed reference, Encyclopedia of Forensic Sciences, I wrote the chapter on the assessment of the intellectually disabled in different criminal-case contexts, which includes the assessment of Miranda and interrogation issues in the intellectually disabled defendant. My publications have also included several that focused on different aspects of disputed confessions, such as the Gudjonsson Confession Scales and individual vulnerability.

40.     I have conducted several complex research studies, on topics ranging from the distinction of criminal depravity to assist fairness in sentencing, the assessment of maturity in the homicide defendant, to a typology for drug-facilitated sex assault, criminal maturity in the juvenile homicide defendant, fetal abduction and maternal evisceration, and others. I have published on these topics in peer-reviewed scientific literature as well. I have supervised

graduate-level trainees from all fields of psychology in research activities for over a decade. Based on my experiences, I am quite familiar with research-methodology development and the responsible use of research findings.

41.     With respect to criminal and everyday depravity as it relates to litigation and clinical practice, respectively, I researched and developed the Depravity Standard for over fifteen years and in a multi-pronged research protocol using various statistical analyses before submitting to publication. This protracted course was specifically influenced by my commitment that this sensitive research not be misused in litigation. My research has yielded a number of peer reviewed publications and to this day, The Depravity Standard and its protocols require various controls to avoid misuse and misapplication in the courts.

42.     The responsible application of research to litigation is a familiar part of my everyday practice and has, most recently involved publication of proposed methodologies for assessment of maturity among juvenile and other major crime defendants.

43.     Emerging from these experiences are important distinctions of forensic case practice from research experiences. The expectation of the depth of forensic psychiatry examination differs significantly from expected suitable research methodology. Conclusions in forensic psychiatry emerge from accessing the diverse range of every relevant source of information, requiring many hours of effort on each individual suspect and allowing for very high magnification of, for example, a disputed confession. Conclusions from research emerge from far more limited source materials, and necessarily so. Research could not be done on any large scale if the effort required the level of diligence customary to the forensic-psychiatry exam. By the same token, the magnification and clarity afforded by the thoroughness of forensic psychiatry affords far greater depth of understanding of the individual case.

44.     In the different contexts noted above, I have more than 30 years of experience of directly interviewing and assessing hundreds of criminal defendants about their personal choices to confess. I spend tens to hundreds of hours studying cases in which confessions are offered— both disputed and undisputed—with a level of scrutiny that is many times higher magnification than what is done under any experimental protocols or what is expected in social-science academia. My access to complete case files affords me empirical experience in understanding how false confessions happen.

45.     My professional experience includes reviewing, as a matter of regular course, confessions for violent crimes. Many of these are cases in which the guilt of the suspect is not at issue—yet details of the confession are at odds with crime facts. Experience from interviewing, treating, and examining hundreds of violent-crime defendants who have given self-incriminating statements over the years is informative and reflective of expertise.

46.     Another important distinction between forensic-psychiatry practice and experimental psychology and academic social science is accountability for opinions. When expressing opinions in a legal setting, a forensic psychiatrist is subject to deposition and cross examination to aggressively challenge the objectivity and adequacy of one's work. In academia, social scientists teach those with necessarily less sophistication and with a power differential that enshrines their authority. Experimental psychologists secure funding, conduct research, and publish. Said research may or may not have applicability to real-world consequences. But they

compose the culmination of their efforts to be published in journals whose scrutiny is far less exacting than the aims of deposition and cross examination that explore the entirety of a professional's oeuvre, as opposing attorneys have done for years to me.

47.     The aims of publication peer review are to establish whether a study has met qualitative thresholds for sharing with a scientific community. No one's liberty or property is at stake. Deposition and cross examination impose on forensic psychiatry a much greater degree of discipline in the process of informing one's opinion and expressing that opinion for potential testimony.

48.     Because forensic assessment demands greater and evidence-based certainty, I integrate this experience into a familiarity with the literature on interrogation and confession and use it every day. I have been accountable to addressing the state of the field in hearings on confession evidence since 2001. I have been admitted as an expert in matters requiring testimony on disputed confessions on every occasion, and in courts all over America, since 2001. None of the opinions I have given in disputed confession matters in criminal trials have ever led to a reversal of a conviction.

49.     Like the overwhelming majority of clinical and forensic professionals, including the doctors I would choose to examine me, my expertise derives from my experiences first. The world is full of professionals who have extensive experience with a particularly relevant point, yet who never have professional motivation or available time to publish what they know. Yet others learn from them and they have important knowledge to share, because of their experience and the sophistication it imparts, both tangible and intangible. The converse can also be true. There are those with little case experience who are talented researchers. Publication, however, does not necessarily endow anyone with authority and wisdom that overcomes a lack of real-world exposure, whether it is to the range of confession scenarios or conducting actual interrogations of major-crimes suspects who don't wish to communicate.

50.     Forensic psychiatry, because of the rigor demanded of its process, engenders expertise in areas one must examine on multiple occasions. One has to master the nuance of individual differences, apply to legal framework, and absorb and account for the academic and empirical aspects of that issue as they apply to that person.

51.     Training in forensic psychiatry is specific to how the behavioral sciences apply to actual criminal cases, and beholden to ecological validity. Research applicable to disputed confessions for major crimes, for example, can be valid only if it replicates conditions of an interrogating authority and a suspect experiencing the genuine threat of severe consequences. Those unspoken pressures are immense, at the heart of confessions false, forced, embraced, and regretted. A murder interrogation, for example, cannot be simulated. Unless those conditions are recreated, the research is not ecologically valid.

52.     Absent relevant evidence, a forensic scientist would not make conclusory leaps from facsimile that cannot replicate the conditions (custodial interrogation for a major crime) in question.

53.     Forensic psychologists and psychiatrists such as myself work with individuals actually facing punishment. Experimental psychologists work with college students and

community volunteers. Forensic psychiatrists work with reliable and valid evidence and eschew secondhand reports from the media, or information curated to advocacy websites by non-scientist media professionals. Social psychologists see fit to rely upon news-media articles in research articles as academically adequate source materials from which to base scientific merit and conclusions. The importance of validity and reliability is not always emphasized in the social-sciences experts who opine on false confessions.

54.    To appreciate fundamental distinctions between social sciences and psychiatry is not demeaning to social sciences. Rather, it is recognizing things for what they are and not pretending otherwise. Psychiatry, like other medical sciences, concerns itself with precision and validity, and application to the individual, particularly in addressing legal matters. In academic and theory-focused disciplines like the social sciences, professionals make broad generalizations because they are not oriented on the evaluation or resolution of individual situations. The social sciences do not account for the need for specificity and applicability of social science in the court.

55.    Forensic psychiatry practice affords the relevant and vital experience of access to videotape interviewing and interrogation in its entirety, as well as data derived from those in the interrogations themselves. Forensic psychiatry also distinctly affords the expertise in human behavior, dynamics, and decision-making that are not formally a part of law enforcement training. However, forensic psychiatry does not have the hubris to suggest that it knows more about what happens in interrogation as a general proposition than would law enforcement professionals.

56.    Nor would forensic psychiatry propose to deem itself primacy in expertise of any aspect of the criminal justice process simply because one studies it. For example, a practitioner, examiner, or researcher in human trafficking may have great expertise in the area but would not declare primacy of expertise in the area over another discipline or, most particularly, the traffickers themselves. These are likewise byproducts of interdisciplinary respect borne of scientific process. The forensic science community welcomes integration and grows from it; the most obvious expression of this is The American Academy of Forensic Sciences, likely the most prestigious of forensic organizations, which brings together the expanse of forensic sciences to learn from one another. Forensic sciences are primarily concerned with expanding the knowledge base to assist justice rather than whom courts should feel has a better pedigree.

57.    Consistent with this, I am a member of the American Psychology-Law Society, an organization which includes social psychologists as well. Since August, I have contributed heavily to oversight of the organization's proposed updates for a paper being prepared on disputed confessions.

58.    Case investigation is a core component of all forensic sciences. A fundamental responsibility of a forensic psychiatrist is to investigate all case data that pertains to the specific psychiatric-legal question. As such, I have over thirty years of investigative experience of the criminal matters and death investigations on which I have been consulted. I supervise the investigations that are the responsibility of all forensic colleagues, mental health, medical, and otherwise, in The Forensic Panel. I have taught and written about crime scene analysis from a forensic behavioral science psychiatry perspective. I am not, however, a law enforcement

professional and my investigative expertise is limited to that which informs forensic psychiatry questions such as those of disputed confessions.

59. In my capacity as a consulting forensic psychiatrist, I have had the opportunity to extensively study the topic and relevant literature of disputed confessions, including literature from the social sciences, and to assess the state of the science. I have been consulting on cases relating to disputed confessions since approximately 2001. In this initial experience, *State vs. Free*, I was retained in a Frye proceeding for the specific purpose of informing the court about the state of the science of disputed confessions, in the wake of Dr. Saul Kassin offering testimony that Mr. Free's murder confession was "unreliable," and based on Dr. Kassin's "narrative analysis." I was qualified at that time as an expert after lengthy voir dire, and testified in the case. The court subsequently excluded Dr. Kassin's testimony.

60. I have since been retained as a qualified expert on disputed-confession matters in federal and state courts in New York, New Jersey, Pennsylvania, Connecticut, New Hampshire, Tennessee, Florida, Mississippi, Arkansas, Louisiana, Alabama, Indiana, Illinois, Michigan, New Mexico, California, Washington, military court, Court of Appeal for Ontario, Canada, and in Guantanamo Bay tribunals.

61. My experience in disputed-confession assessments, as well as my experience in reviewing confessions that have not been disputed, and my experience in evaluating pretrial defendants have each and collectively contributed to seasoning my understandings of the many aspects of these cases since I was first qualified as an expert on disputed confessions in 2001. I have supplemented those experiences with a review of the ongoing academic literature in disputed confessions, which occasionally but rarely publishes new research that proves ecologically valid to actual casework.

62. Over the course of my career, I have examined well over seventy cases involving disputed confessions. Both criminal prosecutors and defense attorneys have consulted me in this regard, as have civil attorneys.

63. In some of those cases, my singular responsibilities were to evaluate the current state of the science in disputed confessions, accounting for any new developments and understandings. In others, my responsibilities related to facts of the case itself, and how those facts could be interpreted within the limits of scientific understandings of disputed confessions. In all the disputed-confession cases in which I have testified, I have always been qualified and admitted as an expert in disputed confessions. I have never been excluded from testifying as an expert (under *Daubert* or any state-law rule regarding the admission of expert testimony).

64. The cases in which I have been retained as an expert on disputed confessions include a number of cases performed under tremendous public scrutiny and accountability.

65. For example, I was retained by the United States Department of Defense to evaluate the disputed confessions of Omar Khadr, a fifteen-year-old Canadian expatriate al-Qaeda fighter. Khadr was charged with the killing of a U.S. Army medic at an al-Qaeda safe house in Afghanistan. Khadr later asserted that his confessions were coerced by torture and his inherent vulnerabilities as a 15-year-old.

10

66.     In one instance in Louisiana, I was retained by the Jefferson Parish District Attorney to consider the claims of death-row inmate Damon Thibodeaux that his confession was false. Although appeals upheld the verdict, the Jefferson Parish District Attorney asked me to review the available evidence from the perspective of the known science of the field. Informed of my conclusions that supported a finding of a false confession, the District Attorney moved to vacate the confession, and Thibodeaux was released.

67.     In another highly charged case, that of Michelle Martens in Albuquerque, New Mexico, I was retained by prosecutors to examine a confession that had not even drawn motions to exclude. Based on my assessment that her confession might be false because of a range of source materials reviewed, prosecutors dropped murder charges against that defendant, even in the face of public criticism.

68.     The Manhattan District Attorney's Office asked me to review the disputed confession given by Pedro Hernandez, who was charged with the kidnapping and murder of six-year-old Etan Patz nearly 40 years earlier. Even though I had been retained by a defense counsel in another disputed-confession matter opposite the Manhattan District Attorney's Office in which the suspect was subsequently released and charges dropped, the Manhattan DA's Office entrusted me to guide its inquiry and ongoing investigation, and then later, to testify.

69.     Among other cases, I examined the disputed confessions of the West Memphis Three, the Roscetti Four, and the Central Park Five. I have assessed the disputed confessions of the accused mastermind of the bombing of the USS Cole, and the high value al-Qaeda detainees charged in the 9/11 conspiracy.

70.     I am among only a handful of professionals across numerous disciplines who have actually interviewed, at length, several individuals who undisputedly gave false confessions.

71.     In addition, I have been teaching on the topic of disputed confessions since the 2002 Annual Meeting of the American Academy of Forensic Sciences. At that symposium, I specifically taught the methodology of such evaluations with an oft-cited researcher in this area, Dr. Gisli Gudjonsson. Since that occasion, I have lectured in the 16 years that have followed on the science and myths associated with disputed confession claims and associated testimony, findings of my own research in this area, and on recommendations for promoting confession integrity. This includes lectures before the Illinois State Attorney's Appellate Prosecutor, the Arkansas State Prosecutor's Association, the Nebraska Institute of Forensic Sciences, Duquesne University School of Law, the North Carolina Homicide Investigator's Association, as referenced in my CV:

- "Disputed Confessions: Guidelines for Assessment" in February 2003 at the annual meeting of the American Academy of Forensic Sciences;
- "False Confessions: Lessons for Homicide Investigators" in October 2003 for the North Carolina Homicide Investigator's Association;
- "The Science and 'Science' of Confession Expertise" in April 2012 for the Illinois States Attorney's Appellate Prosecutor's Violent Crimes Conference; and
- "Disputed Confessions -Substance, Myth, and Lessons" in June 2018 for the New York City Corporation Counsel.

11

72.     In 2004 and 2005, I received a seed grant by George Washington University to provide funded research on Suspect Vulnerabilities, Interrogation Conditions & Suspect-Interrogator Dynamics that Contribute to False Confessions. Based on data available from cases confirmed as undisputed false confessions, I systematically reviewed over fifty factors identified to have a potential association with false confessions from all of the literature on the topic. This was the first such research of its kind; no one else, before or since, has studied a group of undisputed false confessions in a manner of mining for as many as fifty factors potentially implicated in the literature or in cases in which I had already studied. For this reason, the cause of many false confessions remains undetermined, and broader conclusions about what causes false confessions are limited to speculation that falls well below what I would opine with any scientific certainty.

73.     My research on confirmed false confessions yielded findings which I presented as an invited teacher to peers and other professionals at the above venues and elsewhere. I was limited to the cases I studied only by the unwillingness of certain agencies to make their case files fully available to inform objective analysis. Because I felt the conclusions were based on a smaller case sample of the overall universe of false confessions, and because I felt that were I to examine more confirmed false confessions the prevalence of my findings might change, I chose not to submit the research for publication. My concern was that I would not want publication to lead to irresponsible use of my data in court proceedings. Otherwise, the methodology I utilized is a model that demonstrates that causes of false confession can be studied.

74.     In 2011, I was invited by the New York State Appellate Court Task Force subcommittee on false confessions to testify as to the state of the science of disputed confessions. The task force had been created by the Chief Judge of the State of New York to examine the causes of wrongful convictions and recommend reforms. In this capacity, I testified as to the achievements and continuing limitations of the study of false confessions to date and proposed a number of original solutions to ensure the integrity of justice and protection of the vulnerable, and with a particular focus on juveniles, from confessing falsely.

75.     More recently, I worked with the Department of Justice Senior Advisor on Forensic Science Policy, Ted Hunt, on forensic-science reform as it relates to disputed confessions.

76.     I am a Fellow in the American Academy of Forensic Sciences and have served on editorial boards of numerous publications. My academic activities specifically engage a variety of areas of upgrading forensic mental-health practice. I collaborated on legislation that passed unanimously in the Illinois legislature in 2015 to promote videotaping of mental-health competency examinations, and similar but more expanded legislation in Colorado.

77.     In 2013, I was invited by the United States Congress Subcommittee on Energy and Commerce to contribute to mental-health reform legislation. In the course of events, I became a central contributor to the most important mental-health legislation in recent decades, which passed in 2015 through the United States Congress as the 21st Century Cures Act and was signed into law by then President Obama. I have continued to contribute to mental health and justice advocacy. However, my opinions in forensic cases have no connection to the areas of

policy upon which I advocate. Were that to be the case, I would have to acknowledge such a bias in my testimony or research publication.

78.     In the above-captioned case, I was asked by defense attorneys to review William Amor's confession and to review and evaluate the opinions of Plaintiff's false confession expert, Dr. Richard Leo. I employed a clear methodology for my consideration of ten questions. Specifically, I (1) reviewed the antecedent history leading to Mr. Amor's confession, (2) reviewed antecedent data on Mr. Amor's vulnerabilities and strengths at the time of his interrogation, (3) studied the context of how Mr. Amor came to be a focus of investigation and the police investigation, including his confession, (4) reviewed Dr. Leo's report and source materials, and (5) considered the available literature on the areas cited by Dr. Leo to evaluate his opinions in light of the literature relied upon by fellow behavioral scientists (psychologists and psychiatrists). In conducting this review, I arrived at opinions for which the data I reviewed afforded me reasonable scientific certainty. I prepared a report of my findings, which presented my opinions on ten questions that derive from Dr. Leo's report and the bases thereon.

79.     For the report, I formulated questions which approximated Dr. Leo's opinions for which I had adequate data. The principal focus was Dr. Leo's methodology and the underlying basis for his opinions in this matter. In some instances, my opinion was an analysis of the available data and interpretation of behavioral evidence based on my training, experience, and familiarity of the pertinent literature cited by Dr. Leo and myself, and other literature with which I am fluent. In other instances, I restricted my opinion to responding to Dr. Leo's categorical or broad assertions to introduce other possibilities or evidence he was not accounting for.

80.     In particular, I relied upon the published literature about confirmed false confessions and their antecedents, my own extensive experience in reviewing disputed confession cases, and extensive experience in interviewing defendants who have confessed, and interviewing police officers about their investigations of suspects whose cases I am evaluating. I relied upon thirty years of case experience in which I have participated from arrest through trial, acquittal, conviction, hung jury, retrial, successful appeal and unsuccessful appeal.

81.     I also relied upon thirty years of experience of interviewing suspects about why they said what they said in interrogation, how they came to move from denial of charges to admissions or confessions (which are two different concepts), and the same experience of interviewing police officers whose investigations in cases focus on different elements of a case but parallel my own forensic psychiatric focus. This includes thirty years of reviewing the history and course of hundreds of confessions that are not disputed, their qualities, and the diversity of ways that suspects and police relate within that dynamic. My own case experience includes actual false confessions, which I drew from at a granular level, and in the close study of other confirmed and undisputed false confessions, including those in which scripting occurred. My professional experience also includes clinical training in the assessment and treatment of anxiety and depression and embedding that in years of reviewing the antecedents to confession as a clinician and forensic examiner.

82.     Moreover, I relied on my ongoing awareness of the research on confessions and interrogation, and in particular, awareness of the nature of research done and its findings. I also relied on extensive experience in research methodology, evaluating the research methodology of others, and over twenty years of formulating research methodology for my own studies with

particular sensitivity to ensuring the ethical application of my findings to litigation. I relied upon my familiarity with the Gudjonsson Suggestibility Scales, experience in administering the scales, and the responsible application of its data.

83. Furthermore, I relied upon my own research experience, on which I was invited to lecture at national forensic science meetings, on antecedents to false confession that I had identified, and myths and facts on the topic that exist in the current literature. This includes my familiarity with the documentation of the Reid interrogation method and how that training is misrepresented in peer reviewed social science literature. It also includes my fluency in the research on minimization which is cited to falsely claim that minimization has been demonstrated to cause false confessions.

84. I relied upon an extensive array of source materials on William Amor and this case in presenting my opinions on matters of behavioral science expertise. This included case transcripts, interrogation records, official records, documented interviews, and others' observations of Mr. Amor's actions and the things he said, when and how he said them. I opined only on areas for which adequate historical and contextual evidence was available and did not disregard evidence in doing so.

85. When presenting my opinions, I provided bases that derived from the evidence of the case in keeping with established methodologies of all forensic sciences, including psychiatry and psychology in the forensic context. In presenting my conclusions, I cited to records from the case, pertinent literature in the field and explained when the studies Dr. Leo references do not demonstrate what he purports. The articles to which I cited do present the data and conclusions as I represent them to be.

86. I also participated in a deposition relating to my findings and how I expressed them, what I did and did not feel I have sufficient evidence or expertise to address, literature of interest as queried by the plaintiff, and provided specific evidence underlying my analysis and the basis for how that analysis presented in my report.

Under penalties as provided by law pursuant to 28 U.S.C.A § 1746, the undersigned certifies that the statements set forth in this instrument are true and correct.

FURTHER AFFIANT SAYETH NOT.

Date: _____ June 7, 2024 _____          _____

                                                           Dr. Michael Welner

*Amor v. Cross, et al.*
Case No. 18-CV-2523
Our File No. 18-4078

# EXHIBIT A

# MICHAEL WELNER, M.D.

**The Forensic Panel**
515 N. Flagler Dr. Suite 350 West
Palm Beach, FL 33401
Tel: (212) 535-9286
Fax: (212) 535-3259
Email: drwelner@forensicpanel.com

## BOARD CERTIFICATION

| | |
|---|---:|
| *Diplomate*, Psychiatry, American Board of Psychiatry and Neurology | 1993 |
| *Diplomate*, Forensic Psychiatry, American Board of Psychiatry and Neurology | 1996 |
|     Recertification | 2006 |
|     Recertification | 2017 |
| *Diplomate*, Disaster Medicine, American Board of Disaster Medicine | 2007 |
| *Certified*, Advanced Clinical Psychopharmacology, American Society of Clinical Psychopharmacology | 2003 |
|     Recertification | 2007 |

## EXPERIENCE

**The Forensic Panel, New York, NY**                                           1998-Present
    *Chairman*
- Peer-reviewed forensic consultation practice
- Forensic case consultation, establishing quality and ethical standards in forensic analysis and report writing and trial preparation, peer-review of colleagues
- Internship Supervisor - New York University, Harvard University, Columbia University, Cornell University, John Jay College, University of Florida, George Washington University, American U. of Rome, Freie University (Berlin), others

**Mount Sinai School of Medicine**                                           2016 – present
    *Clinical Professor of Psychiatry*
      Supervise elective for Beth Israel Medical Center PGY-4
      Lectures on forensic psychiatry to PGY 3-4
      Research supervision of Ph.D. candidate psychology students

**New York State Supreme Court**                                           1995-present
- Panel of "Highly Qualified Independent Psychiatrists"

**New York University School of Medicine, Department of Psychiatry, New York, NY**      1995-2010
- Teach psychopharmacology, forensic psychiatry
- Guest discussant for case conferences at affiliated hospitals

**Lenox Hill Hospital, New York, NY**                                           1995-2001
    *Attending Physician, Consultation Psychiatry Service*
- Consultation to medical units on psychiatric care and forensic psychiatric issues
    *Executive Committee, Department of Psychiatry* (1997-1999)

**Private Practice, New York, NY**                                           1992-Present
- Pharmacologic and psychotherapeutic treatment of adults
- Civil and criminal forensic psychiatry

*Michael Welner, M.D.*
**The Forensic Panel**

Page 2 of 27

## EXPERIENCE CONTINUED…

ABC News, New York, NY                                                                                         2007, 2010 – 11
       ♦   Commentator to GMA, 20/20, World News and to ABCNews.com
       ♦   Counsel to Law and Justice Unit on forensic sciences coverage

Welner Enabled, New York, NY                                                                                         2003-06
     *President*
       ♦   Medical examination products for disabled and infirm

The Forensic Echo, New York, NY                                                                                   1996-2000
       ♦   *Publisher, Editor-In-Chief* (monthly journal of law, psychiatry and public policy)
       ♦   Legal case review & commentary, writing news stories, medical editing

New York Medical College, New York, NY                                                                     1997-1999
     *Adjunct Assistant Professor of Psychiatry*
       ♦   Consulting on the building of forensic program

Bellevue Hospital, New York, NY                                                                                     1992-97
     *Attending Physician, Forensic Psychiatry Service* (1992-95)
       ♦   Inpatient care of inmates in the New York City and State correctional systems
       ♦   Psychiatric consultation to medical corrections units
     Coordinator, Competency Evaluation Services (1993-94)
       ♦   Independent examination & testimony in hospital medication grievance hearings
       ♦   Evaluations of defendants' fitness to proceed to trial for Manhattan, Brooklyn,  and
           Bronx courts in particularly complex cases

New York Comprehensive Care Center, New York, NY                                                 1992-94
     *Clinical Director, Psychiatric Evaluation and Treatment Services*
       ♦   Evaluation and treatment of patients presenting in criminal and civil (including tort,
           workers' compensation, and no fault) proceedings

Booth Memorial Medical Center, Queens, NY                                                             1991-92
       ♦   Emergency and consultation psychiatry, crisis intervention
       ♦   Monitoring of medications for outpatients

Regent Hospital, New York, NY                                                                                     1991-92
       ♦   Adolescent psychiatry
       ♦   Crisis intervention and intake

## FUNDED RESEARCH

Standardizing Forensic-Legal Definitions of Depraved Crimes. MHS, Inc. Principal Investigator   2001 - 2005

Suspect Vulnerabilities, Interrogation Conditions & Suspect-Interrogator Dynamics that          2004 - 2005
Contribute to False Confessions. Grant from George Washington University. Co-Investigator

*Michael Welner, M.D.*
The Forensic Panel

Page 3 of 27

## PROFESSIONAL HONORS

| | |
|---|---|
| Consultant, H.R. 3717 & 2646, Helping Families in Mental Health Crisis Act, Rep. Tim Murphy | 2013- 2017 |
| Contributor, Virginia & Colorado, videotaping assessment legislation | 2015-2017 |
| Annual Dinner Awardee, Hillel Academy of Pittsburgh | 2016 |
| Tikkun Olam Award, Haiti Jewish Refugee Legacy Project | 2014 |
| Contributor, Illinois State Senate, juvenile competency assessment legislation | 2013-2014 |
| *Fellow,* American Academy of Forensic Sciences | 2010 |
| *Editorial Board,* Journal of Forensic & Legal Medicine | 2012- present |
| *Editorial Board,* International Journal of Criminal and Community Justice | 2013- present |
| *Vice Chairman, Board of Directors,* Nebraska Institute of Forensic Sciences | 2007- present |
| *Adjunct Professor,* Lagos State University School of Medicine, Lagos Nigeria | 2007- present |
| *Editorial Board,* Journal of Practicing Forensic Psychology | 1998-present |
| *Advisory Board,* Duquesne University School of Law Institute of Forensic Sciences | 1998-2012 |
| *Editorial Board,* Forensic Science, Medicine, & Pathology | 2004-2012 |
| *Visiting Professor,* Johnson & Wales University, Miami, FL | 2011 |
| *Board Member, Disaster Medicine,* American Association of Physician Specialists | 2005-2012 |
| *Board of Directors,* The Annapolis Center for Science-Based Public Policy | 2004-2008 |
| *Working Group, Serial Murder,* Federal Bureau of Investigation | 2004-2006 |
| *Editorial Board of Advisors,* Encyclopedia of Forensic & Legal Medicine, Academic Press | 2002-2006 |
| *Contributor,* Legislation on Capital Eligibility & Retardation States of Pennsylvania, Texas | 2002-2004 |
| *National Advisory Board,* Albany State U. Program in Forensic Sciences | 2002-2004 |
| *Associate Editor,* Practical Reviews in Forensic Medicine and Sciences, Educational Reviews Inc. | 1998-2004 |
| *Board of Directors,* Association of Law & Medical Investigative Experts | 2000-2002 |
| *Physician Advisory Board,* Professional Solutions | 1999-2001 |
| *Fellow,* American College of Forensic Examiners | 1998 - 2004 |
| Excellence in Medical Student Education Award, American Psychiatric Association | 1997 |

## PUBLICATIONS

"Fetal abduction by maternal evisceration (FAMAE): A forensic psychiatric syndrome." Welner M, Burgess A, O Malley K In: Burgason, K. A., & DeLisi, M. (eds.). (2023). Handbook of homicide studies. New York, NY: Routledge.

"Forensic Assessment of Criminal Maturity in Juvenile Homicide Offenders in the United States." Welner M, DeLisi M, Knous-Westfall, H, Salsberg D, Janusewski T *Forensic Science International: Mind & Law* 4 Dec 2022  DOI: 10.1016/j.fsiml.2022.100112

"Distinguishing Everyday Evil: Toward a Clinical Inventory of Extreme and Outrageous Behaviors, Action, and Attitudes." Welner M, DeLisi M, Saxena A, Tramontin M, Burgess A. *Journal of Psychiatric Research* 154 Oct 2022 181-189

"Homicide and Criminal Maturity of Juvenile Offenders: A Critical Review." Welner M, Knous-Westfall, H, DeLisi M, Meltzer C, Seward J *American Journal of Criminal Justice* Aug 2022 DOI: 10.1007/s12103-022-09694-5

"The Depravity Standard and individualized assessment: A case study modality for Miller resentencing cases" Welner M, Delisi M. *Jl Forensic and Legal Medicine* 90 Aug 2022 102375

*Michael Welner, M.D.*
**The Forensic Panel**

Page 4 of 27

## PUBLICATIONS CONTINUED…

"The Depravity Standard for Violent Crimes" Welner M, O'Malley, K. Y., Gonidakis, J., & Blair, S. *International Journal of Offender Therapy and Comparative Criminology* Dec 2021 p 1-24 DOI: 10.1177/0306624X211058959

"Fetal abduction by maternal evisceration: A planned homicide" Welner M, Burgess, O'Malley K A *Forensic Sciences International* December 2021 329(4):111057 DOI:10.1016/j.forsciint.2021.111057

"Incorrigibility and the Juvenile Homicide Offender: An Ecologically Valid Integrative Review" Welner M, Delisi M, Baglivio M, Guilmette T, Knous-Westfall H *Youth Violence and Juvenile Justice* (2021) DOI: 10.1177/15412040211030980

"Psychiatric and legal considerations in cases of fetal abduction by maternal evisceration" Welner M, O'Malley K, Burgess A *Journal of Forensic Sciences* Sep 2021 66(5) 1805-1817

"Forensic Challenges in Medical Settings for Physicians and Neuropsychologists" Marcopulos B, Welner M, Campbell K In: Sanders K Physician's Field Guide to Neuropsychology: Collaboration Through Case Example Springer 2019, pp 495-506

"The Depravity Standard III: Validating an Evidence-based Guide" Welner M, O' Malley K, Gonidakis J, Saxena A, Stewart J *Journal of Criminal Justice* March-April 2018 55C (2018) pp. 12-24

"The Depravity Standard II: Developing a Measure of the Worst of Crimes" Welner M, O' Malley K, Gonidakis J, Saxena A, Burnes J *Journal of Criminal Justice* March-April 2018 55C (2018) pp. 25-34

"The Depravity Standard I: An Introduction" Welner M, O' Malley K, Gonidakis J, Tellalian R, *Journal of Criminal Justice* 55C March-April 2018 pp. 1-11

"Apportioning Culpability in Multiple Perpetrator Acts of Terrorism" O' Malley K, Seward J, Welner M, *Arab Journal of Forensic Sciences & Forensic Medicine* (2017) 1(6)722-729

"Drug-Facilitated Sex Assault" Welner M, Welner B In: Hazelwood R, Burgess A Practical Aspects of Rape Investigation; A Multidisciplinary Approach 2nd Ed. Taylor & Francis 2016 pp 445-462

"Forensic Psychiatry and Forensic Psychology: Mental Handicap and Learning Disability" (book chapter) Welner, M. In: Payne-James Encyclopedia of Forensic & Legal Medicine, 2nd Edition Vol 2 p 634-658 Oxford: Elsevier 2015

"Gaps in Crisis Mental Health: Suicide and Homicide-Suicides" Caretta C, Burgess A, Welner M *European Psychiatry* 15(30) pp 175-179 2015

"Peer-Reviewed Forensic Consultation in Practice: Multidisciplinary Oversight in Common Expertise" Welner M, Davey E, Bernstein A *Journal of Forensic Sciences* (2014) doi: 10.1111/1556-4029.12470

"Seeking a Better, Fairer Method of Determining Parental Rights" Robinson D, Welner M *Chicago Daily Law Bulletin* December 26, 2013

"Disaster Psychiatry" Welner M, Page J (book chapter) In: Disaster Preparedness for Health Care Facilities Kollek D (ed) © 2013 McGraw-Hill Europe

*Michael Welner, M.D.*
**The Forensic Panel**

## PUBLICATIONS CONTINUED…

"Classifying Crimes by Severity: From Aggravators to Depravity" Welner M. In: Douglass J, Ressler R, Burgess A <u>Crime Classification Manual</u>. 3rd Ed. Jossey-Bass 2013 pp 91-109

"Three Steps That Can Upgrade Psychiatric Evidence" Welner M, Robinson D *National Law Journal* January 28, 2013

"Applying Forensic Anthropological Data in Homicide Investigation to The Depravity Standard" Reinhard K, Welner M, Okoye M,, Marotta M, Plank G, Anderson B, Mastellon T *Journal of Forensic and Legal Medicine* 20 (1) p 27-39 January 2013

"Judges can Follow Certain Standards so Evidence Doesn't Mislead" Robinson D, Welner M *Chicago Daily Law Bulletin* October 31, 2012

"Courts Need to Demand Higher Standards from Psychiatric Evidence" Robinson D, Welner M *Chicago Daily Law Bulletin* October 24, 2012

"Courts Face Challenges with Forensic Psychiatry, Psychology Evidence" Robinson D, Welner M *Chicago Daily Law Bulletin* October 17, 2012

"Peer-Reviewed Forensic Consultation: Safeguarding Expert Testimony and Protecting the Uninformed Court" Welner M., Mastellon T, Stewart J, Weinert B, Stratton J. *Jl Forensic Psychology Practice*. 2012 12: pp 1-34

"Pregame analysis of pending NFL litigation" Greiffenstein, M.F., Spector, J., & Welner, M. Law360.com March 2012

"Mob Violence: A Forensic Psychiatric Perspective on Justice and Prevention" Welner M *Empire State Prosecutor* Fall 2011 pp 12-16

"Defining Evil Through the Depravity Standard and the Clinicians Inventory for the Everyday Extreme and Outrageous (CIEEO)" Welner M., Mastellon T. *Jl Social Sciences*. 1(8) 2011 pp 41-49

"Psychotropic Medications and Crime." (book chapter) Welner M., Lubit R, & Stewart J. In: Mozayani A, Raymon L (ed) Handbook of Drug Interactions: A Clinical and Forensic Guide. Humana London. 2011 pp 791-807

"Antipsychotics Drugs and Interactions: Implications for Criminal and Civil Forensics." (book chapter) Welner, M. Opler L. In: Mozayani A, Raymon L (ed) Handbook of Drug Interactions: A Clinical and Forensic Guide. Humana London. 2011 pp 229-259

"The Depravity Standard: A Call for Large Scale Homicide Research" Welner M, Mastellon T *Empire State Prosecutor* Fall 2010 pp 14-17

"Educator Sexual Abuse: Two Case Reports." Burgess A, Welner M, Willis D *Journal of Child Sexual Abuse* 19: 4, 2010 387-402

"The Justice and Therapeutic Promise of Science-Based Research on Criminal Evil." Welner, M. *Jl Am Acad of Psych and the Law* 37(4) 2010 pp 442 - 449

*Michael Welner, M.D.*
**The Forensic Panel**

Page 6 of 27

<u>**PUBLICATIONS CONTINUED…**</u>

"Forensic Psychiatry." (book chapter) Welner, M. In: Wecht C., (ed) Forensic Sciences. Matthew Bender. New York. 2009.

"Recovered Memory." (book chapter) Greiffenstein, M; Seward, J; Welner, M. In: Wecht C., (ed) Forensic Sciences. Matthew Bender. New York. 2009

"Drug-Facilitated Sex Assault" Welner M Welner B In: Hazelwood R Burgess A Practical Aspects of Rape Investigation; A Multidisciplinary Approach Taylor & Francis 2008 pp 445-462

"Neonaticide "Classifying Crimes by Severity: From Aggravators to Depravity" Welner M. In: Douglass J, Ressler R, Burgess A FBI Crime Classification Manual. 2nd Ed. Jossey-Bass 2007 pp 55-72

"Welner M. In: Douglass J, Ressler R, Burgess A FBI Crime Classification Manual. Jossey-Bass 2007 pp 164-169

"Religion-Inspired Homicide" Welner M. In: Douglass J, Ressler R, Burgess A FBI Crime Classification Manual. Jossey-Bass 2007 pp 195-200

"Forensic Psychiatry and Psychology." (book chapter) Welner, M, Ramsland K. In: Wecht C, Rago J. Foundations in Forensic Science and the Law CRC Press London. 2006 99 475-493

"Neuropsychological Testing: Ethical Applications for Law and Public Policy" Seward, J Welner M 2006 *Annapolis Center for Science and Public Policy*

"Mental Handicap and Learning Disability" (book chapter) Welner, M. In: Encyclopedia of Forensic & Legal Medicine, Academic Press. London. 2005 p 388-405

"The Depravity Standard: A Future Role of Forensic and Behavioral Evidence Analysis" Welner M. In: Petherick, W. The Science of Criminal Profiling, Barnes & Noble. London. 2005 pp 150-152

"The Importance of Deciphering Motives, & How they Differ" Welner, M. Empire State Prosecutor. 2005 2(3) pp24-26

"Child Sex Abuse Accommodation Syndrome" Welner, M. Empire State Prosecutor. 2004 1(3)

"Psychopathy, Media, and the Psychology at the Root of Terrorism" (book chapter) Welner, M. In: Biological and Chemical Warfare Lawyers and Judges Publishing Tucson Az. 2004 pp 385-421

"Motives in Crime." (book chapter) Welner, M. In: Dominick J et al. Crime Scene Investigation Elwin Street London. 2004 pp 126-135

"Competency to Waive *Miranda* & the Grisso Scales" Welner, M. Empire State Prosecutor 2004 1(2) pp 30-32

"Legal Relevance, Psychiatry Realities, and the Methodology for Standardized Distinction of "Heinous" and "Evil" Crimes" Welner M. Jl American Academy of Psychiatry & the Law. 31(4) 2003.

"Hidden Diagnosis and Misleading Testimony in Domestic Violence: How Courts Get Shortchanged" Welner M. Pace Law Review Fall 2003 24(1) 193-209

*Michael Welner, M.D.*
**The Forensic Panel**

Page 7 of 27

<u>**PUBLICATIONS CONTINUED…**</u>

"Confession Evidence & the Gudjonsson Scales" Welner, M. Empire State Prosecutor 2003 1(1) pp 19, 27-29

"Psychotropic Medications and Crime." (book chapter) Welner, M. In: Mozayani A, Raymon L (ed)
      Handbook of Drug Interactions: A Clinical and Forensic Guide. Haworth Press. London. 2003. pp
      631-645.

Case Commentary: Johnson v. Norris. (mania & effective counsel) 207 F3d. 515 Welner, M. The Forensic
      Panel Letter. www.forensicpanel.com. November 27, 2000.

"The Lost Generation." (terrorism, racism & psychiatry) Welner, M. 4(10) The Forensic Panel Letter.
      www.forensicpanel.com. October 29, 2000.

Case Commentary: Mendenhall v. State. (hypoglycemia & criminal responsibility), 43 F.Sup 2d 1. Welner, M.
      4(10) The Forensic Panel Letter. www.forensicpanel.com. October 26, 2000.

Science Review: Suicides vs. Homicides a Tougher Call in Sharp Force Death. Welner, M. 4(10) The Forensic
      Panel Letter. www.forensicpanel.com. October 16, 2000.

Case Commentary: Guo v. Maricopa Cty. (ADA and physicians), 992 P2d 11; Welner, M. 4(9) The Forensic
      Panel Letter. www.forensicpanel.com. October 4, 2000.

Case Commentary: Van Tran v. State (competency for execution) 6 S.W.3d 257 Welner, M. 4(9) The Forensic
      Panel Letter. www.forensicpanel.com. September 27, 2000.

"Protecting Privacy at Workplace Risk" (industrial psychopathy) Welner, M.  4(9) The Forensic Panel Letter.
      www.forensicpanel.com. Sept 21, 2000.

Case Commentary: In re Matthew A.B. (juvenile sex offender designation) 605 N.W.2d 598. Welner, M. 4(8)
      The Forensic Panel Letter. www.forensicpanel.com. July 2000.

"Who's the Boss." (judicial discretion) Welner, M. 4(8) The Forensic Panel Letter. www.forensicpanel.com.
      July 2000.

Case Commentary: U.S. v. Motto (computer sex addiction) 70 F. Supp 2d 570. Sullivan v. Riv. Vall. (fitness
      for duty eval ethics) 197 F. 3d 804 Welner, M. 4(7) The Forensic Panel Letter.
      www.forensicpanel.com. June 2000.

"No Toys This Christmas" (forensic technology) Welner, M. 4(7) The Forensic Panel Letter.
      www.forensicpanel.com. June 2000.

Case Commentary: Mercer v. Comm. (substance use, antisocial personality, and legal insanity), 523 S.E.2d
      213; U.S. v. Pirro & Pirro (white collar crime) 76 F. Supp 2d. 478 Welner, M. 4(6) The Forensic Panel
      Letter. www.forensicpanel.com. May 2000.

"Chasing Elians." (enforcing parental rights) Welner, M. 4(6) The Forensic Panel Letter.
      www.forensicpanel.com. May 2000.

*Michael Welner, M.D.*
**The Forensic Panel**

Page 8 of 27

**PUBLICATIONS CONTINUED...**

Case Commentary: Comm. v. Conaghan. (battered woman synd.), 720 N.E. 2d 48. Baer v. Baer (disability prognosis & alimony) 738 A.2d 923 Welner, M. 4(5) The Forensic Panel Letter. www.forensicpanel.com. April 2000.

"Suicide by Watch" (corrections conditions) Welner, M. 4(5) The Forensic Panel Letter. www.forensicpanel.com April 2000.

Case Commentary: People v. Coulter (Munchhausen-by-Proxy), 697 N.Y.S.2d 498. State v. Gardner (involuntary intoxication) 601 NW.2d 670. U.S. v. Damon 191 F 3d 561 (depression and competency) Welner, M. 4(4) The Forensic Panel Letter. March 2000.

"Parenthood = Criminal Responsibility?" (homicide by children) Welner, M. 4(4) The Forensic Panel Letter. www.forensicpanel.com. March 2000.

Case Commentary: State v. Tenerelli (religion & victimology), 598 N.W.2d 668; DeRosa and Thomas v. Nevada (confrontation clause & experts) 985 P.2d 157. People v. Butler 88. Cal.Rptr.2d 210 Welner, M. 4(3) The Forensic Panel Letter. www.forensicpanel.com. February 2000.

"Dawn of the Techno Defense" (technology's impact on brain & behavior) Welner, M. 4(3) The Forensic Panel Letter.  February 2000

Case Commentary: People v. Miller (homosexual panic), 733 A.2d 1286 Welner, M. 4(2) The Forensic Panel Letter. www.forensicpanel.com. January 2000.

"Risk and the Power of Manson" (power, charisma, and dangerousness) Welner, M. 4(2) The Forensic Panel Letter. www.forensicpanel.com January 2000.

Case Commentary: Welner, M. State v. Voorhees (involuntary intoxication), 596 N.W.2d 241 Welner, M. 4(1) The Forensic Panel Letter. December 1999.

"If Only" (biases and age groups in disposition) Welner, M. 4(1) The Forensic Panel Letter.  December 1999.

Case Commentary: Welner, M. State v. Calek (competency of chronic schizophrenics), 48 F. Supp 2d 919, 3(12) The Forensic Panel Letter. November 1999.

"Gag Odor" (psychiatry's relationship with the press) Welner, M. 3(12) The Forensic Panel Letter. 1 November 1999.

"A Stab at Insanity" (interpreting mental state through knife wound patterns) Welner, M. 3(11) The Forensic Panel Letter. 16 October 1999.

"Community Service: Alternative Only?" (sentencing and corrections) Welner, M. 3(11) The Forensic Panel Letter. 1 October 1999.

Case Commentary: Welner, M. State v. Rudisill (competency and head injury), 43 F. Supp 2d 1, 3(11) The Forensic Panel Letter. November 1999.

"Call Me When You Do Remember" (forensic interviewing and credibility) Welner, M. 3(10) The Forensic Panel Letter. 1 September 1999.

*Michael Welner, M.D.*
**The Forensic Panel**

Page 9 of 27

**PUBLICATIONS CONTINUED…**

Science Review: Welner, M. Criminal Victimization of Persons With Severe Mental Illness, 3(9) The Forensic
    Panel Letter. August 1999.

"I Should'a Had a V-8" (alcohol and crime) Welner, M. 3(9) The Forensic Panel Letter. 1 August 1999.

Case Commentary: Welner, M. Maine v. Pouillot (fight or flight in violent crime), 726 A. 2d 210; Campbell v.
    Sikes (response to prisoner agitation), 169 F3d 1353, 3(8) The Forensic Echo. July 1999.

"Sue Me" (mental health treatment of the chronically ill and the incarcerated) Welner, M. 3(8) The Forensic
    Echo. 1 July 1999.

Case Commentary: Welner, M. Com. v. Crawford (battered woman's confession), 706 N.E. 2d 289, 3(7) The
    Forensic Echo. June 1999.

"Testing For The Right Stuff" (psychological testing of political candidates) Welner, M. 3(7) The Forensic
    Echo. 1 June 1999.

Case Commentary: Welner, M. State v. Stevens (death investigation), 970 P.2D. 215 3(6) The Forensic Echo.
    May 1999.

"Voyeurs Watching Sex Offenders" (sex-offender registration) Welner, M. 3(6) The Forensic Echo. 1 May
    1999.

Science Review: Welner, M. Criminal Victimization of Persons With Severe Mental Illness, 3(6) The Forensic
    Echo. April 1999.

Case Commentary: Welner, M. In the Interest of J.B. (juvenile disposition), 507 SE 2d 874, 3(5) The Forensic
    Echo. April 1999.

"Analyze This? You Analyze This!" (treating intimidating patients) Welner, M. 3(5) The Forensic Echo. 1
    April 1999.

Case Commentary: Welner, M. Ford v. State of Arkansas (premeditation and childhood history), 976 SW 2d
    915 3(4) The Forensic Echo. Mar 1999.

"Violence and Mental Illness: Quandary or Zealotry?" (homicides by the psychotic) Welner, M. 3(4) The
    Forensic Echo. 1 March 1999.

Case Commentary: Welner, M. State v. Tenace, (attorney-client communication) 700 N.E.2d 899 3(3) The
    Forensic Echo. February 1999.

"Where Should Grey Wolves Roam?" (geriatric crime) Welner, M.  3(3) The Forensic Echo. 1 February 1999.

Case Commentary: Welner, M. State v. Israel, (examination of co-conspirators) 963 P.2d 897 3(2) The
    Forensic Echo. January 1999.

"The Dog Ate My Integrity" (expert disclosure) Welner, M.  3(2) The Forensic Echo. 1 January 1999.

*Michael Welner, M.D.*
**The Forensic Panel**

Page 10 of 27

<u>**PUBLICATIONS CONTINUED…**</u>

Case Commentary: Welner, M. State v. Vannier, (psychiatric autopsy) 714 So2d 470 3(1) The Forensic Echo. December 1998.

"Calming the Enemy of the State" (law enforcement psychiatry collaboration) Welner, M. 3(1) The Forensic Echo. 1 December 1998.

Case Commentary: Welner, M. State v. Borman, (personality and diminished capacity) 956 P2d 1325 2(11) The Forensic Echo. October 1998.

"A Good Smack" (child allegations of abuse) Welner, M. 2(11) The Forensic Echo. 1 October 1998.

Case Commentary: Welner, M. Reed v. State, (transient neurological conditions) 693 NE2d 988 2(10) The Forensic Echo. September 1998.

"Rethinking Criminal Motherhood" (female psychopathy) Welner, M. 2(10) The Forensic Echo. 1 September 1998.

Case Commentary: Welner, M. Castro v. Ward, (future rehabilitation of capital offender) 138 F.3d 810; State v. Mitts (peculiar crime) 690 N.E. 2d 522;  2(9) The Forensic Echo. August 1998.

"Till Death Do We Part" (families victims of mentally ill) Welner, M. 2(9) The Forensic Echo. 1 August 1998.

Case Commentary: Welner, M. Genius v. State, (voodoo and violence) 986 F.Supp 668; Stewart v. Price (listing expertise) 704 So. 2d 594; 2(8) The Forensic Echo. July 1998.

"Disarming Junior" (child gun violence) Welner, M. 2(8) The Forensic Echo. 1 July 1998.

Case Commentary: Welner, M. Cobo v. Raba, (AIDS, Depression, & promiscuity) 495 SE 2d 362; US v. Janusz (non-psychotic defects of reason) 986 F Supp 328; 2(7) The Forensic Echo. June 1998.

Gatekeepers For Guardianship" Welner, M. 2(7) The Forensic Echo. 3 June 1998.

"Hospitals After Hendricks" (sex offender commitment) Grinfeld, M., Welner, M. 2(5) The Forensic Echo. 4-8 April 1998.

Case Commentary: Welner, M. Archer v. State, (personality and mitigation) 689 NE 2d 678; Turner v. Jordan (duty to protect in hospital violence) 957 SW 2d 815;  2(6) The Forensic Echo. May 1998.

"Defining Evil: A Depravity Scale for Today's Courts" Welner, M. 2(6) The Forensic Echo. 4-12 May 1998.

"Hire My Patient" (psychiatric vocational rehabilitation) Welner, M. 2(6) The Forensic Echo. 3 May 1998.

Case Commentary: Welner, M. Bronstein v. Supreme Ct. of Colorado, (attorney fitness)  981 F.Supp 1361; Kent v. State (behavior and competency)  702 So. 2d 265; 2(5) The Forensic Echo. April 1998.

"Access All Areas" (due diligence in employment evaluations) Welner, M. 2(5) The Forensic Echo. 3 April 1998.

*Michael Welner, M.D.*
The Forensic Panel

## PUBLICATIONS CONTINUED…

Case Commentary: Welner, M. People v. Lopez, (Mothers of criminals) 946 P.2d 478; Hobart v. Shin, (Patient contributory negligence) 686 NE.2d 617; Avila v. State (Crime as reflex) 954 SW 2d 830; 2(4) The Forensic Echo. March 1998.

"American Bomber" (criminal profile) Welner, M., Auch, J. 2(4) The Forensic Echo. 4-13 March 1998.

"The Treatment Channel" (inpatient hospital milieu) Welner, M. 2(4) The Forensic Echo. 3 March 1998.

Case Commentary: Welner, M. Beltran v. State, (false confession) 700 So.2d 132; Canipe v. Commonwealth of Va., (road rage) 491 SE.2d 747; Talarico v. Dunlap, (medication induced violence) 685 NE 2d 325; 2(3) The Forensic Echo. February 1998.

"The Seasoning of Medication Defenses" (Psychotropic medication influencing violence) Grinfeld, M., Welner, M. 2(3) The Forensic Echo. 4-10 February 1998.

"Fallen" (political pressures and psychiatric evaluations) Welner, M. 2(3) The Forensic Echo. 3 February 1998.

Case Commentary: Welner, M. Waters v. Rosenbloom, (Valium morbidity) 490 SE.2d 73; Lawrence v. State (cold, cruel, and calculating aggravator) 698 So.2d 1219; People v. Avellanet (arsonist criminal profile) 662 NYS 2d 345; 2(2) The Forensic Echo. January 1998.

"Acquittees Trapped By The Insanity Defense" Welner, M, LaVacca, J.; 2(2) The Forensic Echo. 4-8 January 1998.

"Third World Court" (workers compensation) Welner, M. 2(2) The Forensic Echo. 3 January 1998.

Case Commentary: Welner, M. Brancaccio v. State, (medication-induced violence)698 So.2d 597; Shannon v. Law-Yone (doctor-patient communication) 950 SW 2d 429; Commonwealth v. Erney unconsciousness and sex consent) 698 A.2d 56; 2(1) The Forensic Echo. December 1997.

"Hired Gun: Does Money Or Bias Taint Your Expert?" Welner, M, Delfs, L.; 2(1) The Forensic Echo. 4-9 December 1997.

"Unabomber's Next Victim-Psychiatry" (professional dilemmas of the case) Welner, M. 2(1) The Forensic Echo. 3 December 1997.

Case Commentary: Welner, M. State v. Holden, 488 SE 2d 514; Rankin v. State of Arkansas (IQ and mitigation) 948 SW 2d 397; People v. Trippet, (medical use of marijuana) 66 Cal. Reptr. 2d 559; People v. Clark, (drugs and intent) 660 NYS 2d 200; Allen v. Montgomery Hospital (patient restraint and malpractice) 696 A 2d 1175; 1(12) The Forensic Echo. November 1997.

"Neonaticide: Immaculate Misconception?" Welner, M, Delfs, L.; 1(12) The Forensic Echo. 4-10 November 1997.

"Grossly Unequal Protection" (mental health malpractice) Welner, M. 1(12) The Forensic Echo. 3 November 1997.

*Michael Welner, M.D.*
**The Forensic Panel**

Page 12 of 27

**PUBLICATIONS CONTINUED…**

Case Commentary: Welner, M. People v. Mercado, (juror trauma) 659 NYS 2d 453; Mental Health & Retardation v. McClain, (inpatient dangerousness) 947 SW 2d 694; State v. Payne, (urine testing and monitoring) 695 A 2d 529; Bradley v. Medical Board of Ca. (misconceptions and uses of sedatives) 65 Cal Rptr. 2d 1483 1(11) The Forensic Echo. October 1997.

"Rapist In a Glass?" (Rohypnol and other date rape drugs) Welner, M, Delfs, L.; 1(11) The Forensic Echo. 4-10 October 1997.

"Who's Your Psychiatric Proxy?" Welner, M. 1(11) The Forensic Echo. 3 October 1997.

"Principles on Megan's Law" Rosenkranz, J.; Welner, M.; Stone, C.; Smiley, T.; Sigda, E; et al. 52(6) The Record of the Association of the Bar 704. Oct 1997.

"Vincent Gigante's Next Move" (competency assessment) Welner, M, Delfs, L.; 1(10) The Forensic Echo. 4-14 September 1997.

"Put Psychotherapy In Prison" (prisoner treatment) Welner, M. 1(10) The Forensic Echo. 3 September 1997.

Case Commentary: Welner, M. State v. Hopfer, (neonaticide) 679 N.E. 2d 321; McClain v. State (sleep-deprived crime) 678 N.E. 2d 104; State v. Gjerde (elder disposition) 935 P 2d 1224; State v. Bartlett (pro se competency) 935 P2d 1114; 1(10) The Forensic Echo. September 1997.

"Seeing Cunanan For Who He Really Was" (misconceptions about psychopaths) Welner, M. 1(9) The Forensic Psychiatry Echo. 13 August 1997.

Case Commentary: Welner, M. Goldstein v. RI Psychiatric Society, (holistic and unconventional treatment recommendations) 692 A. 2d 325; Swanson v. Roman Catholic Bishop (supervisor liability and sexual misconduct) 692 A. 2d 441; People v. Hoffman (pathologists and criminal profiling) 636 NYS 2d 481; Barela v. Wyoming, head injury and violence) 936 P2d 66 1(9) The Forensic Psychiatry Echo. August 1997.

"The Supreme Court Makes a Doctor's Appointment" (physician-assisted suicide) Welner, M. 1(8) The Forensic Psychiatry Echo. 14 July 1997.

Case Commentary: Welner, M. Osborn v. PSRB (pedophilia and legal insanity), 934 P.2d 391; Rios v. PSRB (antisocial personality and legal insanity) 934 P. 2d 399; Gaul v. AT&T (depression and ADA) 955 F Supp 346; State v. Miller (predicting dangerousness) 933 P2d 606; In re: Johnson, (outpatient commitment) 691 A. 2d 628; 1(8) The Forensic Psychiatry Echo. July 1997.

"How Psychiatry Impacts Employment Litigation," Welner, M. The Legal-Intelligencer June 6 1997.

"The Personality Disorder of the Americans With Disabilities Act" (accommodation of conduct) Welner, M. 1(7) The Forensic Psychiatry Echo. 14 June 1997.

Case Commentary: Welner, M. Vallinoto v. DiSandro, (attorney sex with clients) 688 A. 2d 830; U.S. v. Schmidt, (stings on psychiatric patients) 105 F 3d. 82; State v. Williams, (sedatives and criminal intent) 44 Conn. App 231; State v. Robertson, (lay input on behavior) 932 P2d 1219; 1(7) The Forensic Psychiatry Echo. June 1997.

*Michael Welner, M.D.*
**The Forensic Panel**

## PUBLICATIONS CONTINUED…

"Love Forbidden" (romance between patients) Welner, M. 1(6) The Forensic Psychiatry Echo. 29 May 1997.

Case Commentary: Welner, M. U.S. v. Artim, (dramatizing history for downward departure) 944 F Supp. 363; Meyers v. Arcudi, (polygraph uses) 947 F Supp. 581; People v. Bryant, (antisocial by proxy) NYLJ 12/31/96; EBI v. Blythe, (professional qualification for forensic examination) 931 P.2d 38; 1(6) The Forensic Psychiatry Echo. May 1997.

"Who Is Mark Whitacre – Part II?" (criminal responsibility and bipolar disorder) 21-28 1(6) The Forensic Psychiatry Echo. May 1997.

"Responding to Harassment: Environmental Protection?" (corporation reaction) Welner, M. 1(5) The Forensic Psychiatry Echo. 29 April 1997.

Case Commentary: Welner, M. Banks v. Horn, (paranoia and competency)939 F.Supp 1165; Clausen v. DOH, (boundaries of treatment) 648 NYS 2d 842; Trammell v. Coombe, (treating incorrigible prisoners) 649 NYS 2d 964; State v. Wallace, (treating stalking) 684 A 2d. 1355; State v. DeWalt, (psychiatric denial and criminal recidivism) 684 A 2d 1291; Commonwealth v. Mayer, (agitation and competency) 685 A2d 571; Shirsat v. Mutual Pharm., (observers at interviews) 169 FRD 68; Appeal of Sutton, (phobia vs. PTSD) 684 A2d 1346 1(4) The Forensic Psychiatry Echo. March 1997.

"Emerging Subtleties In Criminal Competency" Welner, M.  4(4) The Attorney of Nassau County 11, 19 February 1997.

"Neonaticide and America's Abortion Problem" Welner, M. 1(3) The Forensic Psychiatry Echo. 23 Jan 1997.

Case Commentary: Welner, M. Commonwealth v. Crawford, (repression vs. suppression of memory) 682 A2d 323; Eckert v. Rumsey Park, (testimony for own patient) 682 A 2d 720; Commonwealth v. Larsen, (personal psych record subterfuge) 682 A 2d 783; Merle v. US, ("permanent incompetence") 683 A 2d. 755; US v. Burrous, (eyewitness reliability) 934 F Supp 525; Tuman v. Genesis, (family fallout from therapy) 935 F Supp 1375; Layser v. Morrison, (duty to protect) 935 F Supp 562; Brown v. US, (assessing dangerousness for recommitment)  682 A2d 1131;PAHRC v. WCAB,(adjustment disorder from overwork) 683 A 2d. 262; Hershey v. Com. (revictimization in treatment) 682 A 2d. 1257; Allen v. Farrow, (sibling victims of incest)  NYLJ 12/13/96; People v. Wernick (neonaticide) NYLJ 1/22/96; PB v. CC. (media in the court) 647 NYS 2d 732; People v. Lewis, (amnesia for crime) NYLJ 11/20/96;  (3) The Forensic Psychiatry Echo.  January 1997.

"Neonaticide, Post-Partum Psychosis, and Wernick Revisited" Welner, M. 4(3) The Attorney of  Nassau County  11,17 January 1997.

"Equal Rights, Equal Responsibility" (mental health parity) Welner, M. 1(2) The Forensic Psychiatry Echo. 8 December 1996.

"Emerging Parameters for Recovery In AIDS Phobia" Welner, M. 4(2) The Attorney of Nassau County December 1996.

"Risperidone for the Treatment of Acute Agitation in a Patient on MAO Inhibitor," Welner, M. Journal of Clinical Psychopharmacology 16(6) December 1996.

*Michael Welner, M.D.*
**The Forensic Panel**

Page 14 of 27

**PUBLICATIONS CONTINUED…**

Case Commentary: Welner, M. Zimmer v. Davis, (family responsibility for treatment) NYLJ 10/17/96; State
      v. Barletta, (cocaine and eyewitness credibility) 680 A 2d 1284; Commonwealth v. Morley, (psychiatric
      mitigating testimony) 681 A 2d 1254; JD v. ND, (verbal abuse as battery) NYLJ10/17/96;
      People v. DelRio, (threshold for competency) 646 NYS 2d 117; Commonwealth v. duPont, (treaters
      and competency assessment) 681 A 2d 1328; People v. Washington, (corroborating history) 645 NYS
      2d 622; People v. Bradley, (extreme emotional disturbance) 646 NYS 2d 657; People Ex Rel Noel B.
      v. Jones, (imposing treatment on sick but not dangerous) 646 NYS 2d 820; Matter of D.C.,
      (predicting future dangerousness) 679 A 2d. 634; Blanyar v. Pagnotti, (close relationships for civil
      recovery) 679 A 2d. 790; Commitment of NN., (commitment of minors) 679 A 2d. 1174; Matter of
      Bacon, (pain meds and testamentary capacity) 645 NYS 2d 1016; McCoy v. PPLC (predicting
      sobriety) 933 F.Supp 438; Kukla v. Syfus (psychotherapy for PTSD) 928 F.Supp 1328; Murphy v.
      Abbott Labs (reasonable fear of HIV) 930 F.Supp 1083; People v. Ross 646 NYS 2d 249; Brown v.
      NYCHHC, (sex offender classification) NYLJ 10/21/96  1(2) The Forensic Psychiatry Echo.
      December 1996.

"Castration for Sex Offenders: Options," Welner, M. 4 (1) The Attorney of  Nassau County  November
      1996.

"Moral vs. Legal "Wrong" in the Insanity Defense," Welner, M. 68 (7) New York State Bar Journal  28-30
      November 1996.

"Castration: Back to the Future," Welner, M. 1(1) The Forensic Psychiatry Echo. 4 November 1996.

Case Commentary: Welner, M. Kylow v. State, (patient assaults of peers) NYLJ 9/6/96; US v. Garcia,
      (intoxication and criminal responsibility) NYLJ 8/29/96; Vallejo v. Rahway, (jail suicide) 678 A 2d
      1135; ER v. GSR, (domestic violence treatment) NYLJ 9/18/96; People v. Angelo, (depraved
      indifference) 644 NYS 2d 460; Williamson v. Waldman, (AIDS phobia) 677 A 2d 1179; People v.
      Marvin P., (insight and recommitment) NYLJ 8/19/96;  1(1) The Forensic Psychiatry Echo.
      November 1996.

"The Dangerousness Assessment: Legal Ramifications," Welner, M. 3(12) The Attorney of Nassau County,
      10 October 1996.

"Assessing Employee Risk of Dangerousness," Welner, M. 3(11) The Attorney of Nassau County, 10
      September 1996.

"Depraved Indifference: Should Psychiatric Information be Incriminating?" Welner, M. 216 (19) New York
      Law Journal p 1,4,29  7/26/96.

"The Psychiatrist's Role in Workplace Violence," Welner, M. 3(10) The Attorney of Nassau County  August
1996.

"Sexual Harassment: How Psychiatry Assists in the Litigation Process," Welner, M. 3(10) The Attorney of
      Nassau County June 1996.

"Psychiatric Examination and Sexual Harassment," Welner, M. Welner, M.  (3)9 The Attorney of  Nassau
      County  May 1996.

*Michael Welner, M.D.*
**The Forensic Panel**

Page 15 of 27

<u>PUBLICATIONS CONTINUED…</u>

"Sexual Harassment: When is Psychiatric Input Relevant?" Welner, M. (3)8 The Attorney of Nassau County, 4,17 April 1996.

"Psychiatry and Depraved Indifference," Welner, M. Welner, M. (3)7 The Attorney of Nassau County, 4 March 1996.

"Appreciation of 'Wrong' and the Insanity Defense," Welner, M. (3)6 The Attorney of Nassau County, 4,19 February 1996.

"Moral vs. Legal 'Wrong' in the Insanity Defense," Welner, M. (3)5 The Attorney of Nassau County, 12 January 1996.

"Notification Statutes for Predatory Sex Offenders: Psychiatric Treatment Alternative?" Welner, M. (3)4 The Attorney of Nassau County, 4,15 December 1995.

"What Can We Learn From Larry Hogue," Welner, M. Psychiatric Times, 10 (3), 12: March 1993.

<u>PRESENTATIONS</u>

Harvard University, Cambridge, MA                                                  August 2023
    "Cult Dynamics and the Challenges Confronting Forensic Psychiatry Assessment"

Illinois State Attorney's Office Appellate Prosecutor, Chicago, IL                   Oct 2018
    "'The Depravity Standard and Juvenile Sentencing Dilemmas"

New York City Corporation Counsel, New York, NY                                     June 2018
    "'Disputed Confessions – Substance, Myth, and Lessons"

Beth Israel Medical Center, New York, NY                                            Apr. 2018
    "'Forensic Psychiatry in Practice"

Beth Israel Medical Center, New York, NY                                            Apr. 2018
    "How Psychiatry Intersects with the Law"

Morgan Stanley, New York, NY                                                        Feb. 2018
    "Lessons from Speer: Assessing the Vulnerable Elder in Competency Disputes"

Grand Rounds, Beth Israel Medical Center, New York, NY                              Dec 2017
    "Investment and the Vulnerable Elder: A Forensic Primer for Clinicians & Social Services"

Beth Israel Medical Center, New York, NY                                            Apr. 2017
    "'Forensic Psychiatry in Practice"

Beth Israel Medical Center, New York, NY                                            Apr. 2017
    "Forensic Psychiatry and the Assessment of Legal Insanity"

Beth Israel Medical Center, New York, NY                                            Mar. 2017
    "Forensic Psychiatry in Death Investigation"

*Michael Welner, M.D.*
**The Forensic Panel**

Page 16 of 27

## PRESENTATIONS CONTINUED…

Grand Rounds, Beth Israel Medical Center, New York, NY     Dec 2016
     "Mental Illness vs. Zealotry: Social Media in Psychiatric Assessment of Terrorism"

Wecht Institute Annual Forensic Science Conference, Pittsburgh, PA     Oct 2016
     "Investor Competency, the Vulnerable Elder & Adapting Forensic Psychiatry to Resolving Mystery"

Grand Rounds, Brookdale Hospital, Brooklyn, NY     Oct 2016
     "Learning from Mass Killers: Risk Appraisal and Cutting the Fuse"

Eyes Only Counterterror Conference, Shurat Hadin, New York, NY     Sept 2016
     "Mental Illness vs. Zealotry: Social Media in Psychiatric Assessment of Terrorism"

One to One Global Forum, New York, NY     June 2016
     'Diminishing Everyday Evil: Two Steps Everyone Can Take"

Beth Israel Medical Center, New York, NY     Apr. 2016
     "'Forensic Psychiatry in Practice"

Beth Israel Medical Center, New York, NY     Apr. 2016
     "Forensic Psychiatry and the Assessment of Legal Insanity"

Beth Israel Medical Center, New York, NY     Mar. 2016
     "Forensic Psychiatry in Death Investigation"

Grand Rounds, Beth Israel Medical Center, New York, NY     Nov 2015
     "Learning from Mass Killers: Risk Appraisal and Cutting the Fuse"

TEDx, Conference, Truth be Told, Cape May, New Jersey, NY     Oct 2015
     "What is Everyday Evil? Identify, Treat, Eliminate"

Society of Professional Investigators, New York, NY     July 2015
     "Psychiatric Investigation of the Mass Killing: Informing Legal and Societal Questions

Virginia State Assembly, Richmond, VA     July 2015
     "Transparency & Videotaping: Fairness in Forensic Psychiatric Assessment"

Beth Israel Medical Center, New York, NY     May 2015
     "'Forensic Psychiatry in Practice"

Beth Israel Medical Center, New York, NY     May 2015
     "Forensic Psychiatry and the Assessment of Legal Insanity"

American Academy of Forensic Sciences, Annual Meeting, Orlando, FL     Feb. 2015
     'Psychiatry and Toxicology: Psychological Autopsy & Assessment of Motive'

American Academy of Forensic Sciences, Annual Meeting, Orlando, FL     Feb. 2015
     'Fetal Abduction by Maternal Evisceration"

*Michael Welner, M.D.*
**The Forensic Panel**

Page 17 of 27

## PRESENTATIONS CONTINUED…

New York Office of the County Medical Examiner, Grand Rounds, New York, NY      Oct. 2014
    'Forensic Psychiatry in Death Investigation: Psychological Autopsy & Assessment of Motive'

Beth Israel Medical Center, New York, NY      Jun. 2014
    'Forensic Psychiatry in Death Investigation'

U.S. House of Representatives, Energy & Commerce Committee, Washington, DC      May 2014
    'Crisis and the Treatment of Serious Mental Illness in America: Isla Vista Lessons'

Illinois House of Representatives, Judiciary Committee, Springfield, IL      Apr. 2014
    'Transparency of the Forensic Interview: Essential to Competency Assessment'

U.S. House of Representatives, Energy & Commerce Committee, Washington, DC      Apr. 2014
    'Crisis Psychiatry and the 'Helping Families in Mental Health Crisis Act'

Beth Israel Medical Center, New York, NY      Feb. 2014
    ''The Insanity Defendant; Answers in the Unexplained'

Idaho District Attorney's Association, Annual Conference, Boise, ID      Feb. 2014
    'Forensic Psychiatry and its Case Practice'

Alabama District Attorney's Association, Annual Conference, Birmingham, AL      Jan. 2014
    'Forensic Psychiatry and its Case Practice'

Colorado District Attorney's Conference, Annual Conference, Breckenridge, CO      Sep. 2013
    'Grinding Cases to a Competency Halt'

Colorado District Attorney's Conference, Annual Conference, Breckenridge, CO      Sep. 2013
    'Forensic Psychiatry at Trial'

Oklahoma District Attorney's Conference, Annual Conference, Norman, OK      July 2013
    'Grinding Cases to a Competency Halt'

Oklahoma District Attorney's Conference, Annual Conference, Norman, OK      July 2013
    'Forensic Psychiatry at Trial'

Missouri Crime Victims' Conference, Annual Conference, Springfield, MO      May 2013
    'Forensic Psychiatry at Trial'

Missouri Crime Victims' Conference, Annual Conference, Springfield, MO      May 2013
    'Forensic Psychiatry in Case Investigation'

Arkansas Prosecuting Attorney's Association, Annual Conference, Fayetteville, AR      Apr. 2013
    'Forensic Psychiatry in Case Practice'

U.S. House of Representatives, Energy and Commerce Committee, Washington, DC      Mar. 2013
    'After Newtown: A National Conversation on Violence and Severe Mental Illness'

*Michael Welner, M.D.*
**The Forensic Panel**

Page 18 of 27

## PRESENTATIONS CONTINUED…

Post Combat Problems in the 21st Century, Duquesne U. School of Law, Pittsburgh, PA      Oct. 2012
     'Forensic Frontiers of Returning Veterans'

Louisiana District Attorney's Association, Annual Conference      Aug. 2012
     ''Forensic Psychiatry and its Case Practice'

Lead America Law and Justice Conference, New York, NY      Jul .2012
     'Defining Evil in Crime'

Illinois States Attorney's Appellate Prosecutor, Violent Crimes Conference, Naperville, IL      Apr. 2012
     ''Forensic Psychiatry and its Case Practice'

Illinois States Attorney's Appellate Prosecutor, Violent Crimes Conference, Naperville, IL      Apr. 2012
     'Grinding Cases to a Competency Halt'

Illinois States Attorney's Appellate Prosecutor, Violent Crimes Conference, Naperville, IL      Apr. 2012
     ''The Science and "Science" of Confession Expertise'

Beth Israel Medical Center, New York, NY      Feb. 2012
     ''The Insanity Defendant; Answers in the Unexplained'

New York City Bar Association, New York, NY      Jan. 2012
     'Meeting the Challenges of Forensic Promise: Beyond the NAS Report & Leahy Bill'

National Association of Prosecutor Coordinators, Nashville, TN      Dec 2012
     'Grinding Cases to a Competency Halt'

Annual Forensic Sciences Conference, Duquesne University School of Law, Pittsburgh, PA      Oct. 2011
     'Polygamous Sect Leaders and the Psychology of Exploitation'

American Bar Association, Annual Meeting, Toronto, ON      Aug. 2011
     'The Future of Mind Science'

American Bar Association, Annual Meeting, Toronto, ON      Aug. 2011
     Panel Discussion: 'Bioterrorism, Bioethics, and Intellectual Property on Trial'

Beth Israel Medical Center, Grand Rounds, New York, NY      Apr. 2011
     'Elizabeth Smart's Kidnapper: An Incredible, Cautionary Journey of Forensics, Culture, & Ethics''

Johnson & Wales University, Annual Criminal Justice Conference, Miami, FL      Mar. 2011
     'Defining Evil & the Depravity Standard'

Johnson & Wales University, Annual Criminal Justice Conference, Miami, FL      Mar. 2011
     "Detoxifying Evil in the Everyday'

American Academy of Forensic Sciences, Annual Meeting, Chicago, IL      Feb. 2011
     'Risk Assessment in the Guantanamo Detainee: Challenges and a Methodological Approach'

*Michael Welner, M.D.*
**The Forensic Panel**

Page 19 of 27

### PRESENTATIONS CONTINUED…

| | |
|---|---|
| American Academy of Forensic Sciences, Annual Meeting, Chicago, IL | Feb. 2011 |
| Special Session: 'Relevant, Reliable & Valid Forensic Science in Case Analysis' | |
| Manhattan Psychiatric Center, Grand Rounds, New York, NY | Feb. 2011 |
| "Detoxifying Evil in Clinical Psychiatric Practice" | |
| Rockland Psychiatric Center, Grand Rounds, Orangeburg, NY | Jan. 2011 |
| "Detoxifying Evil in Clinical Psychiatric Practice" | |
| N.Y. State Justice Task Force Subcommittee on Statements of the Accused, New York, NY | Jan. 2011 |
| 'Wrongful Convictions and Confessions – Myths, Facts, and Solutions' | |
| American Academy of Forensic Sciences, Annual Meeting, Seattle, WA | Feb. 2010 |
| "Forensic and Justice Issues in American Polygamous Sects and Rejectionist Groups" | |
| Yale University School of Law, New Haven, CT | Apr. 2009 |
| 'Seeing Life Through Death: Lessons from Forensic Psychiatry' | |
| Society of Professional Investigators, New York, NY | Sep. 2008 |
| 'When Forensic Psychiatry Meets Case Investigation: How We Practice' | |
| International Academy of Forensic Sciences, Annual Meeting, New Orleans, LA | Jul. 2008 |
| 'Current & Unresolved: Ethical Challenges Confronting Forensic Psychiatry' | |
| Where Fact Meets Fiction, Duquesne University School of Law, Pittsburgh, PA | Apr. 2008 |
| 'Scientific Consulting for the News' | |
| Where Fact Meets Fiction, Duquesne University School of Law, Pittsburgh, PA | Apr. 2008 |
| 'Panel: Forensic Science and the News: Opportunities and Limitations' | |
| Nebraska Institute of Forensic Sciences, Annual Conference, Lincoln, NE | Oct. 2007 |
| 'Lessons in Psychiatric Resilience from Foreign Disasters' | |
| War, Terror, and Psychology, Yeshiva University, New York, NY | Jun. 2007 |
| 'Defining Evil, the Depravity Standard, & War Crimes' | |
| Preserving Evidence, Saving Lines, Duquesne University School of Law, Pittsburgh, PA | Mar. 2007 |
| 'Lessons in Psychiatric Resilience from Foreign Disasters' | |
| American Academy of Forensic Sciences, Annual Meeting, San Antonio, TX | Feb. 2007 |
| 'Unresolved: Psychiatry Ethical Dilemmas, Current and Coming' | |
| American Academy of Forensic Sciences, Annual Meeting, San Antonio, TX | Feb. 2007 |
| 'Antidepressant (SSRI) Defenses: Guidelines for Assessment' | |
| And Justice for All, Duquesne University School of Law, Pittsburgh, PA | Apr. 2006 |
| 'Forensic Psychiatric Peer-Review in Action: Capital Mitigation' | |

*Michael Welner, M.D.*
**The Forensic Panel**

Page 20 of 27

## PRESENTATIONS CONTINUED…

And Justice for All, Duquesne University School of Law, Pittsburgh, PA    Apr. 2006
    'Panel: Regulating Admissibility under FRE and *Daubert*'

California District Attorney's Association, San Luis Obispo, CA    Mar. 2006
    'Mental Health and Capital Mitigation: Present, Future, and Delusional'

American Academy of Forensic Sciences, Annual Meeting, Seattle, WA    Feb. 2006
    'Interdisciplinary Forensic Peer-Review in Action: Death Investigation'

American Academy of Forensic Sciences, Annual Meeting, Atlanta, GA    Feb. 2006
    'International Perspectives on What is a Depraved Crime'

Association of Government Attorneys in Capital Litigation, Washington, DC    July 2005
    'Truth, Fiction, and Nuance of Brain Damage and Retardation Defenses'

Duquesne University School of Law, Pittsburgh, PA    Mar. 2005
    'Forensic Psychiatry and Psychology: Practice and Ethics'

Duquesne University School of Law, Pittsburgh, PA    Mar. 2005
    'Forensic Interviewing and Police Interrogation: Learning from the Other'

Grand Rounds, Cooper Hospital, Camden, NJ    Nov. 2004
    'Psychopathy, Media, and the Psychology at the Root of Terror'

Duquesne University School of Law, Pittsburgh, PA    Oct. 2004
    'The Insanity Defendant: Answers in the Unexplained'

Tracking Terrorism in the 21st Century, Wecht Institute of Forensic Sciences Pittsburgh, PA    Oct. 2004
    'Psychopathy, Media, and the Psychology at the Root of Terror'

Annual Training Retreat, New York Prosecutors Training Institute, Syracuse, New York    July 2004
    'The Capital Defendant as Portrayed by Psychiatry'

Duquesne University School of Law, Pittsburgh, PA    June 2004
    'Ethics and the Forensic Examination'

Duquesne University School of Law, Pittsburgh, PA    June 2004
    'Forensic Psychiatry – A Range of Responsibilities'

Distinguished Lecturer in Legal Medicine, American College of Legal Medicine, Las Vegas, NV    Mar. 2004
    'Death Investigation and Medical Malpractice'

United States Military Academy, Brooklyn, NY    Mar. 2004
    'Forensic Psychiatry Consultation in Criminal Cases – Ethics and Practice'

Invited Testimony, New York State Assembly, New York, NY    Dec. 2003
    'Psychiatric Impact of Violent Video Games'

*Michael Welner, M.D.*
**The Forensic Panel**

Page 21 of 27

## PRESENTATIONS CONTINUED…

| | |
|---|---|
| Symposium on JFK Assassination, Duquesne Law School, Pittsburgh, PA | Nov. 2003 |
|     'Forensic Psychiatry's Importance in Resolving the Assassination Mystery' | |
| | |
| Grand Rounds, Robert Wood Johnson Medical Center, Camden, NJ | Nov. 2003 |
|     'The Depravity Scale: Civil and Patient Care Implications of Researching Evil' | |
| | |
| North Carolina Homicide Investigator's Association, Atlantic Beach, NC | Oct. 2003 |
|     'False Confessions: Lessons for Homicide Investigators' | |
| | |
| Keynote Address, North Carolina Homicide Investigator's Association, Atlantic Beach, NC | Oct. 2003 |
|     'The Depravity Scale: How Investigations Impact on the Legal Determination of Depravity' | |
| | |
| Nebraska Institute of Forensic Sciences, Lincoln, Nebraska | June 2003 |
|     'False Confessions & DNA Exonerations: Research, and Realities' | |
| | |
| Keynote Address, Reigning in the Forensic Sciences Revolution, Lincoln, Nebraska | June 2003 |
|     'The Depravity Scale: Standardizing Evil, Legal & Investigative Ramifications' | |
| | |
| Duquesne University School of Law, Pittsburgh, PA | June 2003 |
|     'Ethics and the Forensic Examination: Confronting Dilemmas' | |
| | |
| Duquesne University School of Law, Pittsburgh, PA | June 2003 |
|     'Forensic Psychiatry and Psychology: Civil and Criminal Roles' | |
| | |
| American Psychiatric Association, Annual Meeting, San Francisco, CA | May 2003 |
|     'Evil Beyond Crime: Civil Assessment and the Clinical Reckoning of Evil' | |
| | |
| American Psychiatric Association, Annual Meeting, San Francisco, CA | May 2003 |
|     'Frontiers in Standardizing the Definition of Evil in Criminal Law' | |
| | |
| Kirby Forensic Psychiatric Center, Grand Rounds, New York NY | Mar. 2003 |
|     'Sorting Out the Female Defendant: Clinical & Forensic Considerations' | |
| | |
| Duquesne University School of Law, Alumni Reunion Lecture, New York, NY | Mar. 2003 |
|     'Assessing Competency to Invest' | |
| | |
| Ontario Psychological Association, Keynote Address, Toronto, Ontario, Canada | Feb. 2003 |
|     'The Mental Health Professional in the Press' | |
| | |
| Association of the Bar of the City of New York, New York, NY | Feb. 2003 |
|     'The Psychiatric Assessment in ADA and FMLA Cases' | |
| | |
| American Academy of Forensic Sciences, Annual Meeting, Chicago, IL | Feb. 2003 |
|     'Disputed Confessions: Guidelines for Assessment' | |
| | |
| American Academy of Forensic Sciences, Annual Meeting, Chicago, IL | Feb. 2003 |
|     'Assessing Families and Victims of Terror in Personal Injury Cases' | |

*Michael Welner, M.D.*
**The Forensic Panel**

Page 22 of 27

**PRESENTATIONS CONTINUED…**

| | |
|---|---|
| American Academy of Forensic Sciences, Annual Meeting, Atlanta, GA | Feb. 2003 |
|   'Is There Evil Beyond Crime? Refining Criminal and Civil Definitions of Depravity' | |
| | |
| Conference on Death Penalty & Law, John Jay College of Criminal Justice | Nov. 2002 |
|   'The Depravity Scale: A Quest for Fairness | |
| | |
| Conference on Domestic Violence & Child Issues, Duquesne U. School of Law, Pittsburgh, PA | Nov. 2002 |
|   'Battered Woman vs. Antisocial Personality' | |
| | |
| Manhattan Psychiatric Center, Grand Rounds, New York, NY | Oct. 2002 |
|   'The Role of Psychiatry and Research to Define Evil' | |
| | |
| Duquesne University School of Law, Pittsburgh, PA | July 2002 |
|   'Ethics and the Forensic Examination' | |
| | |
| Duquesne University School of Law, Pittsburgh, PA | July 2002 |
|   'Assessing Psychiatric Malpractice and Emotional Distress' | |
| | |
| New England Consortium of Public Employment Labor Boards, Waterville, NH | July 2002 |
|   'ADA and Emotional Distress After Mass Casualty Disasters' | |
| | |
| Holland & Knight, New York, NY | June 2002 |
|   'Emotional Distress Claims: Working With the Forensic Psychiatrist' | |
| | |
| American Psychiatric Association, Annual Meeting, Philadelphia, PA | May 2002 |
|   'Dilemmas in Defining Evil in Criminal Law' | |
| | |
| American Psychiatric Association, Annual Meeting, Philadelphia, PA | May 2002 |
|   'Medication Defenses: Guidelines for Assessment' | |
| | |
| American Psychiatric Association, Annual Meeting, Philadelphia, PA | May 2002 |
|   'The Depravity Scale: Toward a Standardized Definition' | |
| | |
| American Psychiatric Association, Annual Meeting, Philadelphia, PA | May 2002 |
|   'Sadism and Forensic Psychiatry' | |
| | |
| Middletown Psychiatric Center, Grand Rounds, Middletown, NY | May 2002 |
|   'Mentally Retarded Sex Offenders: Forensic & Treatment Insights' | |
| | |
| Society of Medical Jurisprudence, Judiciary Committee, New York, NY | Apr. 2002 |
|   'Defining Evil Through Forensic Science' | |
| | |
| Tulane University School of Medicine, Chester Scrignar Mem. Lecture, New Orleans, LA | Apr. 2002 |
|   'The Depravity Scale: Can Psychiatry Define Evil?' | |
| | |
| Pennsylvania State Senate, Judiciary Committee, Harrisburg, PA | Mar. 2002 |
|   'Retardation and the Death Penalty: Special Considerations' | |

*Michael Welner, M.D.*
**The Forensic Panel**

Page 23 of 27

PRESENTATIONS CONTINUED…

| | |
|---|---|
| Association of the Bar of the City of New York, New York, NY | Feb. 2002 |
|     'Working With Psychiatrists in Resolving ADA Cases' | |
| American Academy of Forensic Sciences, Annual Meeting, Atlanta, GA | Feb. 2002 |
|     'Medication Defenses: Guidelines for Assessment' | |
| American Academy of Forensic Sciences, Annual Meeting, Atlanta, GA | Feb. 2002 |
|     'Medication Defenses: Myths & Facts' | |
| American Academy of Forensic Sciences, Annual Meeting, Atlanta, GA | Feb. 2002 |
|     'Toward a Standardized Legal Definition of Evil' | |
| Association of the Bar of the City of New York, New York, NY | Jan. 2002 |
|     'Americans with Disabilities Act and September 11' | |
| Industrial Relations Research Association, New York, NY | Dec. 2001 |
|     'Post-Traumatic Stress and 9/11: Employment Law Implications' | |
| Duquesne University School of Law, Pittsburgh, PA | Nov. 2001 |
|     'Psychiatric Consultation in Capital Cases' | |
| New Jersey Prosecutors Association, Monmouth, NJ | Nov. 2001 |
|     'Peer-Review in Capital Cases: Steven Fortin' | |
| New York Prosecutors Training Institute, Advanced College, Syracuse, NY | Aug. 2001 |
|     'Retardation Issues in Capital Cases' | |
| American Psychiatric Association, Annual Meeting, New Orleans, LA | May 2001 |
|     'The Depravity Scale: Development and Potential' | |
| American Psychiatric Association, Annual Meeting, New Orleans, LA | May 2001 |
|     'How Psychiatry Has Defined Evil' | |
| American Psychiatric Association, Annual Meeting, New Orleans, LA | May 2001 |
|     'Psychosis and Mass Homicide' | |
| American Psychiatric Association, Annual Meeting, New Orleans, LA | May 2001 |
|     'Drug-Facilitated Sex Assault' | |
| American Psychiatric Association, Annual Meeting, New Orleans, LA | May 2001 |
|     'Black Rage: Myths and Realities' | |
| American Psychiatric Association, Annual Meeting, New Orleans, LA | May 2001 |
|     'Ethnic Rage: Guidelines for Forensic Assessment' | |
| American Bar Association, Criminal Law Division, Albuquerque, NM | Apr. 2001 |
|     "Daubert & Expert Testimony: Peer Review & The Forensic Panel" | |

*Michael Welner, M.D.*
**The Forensic Panel**

Page 24 of 27

## PRESENTATIONS CONTINUED…

American Bar Association, Criminal Law Division, Albuquerque, NM     Apr. 2001
     "Daubert & Expert Testimony: Why Peer Review is Needed"

Duquesne University School of Law, Pittsburgh, PA     Mar. 2001
     "The Depravity Scale: Current Research"

American Academy of Forensic Sciences, Annual Meeting, Seattle, WA     Feb. 2001
     'The Drug-Facilitated Sex Assaulter'

American Academy of Forensic Sciences, Annual Meeting, Seattle, WA     Feb. 2001
     'Subtypes of Drug-facilitated Sex Assault and Paraphilias'

American Academy of Forensic Sciences, Annual Meeting, Seattle, WA     Feb. 2001
     'Fun with Diagnosis: Tricks of the Trained'

American Academy of Forensic Sciences, Annual Meeting, Seattle, WA     Feb. 2001
     'Diagnosis for the Capital Defender'

American Academy of Forensic Sciences, Annual Meeting, Seattle, WA     Feb. 2001
     'A Stab at Insanity: Reading Mental States from Knife Wounds'

New York Prosecutors Training Institute, Grand Rounds, West Point, NY     Feb. 2001
     'Working with and Opposing Psychiatrists in Capital Cases'

Rockland Psychiatric Center, Grand Rounds, Orangeburg, NY     Nov. 2000
     'Black Rage: Clinical and Forensic Applications'

Duquesne University School of Law, Forensic Science & the Law , Pittsburgh, PA     Oct. 2000
     'Forensic Psychiatry: Assisting Tomorrow's Court"

American College of Forensic Examiners, Annual Meeting, Las Vegas, NV     Oct. 2000
     'Distinguishing the Drug-Facilitated Rapist'

Cabrini Medical Center, Grand Rounds, New York, NY     Sep. 2000
     'Black Rage, White Supremacists, and Psychiatry'

New York State Bar Association, Transatlantic Conference in Employment Law, Dublin, Ireland     July 2000
     'The Industrial Psychopath'

Lenox Hill Hospital, Inpatient Case Conference, New York, NY     July 2000
     'Cross-Cultural Issues in Domestic Violence"

American Society of Clinical Psychopharmacology, Annual Conference, San Juan, PR     Feb. 2000
     'Treatment of Violence – State of the Art'

Mid-Hudson Psychiatric Center, Grand Rounds, Middletown, NY     Jan. 2000
     'Parents Killing Children: SIDS, Filicide and Beyond'

*Michael Welner, M.D.*
**The Forensic Panel**

Page 25 of 27

## PRESENTATIONS CONTINUED…

Lenox Hill Hospital, Inpatient Case Conference, New York, NY     May 1999
     'Managing the Complex Anxiety Patient'

Cutting Edge Collaborations In Sexual Assault, CLE Conference, Brooklyn, NY     Apr. 1999
     'Sex Offender Prognosis and Its Evaluation'

Duquesne University School of Law, Distinguished Lecturer Series, Pittsburgh, PA     Apr. 1999
     'Psychiatric-Legal Frontiers in Female Criminality'

Fordham University School of Law, New York, NY     Mar. 1999
     'Peer-Review, Ethics and the Future of Forensic Consultation'

The Osler Institute, Forensic Psychiatry Board Review Program, Chicago, IL     Mar. 1999
     'Crime Scene Analysis'

The Osler Institute, Forensic Psychiatry Board Review Program, Chicago, IL     Mar. 1999
     'Psychological Autopsy for Civil Courts'

The Osler Institute, Forensic Psychiatry Board Review Program, Chicago, IL     Mar. 1999
     'Recent Scientific Advances in Forensic Psychiatry'

The Osler Institute, Forensic Psychiatry Board Review Program, Chicago, IL     Mar. 1999
     'Psychiatry and the Death Penalty'

Lenox Hill Hospital, Grand Rounds, New York, NY     Mar. 1999
     'Neonaticide & Other Frontiers of Female Antisocial Behavior'

Kings County District Attorney's Office, Brooklyn, NY     Feb. 1999
     'The Criminal Responsibility Evaluation'

Mid-Hudson Psychiatric Center, Grand Rounds, Middletown, NY     Jan. 1999
     'Scientific Advances in Female Antisocial Behavior'

Fordham University School of Law, New York, NY     Nov. 1998
     'The Insanity Defense: What, Why & Who'

Society for Liaison Psychiatry, Distinguished Lecturer Series, New York, NY     Oct. 1998
     'Hospital Consultation and Recent Court Decisions'

National College of District Attorneys, Colorado Springs, CO     Sept. 1998
     'How to Work With or Against a Forensic Psychiatrist'

American Psychiatric Association, Annual Meeting, Toronto, Canada     May 1998
     'Forensic Developments in the New Era of Prescribing'

Duquesne University School of Law, Pittsburgh, PA     Mar. 1998
     'A Psychiatric Standard of Evil'

*Michael Welner, M.D.*
**The Forensic Panel**

Page 26 of 27

<u>**P**RESENTATIONS CONTINUED…</u>

| | |
|---|---|
| Allegheny County District Attorney's Office, Pittsburgh, PA | Mar. 1998 |
|     'Psychiatric Clues To Solving Sex Homicide' | |
| | |
| Lenox Hill Hospital, Inpatient Case Conference, New York, NY | Jan. 1998 |
|     'Evaluation and Treatment of Sex Offenders' | |
| | |
| Institute for Psychiatric Services, Annual Meeting, Washington, DC | Oct. 1997 |
|     'Medical Treatment of the Repeatedly Violent' | |
| | |
| Mid-Hudson Psychiatric Center, Grand Rounds, Middletown, NY | Sept. 1997 |
|     'Recent Advances In Forensic Hospital Practice' | |
| | |
| American Psychiatric Association, Annual Meeting, San Diego, CA | May 1997 |
|     'Medical Treatment of the Repeatedly Violent' | |
| | |
| Rockland Psychiatric Center, Grand Rounds, Orangeburg, NY | Apr. 1997 |
|     'Legal Trends In Hospital Based Psychiatric Care' | |
| | |
| Association of Law, Medical, & Investigative Experts, New York, NY | Mar. 1997 |
|     'Collaborating With Other Forensic Disciplines' | |
| | |
| Alliance of Mentally Ill, 'Ask the Doctor', New York, NY | Mar. 1997 |
|     'Diagnosis and Treatment of Bipolar Disorder' | |
| | |
| American Academy of Psychiatry and the Law, Annual Meeting, San Juan, PR | Oct. 1996 |
|     'Medical Treatment of the Repeatedly Violent' | |
| | |
| American Psychiatric Association, Annual Meeting, New York, NY | May 1996 |
|     'Psychosurgery in the Refractory Violent: A Debate' | |
| | |
| Beth Israel Medical Center, Psychopharmacology Series, New York, NY | Nov. 1995 |
|     'Practical treatment of mood disorders with co-morbid conditions' | |
| | |
| United We Stand America, National Policy Conference, Dallas, TX | Aug. 1995 |
|     'Health Care Reform: Consumer Privilege and Responsibility' | |
| | |
| Hate Crimes Language Conference, International Center for the Disabled, New York, NY | Jul. 1995 |
|     'Defining Bias Crimes Against the Mentally Ill' | |
| | |
| New York State Senate Commission On the Mentally Ill, New York, NY | Oct 1993 |
|     'Expert testimony reviewing commitment criteria' | |
| | |
| Beth Israel Medical Center, Grand Rounds, New York, NY | May 1992 |
|     'Pharmacotherapy for the Habitually Violent' | |

*Michael Welner, M.D.*
**The Forensic Panel**

Page 27 of 27

## PROFESSIONAL AFFILIATIONS

American Academy of Forensic Sciences
Association of the Bar of the City of New York
    *Criminal Law Committee*       1995-97
        ♦  Researching and proposing revisions to Megan's Law for New York State
        ♦  Domestic Violence Task Force

## POSTDOCTORAL TRAINING

Beth Israel Medical Center, New York, New York    1988-89
    *Rotating Internship* (Internal Medicine and Emergency Medicine)
Beth Israel Medical Center, New York, New York    1989-92
    *Residency* (Psychiatry)
University of Pennsylvania, Philadelphia, PA    1991-92
    *Fellowship* (Forensic Psychiatry)

## EDUCATION

University of Miami School of Medicine, Miami, Florida    1984-88
University of Miami, Coral Gables, Florida    1981-84
    *Magna Cum Laude; Phi Beta Kappa, Phi Kappa Phi, Golden Key honoree*

## PROFESSIONAL LICENSURE

New York, Florida