# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| JEANNE OLSON, not individually, But as Trustee of the William Amor Trust, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) ) |
| REBECCA GOMEZ, as Special Representative for Michael Cross, Deceased, *et al.*, | ) ) ) ) |
| Defendants. | ) ) |

Case No. 18-cv-02523

The Hon. John J. Tharp, Jr.

**PLAINTIFF'S RENEWED MOTION TO STRIKE
AND/OR LIMIT DR. ICOVE'S "DRY NEWSPAPER" OPINION**

Now comes Plaintiff, by counsel, Loevy & Loevy, and hereby moves to strike and/or limit Dr. Icove's "dry newspaper" opinion. In support, Plaintiff states as follows:

**Background**

For more than 20 years, the State's theory of the case was that Mr. Amor's cigarette ignited vodka-soaked newspapers. For this civil trial, Defendants have pivoted, disclosing Dr. Icove's report suggesting that maybe the cigarette landed on a "dryer" part of the newspapers. *See* Exhibit A (Dr. Icove Report at 61-62, using the adjective "dryer" twice).

Plaintiff moved to bar this "dryer/dry newspaper" opinion as lacking any record or scientific support. That *Daubert* motion was denied.

In support, Dr. Icove's report (Exhibit A at 61-62) cites the Babrauskas book called "Smoldering Fires." *See* Exhibit B. At his deposition, and then again on the stand on Wednesday, Dr. Icove conceded that the only evidentiary support he has for his dry newspaper theory is the Babrauskas book and the Lord & Geiman study (*see* Exhibit C) cited therein.

Exhibit D, Icove Dep. 115:3-8.

The Babrauskas book is basically just a compilation of research, citing only the Lord study on this point. The Lord study is the one referenced in court today wherein Lord conducted 1,500 tests with cigarettes on flat newspapers, resulting in exactly zero (0) ignitions to flames. *See* Exhibit B at 366, Table 7.

### Dr. Icove's Dry Newspaper Opinion Should Be Stricken

As the trial day concluded, Dr. Icove was disavowing and denouncing the Lord study as poorly conducted.

That admission leaves him with exactly nothing to support his opinion that dry newspaper can ignite via a cigarette. Not only did Dr. Icove previously admit that there was no evidentiary support for any dry newspaper scenario in the evidentiary record (*see* exhibit D, Icove Dep. 102:13-18), but he has now expressly disclaimed the only scientific support he had previously relied upon as his basis.

In fact, Dr. Icove's report states the opposite: "Many persons, let alone competent fire investigators, know and instinctively realize a lit cigarette is a competent ignition source to start a fire on newspaper." Exhibit A, Icove Report at 37 (without any citations).[1]

Lacking any evidentiary support and any proffered scientific support, and having disavowed the support he previously relied upon, Dr. Icove's testimony that a cigarette can ignite a dry newspaper fails the *Daubert* test, severely falls short of being supported by "sufficient facts

---

[1] Dr. Icove tried to tell a story on the stand about supposed undisclosed testing he did back in the Boy Scouts, but the objection was sustained. He admitted at his deposition he has never tested cigarettes and newspapers in "laboratory conditions." Exhibit D, Icove Dep. 114:12-115:2. Dr. Icove certainly produced no records, documents, or other proof of any testing, nor is it mentioned in his report. That is not surprising. As the Lord study points out, there is a real shortage of research on the topic.

or data," and must be stricken. Fed. R. Evid. 702(b); s*ee also In re Dealer Mgmt. Sys. Antitrust Litig.*, 581 F. Supp. 3d 1029, 1046 (N.D. Ill. 2022) (holding that when the link between the data an expert relies on and his or her ultimate conclusion is missing, "'[a] court may conclude that there is simply too great an analytical gap between the data and the opinion proffered.'" (quoting *General Electric Co. v. Joiner*, 522 U.S. 136, 146 (1997)); *Wendler & Ezra, P.C. v. Am. Int'l Grp., Inc.*, 521 F.3d 790, 791–92 (7th Cir. 2008) ("An expert who supplies nothing but a bottom line supplies nothing of value to the judicial process."); *United States v. Mamah*, 332 F.3d 475, 478 (7th Cir. 2003) ("[i]t is critical under Rule 702 that there be a link between the facts or data the expert has worked with and the conclusion the expert's testimony is intended to support . . . . The court is not obligated to admit testimony just because it is given by an expert.") (internal citations omitted); *Zenith Electronics Corp. v. WH–TV Broadcasting Corp.*, 395 F.3d 416, 419–20 (7th Cir. 2005) (an expert's opinions must be based on "more than say-so.").

This situation directly implicates the Court's gatekeeping function. The role of courts is obviously not to ensure that both sides get to present dueling experts. To the contrary, it is to ensure that neither side abuses and distorts the science—which is exactly what Dr. Icove is doing.

In sum, Dr. Icove has no evidence to support the dry newspaper theory now that he has disavowed the Lord study—which was itself not cited in his report, and only injected at deposition.

Dr. Icove must not be permitted a third try to resurrect the opinion. It would be particularly unfair to Plaintiff's counsel if Dr. Icove starts throwing around the names of new "studies" he found on Wednesday night that he claims support his position, leaving Plaintiff's

3

counsel no opportunity to read them and challenge him.

## Dr. Icove Should Not Be Permitted To
## Inject Non-Responsive and Unsupported Information

On the stand, Dr. Icove was making references to tables in the Lord study dealing with cigarette interactions with cellulosic (paper-based) materials *other than* newspapers. He should not be permitted to do that. The only evidence in the record is that Mr. Amor ignited newspaper.

Dr. Icove was also trying to describe what might happen to cigarettes placed on newspapers in a position other than flat. This Court now has the vantage point of most of the trial testimony, and is now aware that there is no record support for anything other than flat newspapers—either "stacked" on the X-spot on the diagram, or even spread out. There has been no reference to any "wedged" or crumpled newspapers.

Dr. Icove thus should not be permitted to start throwing around non-responsive statistics he looked up last night about ignition rates for non-newspaper crumpled papers placed in wastebaskets, for example. That would be unfair, and should not be allowed.

## Relief Sought

15. First, Dr. Icove's recent attack on the very Lord study that allowed him to survive *Daubert* changes the equation materially. Unless Defendants can make a showing to the Court that there is *any support that was already disclosed to date* for Dr. Icove's theory, his dry newspaper testimony should be stricken and the jury told to disregard it on *Daubert* grounds. When court ended on Wednesday, Dr. Icove was attacking the only substantive study he relied upon. If Defendants believe this is inaccurate, they should be required to point the Court to anything anywhere that Dr. Icove has ever allegedly disclosed that supports his theory. If they

4

cannot, Dr. Icove should not be permitted to try anew with previously undisclosed support.

16. Alternatively, if the Court does not bar and strike Dr. Icove's dry newspaper theory, Dr. Icove should be instructed that he must limit all of his answers to (a) newspapers, as opposed to other paper products, that are (b) in a flat position, as opposed to crumpled, wedged, or in a wastebasket, which are also referenced in the Lord study. While those scenarios also yield very few ignitions, they are at least more than the zero associated with flat newspapers. They are also completely irrelevant to this case.

17. Finally, Dr. Icove should be barred from referring to any previously-undisclosed support he may try to claim on Thursday (after another night on the internet). Plaintiff's counsel is confident Dr. Icove will not find any new support that he has not already been able to locate (because there is none), but the real risk is that he can give misleading impressions via long rambling answers throwing around names and falsely implying that he has found something. Should he do so, Plaintiff's counsel will not have a fair opportunity to review or rebut such an answer on the fly.

                Respectfully submitted,

                **JEANNE OLSON, Not Individually But**
                **As Trustee of the William Amor Trust**

                By: /s/ Jon Loevy
                    Attorney for the Trustee

Jon Loevy
Gayle Horn
Locke E. Bowman
Alyssa Martinez
LOEVY & LOEVY
311 N. Aberdeen St., 3rd Floor
Chicago, IL 60607

312 243 5900

## CERTIFICATE OF SERVICE

       The undersigned, an attorney, certifies that on July 31, 2024, he caused the foregoing document to be served on all counsel of record by filing the same using the Court's CM/ECF system, which automatically effected service on all counsel of record.

                                        /s/ Jon Loevy