IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JEANNE OLSON, not individually, But as Trustee of the William Amor Trust | ) ) ) | |
| Plaintiff, | ) ) | The Hon. John J. Tharp, Jr. |
| v. | ) ) | Case No. 18-cv-02523 |
| REBECCA GOMEZ, | ) ) | |
| Defendants. | ) ) | |

**PLAINTIFF'S RESPONSE TO DEFENDANTS'
MOTION TO ADMIT REPORTS AS NON-HEARSAY**

None of the four reports Defendants seek to offer should be received. They are hearsay and Defendants have not identified an exception or other vehicle by which any of them might be allowed in evidence. Defendants' motion should be denied.

*First,* it should go without saying that police reports are hearsay. The public records exception of Fed. R. Evid. 803(8) might cover a police report's record of the firsthand observations of a police officer with a duty to report. But the statements of nongovernmental third parties in police reports remain hearsay and are inadmissible. *Jordan v. Binns*, 712 F.3d 1123, 1133 (7th Cir. 2013). The same is true if the police reports are considered under the business records exception in Fed. R. Evid. 803(6). *Woods v. City of Chicago,* 234 F.3d 979, 986 (7th Cir. 2000) ("the business records exception does not embrace statements contained within a business record that were made by one who is *not* a part of the business if the embraced statements are offered for their truth"). The statements of the third-party witnesses in issue in each of Defendants' four reports—Marilyn Glisson (DX 25Y); Tina Amor (DX 25H and DX 25W); and Michael Mannion (DX 25Z)—are unquestionably inadmissible as hearsay.

*Second*, Defendants face a serious and substantive problem of authentication with respect to all the police reports they seek to offer. Authentication of a business record must establish that the record was made "at or near the time" of the event described in the record. *See* Fed. R. Evid. 803(6)(A). It cannot merely be assumed that the police reports Defendants seek to introduce are authentic business records. To the contrary, "[t]o satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a). In other words, if Defendants are seeking to admit their police reports on the theory that are official business records (or public records) of the Naperville Police Department, they have to lay a foundation with a record keeper.

For example, Detective Griffith's report of his purported September 11, 1995 and October 6, 1995 interviews of Marilyn Glisson (DX 25Y) are documented in a report that was "approved" October 16, 1996, more than a month after the September 11 interview described in the report. On the face of the report, there is no indication that Detective Griffith authored the report at or near the time of the conversations with Ms. Glisson. The date of the events described is remote in time from the only other date on the report: the October 16 approval date. Without a record keeper witness to establish that the report was "made" at or near the time of the described interviews—particularly in this case, where the dates matter greatly—the report cannot be reliably authenticated. The same problem applies to the other reports:

- DX 25H (at pp. 7-8) describes an interview with Tina Miceli purportedly on September 18, 1995, but it is not approved until October 16, 1995. There is no indication on the face of the report that the report was created at any particular time prior to the approval date, almost a month after the event.

- DX 25W describes a purported interview with Tina Miceli on October 3. It was not approved, according to the face of the report, until October 20. There is no indication when the report was created.
- DX 25Z has a similar defect. It describes an interview with a jailed individual named Michael Mannion on October 9. The approval is not until October 18 and the date of creation of the report is unknown.

In sum, there are threshold barriers to the admissibility of any of the four reports that are in issue in Defendants' motion. Although the Court need not reach Defendants' theories for the admissibility of each particular report, each theory fails in any event.

### Guerreri Report Concerning Michael Mannion Interview (D 25Z)

Defendants seek to admit Defendant Guerreri's report of his interview of a jailhouse snitch named Michael Mannion for the exclusive purpose of corroborating Brian Nigohosian's testimony that Plaintiff Amor made statements to Nigohosian on October 4 that Mannion *later* on October 9 asserted to Guerreri (and Guerreri documented on or before October 18) and that Nigohosian then inserted into his November 1, 1995 memorandum purporting to describe Plaintiff Amor's October 4 statement.

The theory is literally self-defeating. On October 4, Nigohosian recorded a confession of Plaintiff Amor that contained *no* reference to any information remotely similar to the material developed in Guerreri's later report—even though Nigohosian had every reason to include it. The Guerreri report (describing the snitch interview on October 9 and which was approved on October 18) is the first documentation of the information in issue—and it was prepared in sufficient time for Nigohosian to insert it into his November 1 memo "memorializing" Amor's statements (created from "memory" without the benefit of notes or a recording).

Thus, Defendants' theory for the admissibility of the hearsay Guerreri report is more than baseless. It is the paper record of how Nigohosian was able to fabricate the information he put in his November 1 memo. The report does nothing to corroborate Nigohosian. A report with this information created and available *before* October 4 might serve that function. But the Gurerreri report does not.

Defendants have no theory for the admissibility of DX 25Z, and it must be excluded.

**Griffith Report Concerning Marilyn Glisson (DX 25Y)**

Defendants seek to admit DX 25Y to show that Marilyn Glisson provided certain information to Naperville Police Officers Cunningham and Griffith on September 11. They contend that the use of the report merely to establish the date on which information was provided is a non-hearsay purpose. That argument cannot succeed. *First,* the report cannot be properly authenticated and therefore cannot be admitted, full stop. *Second,* the date in the report, in the circumstances of this case, a more than a mere incidental matter of foundation. As Defendants acknowledge, Plaintiff disputes that Glisson provided her information on the date in the report. Thus, the report, in this case, *is* being offered for the truth of the recorded date. The date is therefore inadmissible hearsay. DX 25Y must be excluded.

**Cross Report Concerning Tina Miceli September 18 Interview (DX 25H)**

Defendants seek to admit the description of an interview Defendant Cross conducted with Tina Miceli that purportedly took place on September 18—to show the date of the conversation as recorded at pp. 7-8 of DX 25H. The same problems apply. The report cannot be authenticated. The date is hearsay. DX 25H must be excluded in its entirety.

Moreover, the report is being offered to impeach Tina Miceli's testimony that Plaintiff Amor's confession was what caused her to conclude that Plaintiff killed her mother. Defendants

4

could have used the report to attempt to impeach Ms. Miceli when she was on the witness stand. They did not. They cannot now use this extrinsic evidence to impeach witness whose testimony is over.

### Sullivan Report Concerning Tina Miceli October 3 Interview (DX 25W)

Defendants seek to admit the report of Naperville Police Officer Sullivan concerning an interview he had with Tina Miceli on October 3, 1995 (DX 25W). They have fronted that Officer Sullivan does not have any recollection of the interview and they proposed to introduce the report as Officer Sullivan's past recollection recorded. This theory fails the reasons described above as to DX 25Y and 25H and for two additional reasons. *First,* the foundation for past recollection recorded includes establishing that the report was created while the matters in issue were "fresh in the witness's memory." With no record of when the report was created (separate from the approval date two and a half weeks later), Defendants cannot establish the "fresh in the witness's memory" prong of this hearsay exception.

*Second,* and substantively, what Tina Miceli said to Officer Sullivan is not relevant; Sullivan is not a defendant. There is relevance to what Sullivan may have communicated to Defendant Cross, but Sullivan's report makes no mention of the substance of any communication with Cross, or even that there was such a communication. And, obviously, if Sullivan does not recall the content of his interview with Tina, he necessarily has no recollection of the content of any communication of the Tina interview, to Cross or anyone else. The report is irrelevant.

DX 25W must be excluded.

### CONCLUSION

For the foregoing reasons, this Court should enter an order refusing admission of Defendants' Exhibits 25Z, 25Y, 25H (pages 7 and 8), and 25W.

Respectfully submitted,

**JEANNE OLSON, Not Individually But
As Trustee of the William Amor Trust**

By: /s/ Jon Loevy
Attorney for the Trustee

Jon Loevy
Gayle Horn
Locke E. Bowman
Alyssa Martinez
LOEVY & LOEVY
311 N. Aberdeen St., 3rd Floor
Chicago, IL 60607
312 243 5900

## CERTIFICATE OF SERVICE

The undersigned, an attorney, certifies that on August 1, 2024, he caused the foregoing document to be served on all counsel of record by filing the same using the Court's CM/ECF system, which automatically effected service on all counsel of record.

/s/ Jon Loevy